FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

00 AUG -9 PM 2: 35

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| VIRGIL LEE BROWNLEE, | ) |
| | ) |
|    Petitioner, | ) |
| | ) |
|    v. | ) |
| | )    CV 96-BU-279-S |
| RON  JONES,  Commissioner, | ) |
| Alabama  Department  of | ) |
| Corrections, | ) |
| | ) |
|    Respondent. | ) |

**ENTERED**

AUG 0 9 2000

## Memorandum Opinion

Now before the Court is the first amended petition for writ of habeas corpus, brought pursuant to 28 U.S.C. § 2254, on behalf of Petitioner, Virgil Lee Brownlee, an Alabama state prisoner convicted of capital murder and sentenced to death. Counsel for Brownlee have filed original and supplemental briefs in support of the amended petition. On behalf of Respondent Ron Jones, the State of Alabama, by and through its Attorney General, has filed an answer to the amended petition, a Habeas Corpus Checklist, a voluminous record of the proceedings from the state trial and appellate courts, and a supplemental brief in opposition to the amended petition. The Court concludes that the amended petition is due to be DENIED.

### I. BACKGROUND & PROCEDURAL HISTORY

#### A. The Trial

Sometime shortly before 9:00 p.m. on May 19, 1986, three armed black men robbed Jodie's Lounge, a bar in a northern section of Birmingham. During that robbery,

the owner of the establishment, Lathen Aaron Dodd, a Caucasian male, was shot and killed by one of the robbers. Brownlee was subsequently indicted for Dodd's murder, an offense made capital because it was committed during a robbery in the first degree. See § 13A-5-40(a)(2), Ala. Code 1975. The case was assigned to Judge James H. Hard, IV, of the Criminal Division of the Circuit Court of Jefferson County, Alabama. On October 27, 1986, Judge Hard appointed Burton Dunn and James Kendrick to represent Brownlee after his previously appointed defense counsel, Herbert Massie, was suspended from practicing law for his failure to fulfill his continuing legal education requirements.

The guilt phase of Brownlee's capital murder trial, over which Judge Hard presided, was held January 5-7, 1987. At that trial, nine of the approximately 14 to 18 patrons who were in the bar when the crime occurred testified that three armed black males were involved in the robbery, but none of the patrons was able to identify Brownlee as one of the robbers. However, some of the patrons had previously picked out two other men, Willie Irving Goodgame and Robert Harris, as participants in the crime. None of the patrons could identify which of the robbers shot Dodd. There was no scientific evidence tying Brownlee to the crime, and he did not make any incriminating statements to police. Rather, he was linked to the crime by the testimony of three witnesses: Goodgame, James "Sonny" Warren, and Reavor Jones.

Under the terms of a plea bargain, Goodgame agreed to testify against Brownlee and Harris at their respective trials. Goodgame told the jury that he, Brownlee, Harris, and Warren were involved in the robbery of Jodie's Lounge. Goodgame claimed that several hours before the robbery, Brownlee approached him and Harris with the robbery scheme while they were taking drugs at Jones's apartment. Jones is Warren's cousin and was then Brownlee's girlfriend. According to Goodgame, Warren drove the group to Jodie's Lounge in his automobile, where Warren remained during the robbery. Downplaying his own role in the robbery, Goodgame denied that he actually entered the

bar during the robbery, that he fired any shots, or that he even knew until after returning to Jones's apartment that anyone was shot. While acknowledging that he went into the bar briefly about fifteen minutes before the robbery occurred to scout out the establishment, Goodgame averred that he remained immediately outside the entrance during the crime itself, holding a man at gunpoint. It was only Brownlee and Harris, Goodgame asserted, who went inside the bar during the robbery. After Brownlee and Harris emerged from the bar, with the former carrying a tote bag containing property taken from the bar and its patrons, Warren drove the group back to Jones's apartment. Once there, Brownlee, Goodgame, and Harris secluded themselves in a bedroom and divided the spoils of the robbery, which included clothing, billfolds, jewelry, watches, cash, and a pistol. Later that night at the apartment, Goodgame alleged, Brownlee made statements indicating that he had been forced to shoot the bartender, Dodd, because he was attempting to grab a pistol behind the bar. Goodgame also alleged that he and Brownlee attempted to dispose of numerous wallets and identification from the robbery by throwing them in a creek behind Jones's apartment. Police subsequently recovered those items from the creek and linked them to the robbery-murder.

The testimony of Warren and Jones also implicated Brownlee in the robbery, although their testimony did not corroborate the specific fact that he was the one who shot Dodd. Both Warren and Jones stated that Brownlee, Goodgame, and Harris left the apartment together shortly before the robbery was said to have occurred; that they drove in Warren's car; that they returned together about an hour or two later; and that the three of them retreated to a bedroom to divide up assorted billfolds, jewelry, cash, and other property that had not been in their possession previously. However, Warren and Jones each contradicted Goodgame's assertion that Warren went along for the robbery. Instead, they stated, Goodgame, Brownlee, and Harris left, but Warren merely loaned them his automobile while he, Jones, and another man, Reginald Poe, remained at Jones's

apartment. Warren did acknowledge, though, that he saw the men were armed when they left and that, either at that time or when they returned, he suspected their involvement in some sort of robbery. Nonetheless, Warren conceded that, after the three returned to Jones's apartment and divided up what appeared to be loot from the robbery, he accepted an amount of cash from Brownlee, allegedly for damage previously done to his automobile by Goodgame. Jones was not given any money from the robbery. And while she was uncertain whether the men had guns when they left, she acknowledged seeing that at least some of the men had them when they returned. Finally, their testimony indicated that drugs were taken extensively by those in the apartment, but only after Goodgame, Brownlee, and Harris returned.

After the prosecution concluded its case in the guilt phase of the trial, Judge Hard submitted the case to the jury, as the defense presented no evidence. On January 7, 1987, the jury returned its verdict that Brownlee was guilty of capital murder. The next morning, the case proceeded to the separate sentencing phase, as required under Alabama law. See §§ 13A-5-45 through -47, Ala. Code 1975. Prior to a hearing before the jury, the State made it known that it was going to offer case action summary sheets of four robbery convictions Brownlee had, in order to establish an aggravating circumstance under Alabama law. See § 13A-5-49(2), Ala. Code 1975. Before the sheets were admitted, however, defense attorney Dunn, who had previously worked in the Jefferson County District Attorney's office, discovered that his name was listed as the prosecutor in each of the four robbery convictions. In order to prevent the jury from seeing his name listed as the prosecutor on the case action summary sheets, Dunn stipulated to Brownlee's prior robbery convictions. The State also presented evidence showing that Brownlee was on parole at the time of the capital offense.

The defense presented no evidence to the jury at the sentencing phase. Instead, Brownlee's counsel relied entirely upon argument to the jury, in hopes that such could

persuade it to return a verdict of life imprisonment without possibility of parole, instead of the death sentence urged by the prosecution. Dunn admitted to the jury that Brownlee had the four prior robbery convictions and was on parole at the time of the capital offense. Dunn and Kendrick also each acknowledged to the jury that they would not "rehash" the evidence from the guilt phase of the trial, because the jury had already decided that Brownlee was guilty. Trial Record at 473-73, 476. Rather, Brownlee's attorneys emphasized that Goodgame, an admitted accomplice, was going to receive a plea-bargained life sentence and would be eligible for parole, and that Warren, also a likely accomplice, was not being prosecuted at all. Dunn also argued to the jury that while Brownlee had admittedly "lived outside of the law a good part of his life . . . he is still a person . . . a living breathing human being," id. at 474-75, and they pointed out that Brownlee's family loved him. Id. at 476-77. Finally, Brownlee's counsel offered that sentencing Brownlee to death would not bring Dodd back to life, and that a sentence of life in the penitentiary without the possibility of parole sufficiently protected society and, in some sense, was a punishment worse than death. Unpersuaded, the jury rendered an advisory verdict in favor of the death penalty, by an 11 to 1 vote, after deliberating approximately 38 minutes.

The case proceeded to the final sentencing hearing before Judge Hard. See §13A-5-47, Ala. Code 1975. At this hearing, held February 24, 1987, the defense did present evidence, in the form of testimony from a clinical psychologist, William B. Beidleman, PhD; and from two of Brownlee's sisters. Dr. Beidleman testified that he concluded that Brownlee had a mixed personality disorder, mixed substance abuse disorder, and borderline intellectual functioning, corresponding to an IQ of slightly above 70. Brownlee's sisters testified about Brownlee's background and upbringing, his seizures, drug abuse, military record, and abnormal, self-destructive behavior.

Following the hearing, Judge Hard made written findings that there existed three

statutory aggravating circumstances. First, he found that the capital offense occurred while Brownlee was under a sentence of imprisonment, because he was undisputedly on parole. See § 13A-5-49(1), Ala. Code 1975. Second, the judge determined that Brownlee had four prior robbery convictions, which constituted crimes involving the use or threat of force to the person. See § 13A-5-49(2), Ala. Code 1975. And third, the judge found that the jury's guilty verdict established that the murder occurred during a robbery. See § 13A-5-49(4), Ala. Code 1975. He also determined that there were no statutory or nonstatutory mitigating circumstances to weigh against the aggravating factors. See §§ 13A-5-51 and -52. As a result, Judge Hard upheld the jury's advisory verdict and sentenced Brownlee to death by electrocution. See § 13A-5-47(e).

### B. The Direct Appeal

Immediately after sentencing Brownlee to death, Judge Hard indicated that he intended to appoint Dunn and Kendrick to continue their representation of Brownlee on his automatic appeal. However, Dunn asked that he not be appointed for the appeal. Judge Hard granted that request, so Kendrick handled the appeal alone.

In the Alabama Court of Criminal Appeals, Kendrick raised seven issues on behalf of Brownlee:

I.     Whether the trial court erred by striking for cause [jurors] who stated they would be reluctant to impose the death penalty although they could under the right circumstances.

II.    Whether the evidence other than testimony of accomplices was sufficiently corroborative.

III.   Whether appellant was intoxicated at the time of the offense that he could not be held accountable (sic).

IV.    Whether the [weight] and sufficiency of the evidence was such to sustain a capital murder conviction.

V.     Whether the court erred by not granting defendant a new trial based on newly

discovered evidence.

VI.    Whether the trial court erred by failing to remove for cause [prospective] jurors who had personal contact with the deceased.

VII.   Whether it is reversible error to allow the state during the course of a criminal trial to comment on the defendant' failure to testify.

Tab R-39.[1]

On June 28, 1988, the Alabama Court of Criminal Appeals issued a written opinion affirming Brownlee's conviction and death sentence. Brownlee v. State, 545 So. 2d 151 (Ala. Cr. App. 1988). As mandated by § 13A-5-53(b)(2), Ala. Code 1975, that court indicated that it found the death sentence was proper after independently weighing of the aggravating and mitigating circumstances. 545 So. 2d 151, 166. Brownlee raised the same claims before the Alabama Supreme Court, but his conviction and sentence were again unanimously affirmed in a brief opinion issued March 10, 1989. Brownlee v. State, 545 So. 2d 166 (Ala. 1989). The Alabama Supreme Court also alluded to its duty under § 13A-5-53(b)(2), stating that it had "carefully considered the propriety of the death penalty . . . ." 545 So. 2d at 166. After rehearing was denied in the Alabama Supreme Court, Brownlee's counsel filed a petition for a writ of certiorari with the United States Supreme Court. That petition was denied, as was his request for rehearing, Brownlee v. Alabama, 493 U.S. 874, 986 (1989).

### C. State Court Collateral Review

After the direct review appeal process was completed, Brownlee's present counsel, J. Dennis Faucher and Maurice R. Mitts, filed a petition on Brownlee's behalf seeking post-conviction relief in Alabama state court, pursuant to Rule 20 of the Temporary Alabama Rules of Criminal Procedure. During the pendency of that petition, the permanent Alabama Rules of Criminal Procedure became effective. Under those

---

[1]The record "tab" designations correspond to the State's habeas corpus checklist.

permanent rules, temporary Rule 20 was replaced by Rule 32. All references to Brownlee's petition for post-conviction relief in the Alabama state courts will be to Alabama Rule of Criminal Procedure 32.

In his amended Rule 32 petition, Brownlee raised 37 grounds:

(1)     Petitioner did not receive effective assistance of counsel in violation of his rights guaranteed by the laws and Constitution of Alabama and the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

(2)     The failure to administer an oath to Willie Goodgame at the Petitioner's trial deprived Petitioner of his right to confront and cross-examine witnesses against him under oath, to due process of law, and to a fundamentally fair trial in violation of the Fifth Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Petitioner's rights under the Alabama Constitution.

(3)     Goodgame's admission that he lied at the Petitioner's trial requires the Petitioner be granted a new trial because a conviction and death sentence obtained through unsworn lies violates the Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and the Constitution of the State of Alabama.

(4)     The failure to fully transcribe the trial court proceedings deprived Petitioner of full appellate and statutorily mandated review of his capital sentence and conviction.

(5)     Petitioner's rights to a fair trial by an impartial jury under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution were violated by the trial court's failure to grant a change of venue.

(6)     Petitioner was deprived of an impartial jury at the guilt/innocense and penalty phases of his tr9ial through improper juror exclusion in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

(7)     Petitioner was deprived of an impartial jury at the guilt/innocence and penalty phases of his trial through improper juror inclusion in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

(8)     Petitioner's right to a fair trial by an impartial jury was violated by the trial court's restrictions on the voir dire examination of prospective jurors.

(9)     Petitioner was deprived of a fair trial by the prosecutor's racially discriminatory selection of jurors and biased use of peremptory challenges.

(10)    The prosecutor's misconduct and arguments both prior to and during the guilt/innocence phase of Petitioner's trial were improper and violated rights guaranteed to the Petitioner by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the state constitution of Alabama.

(11)    Petitioner was convicted of capital murder based solely on the testimony of his alleged accomplice in violation of Alabama state law and the United States Constitution.

(12)    Petitioner's conviction under § 13A-5-31(a)(2) (sic)[2] cannot stand because the prosecution failed to prove each element of the crime beyond a reasonable doubt.

(13)    The state's failure to obtain a unanimous jury verdict for the death penalty at Petitioner's sentencing hearing entitles Petitioner to a life sentence without parole and the imposition of a death sentence violates the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and the State Constitution of Alabama.

(14)    The state's introduction of prejudicial and inflammatory photographs and diagrams at Petitioner's trial violated Petitioner's rights.

(15)    Petitioner's guilt/innocence and penalty trial were infected throughout by racial discrimination and in violation of the Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Alabama law.

(16)    The appointment of Mr. Kendrick as appellate counsel and trial counsel violated Petitioner's rights.

(17)    Petitioner was deprived of a fair sentencing hearing by the prosecutor's use of

---

[2]Although Mr. Brownlee's Rule 32 petition suggests that he was convicted of a capital offense under § 13A-5-31(a)(2), there is no such section in the Alabama code, nor was there either at the time the crime occurred in this case or when Mr. Brownlee was convicted. Rather, Mr. Brownlee was convicted of the capital offense set forth by § 13A-5-40(a)(2).

peremptory challenges in a racially discriminatory manner.

(18)  The state's failure to reveal its deal with Petitioner's charged and uncharged co-defendants violated Petitioner's right to a fair trial and due process.

(19)  The prosecutors' misconduct and arguments at Petitioner's sentencing hearing were improper and deprived Petitioner of a fundamentally fair trial and due process.

(20)  Participation by the brother of the victim in the prosecution of Petitioner was highly improper and denied Petitioner a fair trial and due process.

(21)  The trial court's instruction limiting consideration of mitigating evidence violated Petitioner's rights to a constitutional sentencing hearing.

(22)  Alabama's application of the "especially heinous, atrocious and cruel" aggravating circumstance is unconstitutionally vague and as applied to Petitioner's case and violates due process and the prohibition against cruel and unusual punishment.

(23)  the trial court improperly considered inadmissible evidence presented at its sentencing hearing in violation of Petitioner's rights.

(24)  Different appellate counsel should have been appointed to represent the Petitioner because both Burton Dunn and James Kendrick participated in concealing Mr. Dunn's conflict of interest from the Petitioner and the jury when that fact came to light during the trial.

(25)  The Petitioner's pleas in the 1979 convictions were not knowing and voluntary.

(26)  The execution of mentally impaired persons such as Petitioner violates the United States Constitution and the state Constitution of Alabama.

(27)  Alabama's death penalty is arbitrarily and discriminatorily applied in violation of the Eighth and Fourteenth Amendment to the United States Constitution.

(28)  It is unconstitutional to compel the Petitioner to dispel/rebut statements made against him in his presence.

(29)  It is unconstitutional to require the defendant to prove that a witness is an

accomplice unless the prosecutor's evidence clearly proves the witnesses' status as an accomplice.

(30)   The Alabama death penalty statute is unconstitutional because the prosecution only has to disprove the evidence of mitigation by a preponderance of the evidence.

(31)   The presentencing report contained inadmissible hearsay and was filled with inaccuracies in violation of the Petitioner's rights under the confrontation clause of the United States Constitution.

(32)   Sonny Warren was an admitted accomplice and therefore the court erred, as a matter of law, in charging the jury on his status as an accomplice.

(33)   Sonny Warren gave perjured testimony at Petitioner's trial and therefore Petitioner's conviction must be stricken pursuant to Ex parte Richard Frazier, [562 So. 2d 560] (Ala. 1989).

(34)   Petitioner's death sentence, while other co-defendants received life sentences, or were otherwise uncharged, violates the Eighth Amendment's prohibition against cruel and unusual punishment and the guarantee of equal protection of the laws.

(35)   The court's failure to conduct an on the record probing inquiry of Burton Dunn's conflict of interest concerning the appearance of his name on the case action summary sheets and the court's failure to ensure that the Petitioner was duly informed of that conflict, its consequences, and his right to new counsel, is a constitutional error requiring a new trial.

(36)   Death by electrocution is cruel and unusual punishment, because it often results in protracted pain and suffering, and therefore violates the prohibition against cruel and unusual punishment under the laws of Alabama and the United States Constitution.

(37)   Petitioner was denied the funds to obtain expert witnesses to assist at the trial and these funds are still necessary for his Rule 32 proceeding.

Tab R-58 at 218-222).

Judge Hard, who presided over Brownlee's capital trial, also presided over the proceedings relating to his Rule 32 petition. Following three evidentiary hearings, which

span over 900 pages of testimony, Judge Hard denied Brownlee's Rule 32 petition in a 95 page opinion and order. Brownlee appealed that denial to the Alabama Court of Criminal Appeals, raising the following arguments:

1.    Mr. Brownlee's conviction and death sentence were the product of perjured testimony by the state's key witness, Willie Goodgame

      a.    Goodgame's recanted testimony and the corroborating testimony of Messrs. Threat and George satisfy the standard for a new trial in a coram nobis petition.

      b.    Federal law also mandates that Mr. Brownlee be granted a new trial where a conviction is obtained on the basis of perjured testimony which was material to the case.

2.    Counsel and the court's conduct and concealment of Burton Dunn's name on the 1979 Case Action Summary sheets used to prove Mr. Brownlee's prior convictions requires a new trial.

3.    The failure to administer an oath to Goodgame deprived Mr. Brownlee of his right to confront and cross-examine witnesses and undermined the integrity of Mr. Brownlee's trial in violation of Mr. Brownlee's rights under the laws and Constitution of the State of Alabama, and the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

      a.    Failure to administer the oath to the state's key witness, whose testimony virtually independently led to Mr. Brownlee's conviction and death sentence, deprived Mr. Brownlee of the right to confront and cross-examine the state's principal witness against him, of due process of law, of the right to a fundamentally fair trial in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Mr. Brownlee's rights under the laws and Constitution of Alabama.

      b.    The failure to swear in a witness at the trial level is prejudicial error requiring reversal.

      c.    The certified transcript of Mr. Brownlee's trial cannot be altered five years after its completion.

5.(sic) The failure to transcribe fully the trial court proceedings deprived Mr. Brownlee of full appellate and statutorily mandated review of his capital sentence and conviction.

6. Mr. Brownlee's counsel were ineffective prior to trial, during the guilty/innocence (sic) phase before the jury, during the sentencing proceeding before the jury, during the sentencing hearing before the court and on direct appeal.

7. The district attorney failed to disclose Goodgame's prior conviction for unlawful possession of a handgun.

8. This court must reject the circuit court's erroneous classification of conclusions of law as findings of fact.

9. This court must reject the circuit court's erroneous application of the doctrine of procedural foreclosure.

Tab R-70, pp. i-iii.

On January 13, 1995, the Alabama Court of Criminal Appeals affirmed the Rule 32 court's denial of post-conviction relief. See Brownlee v. State, 666 So. 2d 91 (Ala. Cr. App. 1995). After Brownlee's request for rehearing in that court was denied, the Alabama Supreme Court similarly denied his petition for a writ of certiorari. Id.

## D. The Instant Habeas Petition

On February 6, 1996, Brownlee filed in this Court a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. On May 15, 1996, he filed an amended petition, in which he alleges his constitutional rights were violated, based on the following claims:

A. Petitioner did not receive effective assistance of counsel in violation of his rights guaranteed by the laws and Constitution of Alabama and the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

B. The failure to administer an oath to Willie Goodgame at the petitioner's trial deprived petitioner of his right to confront and cross-examine witnesses against him under oath, to due process of law, and to a fundamentally fair trial in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Petitioner's rights under the Alabama Constitution.

C.   Goodgame's admission that he lied at the petitioner's trial requires the petitioner be granted a new trial because a conviction and death sentence obtained through unsworn lies violates the petitioner's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the Constitution of the State of Alabama.

D.   The failure to fully transcribe the trial court proceedings deprived petitioner of full appellate and statutorily mandated review of his capital sentence and conviction.

E.   Petitioner's right to a fair trial by an impartial jury under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution were violated by the trial court's failure to grant a change of venue.

F.   Petitioner was deprived of an impartial jury at the guilt/innocence and penalty phases of his trial through improper juror exclusion in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

G.   Petitioner was deprived of an impartial jury at the guilt/innocence and penalty phases of his trial through improper juror inclusion in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

H.   Petitioner's right to a fair trial by an impartial jury was violated by the trial court's restrictions on the voir dire examination of prospective jurors.

I.   Petitioner was deprived of a fair trial by the prosecutor's racially discriminatory selection of jurors and biased use of peremptory challenges.

J.   The prosecutory's misconduct and arguments both prior to and during the guilt/innocence phase of petitioner's trial were improper and violated rights guaranteed to the petitioner by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the state Constitution of Alabama.

K.   Petitioner was convicted of capital murder based solely on the testimony of his alleged accomplice in violation of Alabama state law and the United States Constitution.

L.   Petitioner's conviction under § 13A-5-31(a)(2) cannot stand because the prosecution

failed to prove each element of the crime beyond a reasonable doubt.[3]

M.    The state's failure to obtain a unanimous jury verdict for the death penalty at petitioner's sentencing hearing entitles petitioner to a life sentence without parole and the imposition of a death sentence violates the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and the State Constitution of Alabama.

N.    The state's introduction of prejudicial and inflammatory photographs and diagrams at petitioner's trial violated petitioner's rights.

O.    Petitioner's guilt/innocence and penalty trial were infected throughout by racial discrimination in violation of the Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Alabama law.

P.    The appointment of Mr. Kendrick as appellate counsel and trial counsel violated petitioner's rights.

Q.    Petitioner was deprived of a fair sentencing hearing by the prosecutor's use of peremptory challenges in a racially discriminatory manner.

R.    The state's failure to reveal its deal with petitioner's charged and uncharged co-defendants violated petitioner's right to a fair trial and due process.

S.    The prosecutor's misconduct and arguments at petitioner's sentencing hearing were improper and deprived petitioner of a fundamentally fair hearing and due process.

T.    Participation by the brother of the victim in the prosecution of petitioner was highly improper and denied petitioner a fair trial and due process.

U.    The trial court's instructions limiting consideration of mitigating evidence violated petitioner's rights to a constitutional sentencing hearing.

V.    Alabama's application of the "especially heinous, atrocious and cruel" aggravating

---

[3]Although Mr. Brownlee refers to his conviction in this claim as being pursuant to § 13A-5-31(a)(2), that statute was repealed in 1981 and replaced by § 13A-5-40(a)(2). The indictment (Tab R-31) clearly charged petitioner with capital murder pursuant to § 13A-5-40(a)(2).

circumstance is unconstitutionally vague and as applied to petitioner's case and violates due process and the prohibition against cruel and unusual punishment.

W. The trial court improperly considered inadmissible evidence presented at its sentencing hearing in violation of petitioner's rights.

X. Different appellate counsel should have been appointed to represent the petitioner because both Burton Dunn and James Kendrick participated in concealing Mr. Dunn's conflict of interest from the petitioner and the jury when that fact came to light during the trial.

Y. The petitioner's pleas in the 1979 convictions were not knowing and voluntary.

Z. The execution of mentally impaired persons such as petitioner violates the United States Constitution and the State Constitution of Alabama.

AA. Alabama's death penalty is arbitrarily and discriminatorily applied in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

BB. It is unconstitutional to compel the petitioner to dispel/rebut statements made against him in his presence.

CC. It is unconstitutional to require the defendant to prove that a witness is an accomplice unless the prosecutor's evidence clearly proves the witnesses' status as an accomplice.

DD. The Alabama death penalty statute is unconstitutional because the prosecution only has to disprove the evidence of mitigation by a preponderance of the evidence.

EE. The presentencing report contained inadmissible hearsay and was filled with inaccuracies in violation of the petitioner's rights under the confrontation clause of the United States Constitution.

FF. Sonny Warren was an admitted accomplice and therefore the court erred, as a matter of law, in charging the jury on his status as an accomplice.

GG. Sonny Warren gave perjured testimony at petitioner's trial and therefore petitioner's conviction must be stricken pursuant to Ex parte Richard Frazier, ___

So. 2d ___, No. 88-778 (Ala. 1989).

HH. Petitioner's death sentence while other co-defendants received life sentences or were otherwise uncharged, violates the Eighth Amendment's prohibition against cruel and unusual punishment and the guarantee of equal protection of the laws.

II. The court's failure to conduct an on the record probing inquiry of Burton Dunn's conflict of interest concerning the appearance of his name on the case action summary sheets and the court's failure to ensure that the petitioner was duly informed of that conflict, its consequences, and his right to new counsel, is a constitutional error requiring a new trial.

JJ. Death by electrocution is cruel and unusual punishment, because it often results in protracted pain and suffering, and therefore violates the prohibition against cruel and unusual punishment under the laws of Alabama, and the United States Constitution.

KK. Petitioner was denied the funds to obtain expert witnesses to assist at the trial and these funds are still necessary for this proceeding.

First Amended Petition at 17-70).

## II. HABEAS REVIEW STANDARDS AND DEFAULT DOCTRINES

### A. Generally

A state prisoner "in custody in violation of the Constitution or laws or treaties of the United States" may petition an appropriate court of the United States for a writ of habeas corpus to obtain release from his unlawful confinement. 28 U.S.C. § 2254(a); see Brown v. Allen, 344 U.S. 443, 485 (1953); Johnson v. Nagle, 58 F.Supp. 2d 1303, 1327 (N.D. Ala. 1999). "The writ exists as the appropriate cause of action for a state prisoner seeking to challenge in federal court the 'fact or length' of his confinement." Wilson v. Foti, 832 F.2d 891, 892 (5th Cir. 1987)." Johnson v. Nagle, supra. See also Waley v. Johnson, 316 U.S. 101 (1942). However, a federal habeas court is not concerned with

violations of state law unless the violation raises federal constitutional problems.[4] <u>Wilcox v. Ford</u>, 813 F.2d 1140, 1145 n.7 (11th Cir. 1987). See also <u>McCullough v. Singletary</u>, 967 F.2d 530, 535 (11th Cir. 1992).

## B. Presumption of Correctness to State Court Findings of Fact

In assessing the merits of federal claims presented on habeas, it must be recognized that, under the version of 28 U.S.C. § 2254(d) that is applicable to Brownlee's case,[5]

---

[4]In many of his claims, Brownlee asserts violations of both the federal Constitution and Alabama law. However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Estelle v. McGuire</u>, 502 U.S. 62, 68-69 (1991). Thus, to the extent Brownlee's claims allege violations of Alabama law, they are without merit. In analyzing Brownlee's claims, the Court will confine its discussion to whether Brownlee is entitled to relief based on his allegations that his federal rights have been violated.

[5]28 U.S.C. § 2254 was amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which, among other things, erects additional barriers for state prisoners petitioning for the writ of habeas corpus in federal court. See <u>Terry Williams v. Taylor</u>, ___ U.S. ___, 120 S.Ct. 1495 (2000); <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997); <u>Johnson v. Nagle</u>, 58 F.Supp. 2d at 1335 n.26. However, Mr. Brownlee's petition in this case was filed before the effective date of the AEDPA, April 24, 1996, and the parties agree that, based upon the Supreme Court's decision in <u>Lindh</u>, the AEDPA does not apply to this case. See Supplemental Brief in Support of First Amended Petition at 28-30; Respondent's Supplemental Brief at 18 n.24. See also, <u>e.g.</u>, <u>Johnston v. Singletary</u>, 168 F.3d 630 (11th Cir. 1998); <u>Baldwin v. Johnson</u>, 152 F.3d 1304, 1312 n.7 (11th Cir. 1998); <u>Johnson v. Nagle</u>, <u>supra</u>.
The pre-AEDPA version of 28 U.S.C. § 2254(d) provided as follows:

In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction ... evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear. . . –

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

once certain prerequisites are met, see Cumbie v. Singletary, 991 F.2d 715, 723 n.11 (11ᵗʰ Cir. 1993), this Court generally is required to afford a presumption of correctness to factual findings previously made by a state court. See, e.g., Holladay v. Haley, 209 F.3d at 1247; Baldwin v. Johnson, 152 F.3d 1304, 1312 (11ᵗʰ Cir. 1998); Weeks v. Jones, 26 F.3d 1030, 1034 (11ᵗʰ Cir. 1994). That is to say, state court findings regarding the basic, primary, or historical facts and credibility determinations underlying federal claims are generally presumed to be correct. See Freund v. Butterworth, 165 F.3d 839, 862 (11ᵗʰ Cir. 1999) (en banc). However, even where a state court's findings are, in fact, afforded a presumption of correctness, the state court's application of law to those findings involves a mixed question of law and fact, which implicates plenary federal review. Id.

---

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction ...;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, [or] otherwise appears, ... or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

Brownlee urges, though, that no presumption of correctness should attach to any factual determinations made by the state court after three evidentiary hearings on his Rule 32 petition, on the ground that those findings are set forth in an order that was drafted by counsel in the Alabama Attorney General's office and adopted verbatim by the state court. As Brownlee notes, appellate courts have repeatedly criticized the practice of trial courts adopting orders ghost-written by a party to litigation. See, e.g., Anderson v. City of Bessemer City, 470 U.S. 564, 572 (1985); United States v. El Paso Natural Gas Co., 376 U.S. 651, 657 n. 4 (1964); Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1373 n.46 (11th Cir. 1997); Colony Square Co. v. Prudential Ins. Co., 819 F.2d 272, 274-75 (11th Cir. 1987). Nonetheless, it is well-established that such findings are not per se invalid or subject to a different standard of review and will be upheld if supported by the record. See El Paso Natural Gas, 376 U.S. at 656; Ammons v. Dade City, Fla., 783 F.2d 982, 985 n.4 (11th Cir. 1986); Hamm v. Members of Bd. the of Regents, 708 F.2d 647-48, 650 (11th Cir. 1983). Accordingly, this Court will not deprive the state court's findings of the presumption of correctness under § 2254(d) because they were adopted in an order submitted to that court by the State.[6] See McBride v. Sharpe, 25 F.3d 962, 971 n.12 (11th Cir. 1994); Correll v. Thompson, 63 F.3d 1279, 1293 n. 11 (4th Cir. 1995); Turner v. Williams, 35 F.3d 872, 895 n.22 (4th Cir. 1994), cert. denied, 514 U.S. 1017 (1995), overruled on other grounds, O'Dell v. Netherland, 95 F.3d 1214 (4th Cir. 1996). Of course, those findings must still be supported by the record.

## C. Exhaustion and Procedural Default

Prior factual findings made by state courts aside, in order for this Court to even review the merits of Brownlee's federal claims, he must overcome two interrelated and

---

[6]Brownlee urges additional grounds upon which, he asserts, the facts found by the state court with respect to certain of his claims of ineffective assistance of counsel should not be given deference. However, the Court will, where necessary, address those arguments in the discussion of the particular ineffective-assistance-of-counsel claims to which they pertain.

significant procedural hurdles. First, he must have exhausted the remedies available to him in the state courts with respect to his federal claims. See O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509, 515 (1982); see also Ex parte Royall, 117 U.S. 241 (1886). In other words, a state prisoner must give the state courts an opportunity to act on his federal claims before he presents those claims to a federal court in a habeas petition. O'Sullivan, 526 U.S. at 842. The Supreme Court has recently interpreted the exhaustion requirement to mean that state prisoners must give the state courts a full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process. Id. at 845. Accordingly, "[a] claim is exhausted if it either has been addressed by or was before the highest state appellate court authorized to hear the claim on its merits or if there no longer exists any available remedy in the state courts." Johnson v. Nagle, 58 F.Supp. 2d at 1328 (citing Lundy, 455 U.S. at 515-16).

And second, Brownlee must not have procedurally defaulted his claims. Under the procedural default doctrine, a petitioner may, based upon concerns of comity and federalism, be barred from presenting claims to a federal habeas court where those claims have not been raised in such a way as to permit full review by the courts of the state in the first instance. See Wainwright v. Sykes, 433 U.S. 72 (1977); Johnson v. Nagle, 58 F.Supp. 2d at 1328. Thus, a habeas petitioner who has failed to follow a state's procedural rules in presenting his federal claims and for that reason is barred from presenting those claims to the state appellate courts will also be barred by the procedural default rule from pursuing those claims in federal court on habeas, unless he can show (1) both cause for the procedural default in state court and prejudice attributable thereto, or (2) that the habeas court's failure to consider the merits of the claim will result in a fundamental miscarriage of justice. See Edwards v. Carpenter, ___ U.S. ___, ___, 120 S.Ct. 1587, 1591 (2000). The procedural default rule applies whether the default in question occurred at trial, on appeal,

or on state collateral attack. <u>Edwards</u>, <u>supra</u> (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 490-92 (1986)).

### C.  Cause and Prejudice

Brownlee asserts that he can establish cause and prejudice with respect to numerous claims in his petition that he appears to concede would otherwise be procedurally defaulted because they could have been but were not raised at trial or on direct appeal. See, <u>e.g.</u>, <u>Baldwin v. Johnson</u>, 152 F.3d 1304, 1318 (11ᵗʰ Cir. 1998) (recognizing that under Alabama law, a defendant's failure to raise federal constitutional claims at trial or on direct appeal constitutes a bar to appellate review in state courts, rendering such claims procedurally defaulted in a subsequent federal habeas proceeding).  See also <u>Julius v. Johnson</u>, 840 F.2d 1533, 1546 (11ᵗʰ Cir. 1988) (per curiam) (acknowledging that while Alabama appellate courts are required, under Alabama Rules of Appellate Procedure 39 and 45A, to search the record on direct appeal of death penalty cases for "plain error" and are thus not precluded from reviewing any claim raised for the first time on appeal, the mere existence of such liberal appellate review rules in death cases does not preclude a finding of procedural default on habeas with respect to federal claims that were not expressly presented to or considered by the state appellate courts), modified on other grounds, 854 F.2d 400 (11ᵗʰ Cir.), cert. denied, 488 U.S. 960 (1988).  More specifically, Brownlee contends that he can show cause for these defaulted claims in that his appointed trial and appellate counsel should have raised and preserved them in the state courts but neglected to do so.

An error of counsel at trial or on direct appeal can constitute cause excusing a procedural default, but only if such error rises to the level of a violation of the defendant's constitutional right to ineffective assistance of counsel. See <u>Edwards</u>, <u>supra</u>, ___ U.S. at ___, 120 S.Ct. at 1591 (citing <u>Murray</u>, <u>supra</u>, 477 U.S. at 488-89).  However, where a defendant proffers that the cause excusing a procedural default is his counsel's ineffective

assistance, the allegation of such ineffective assistance is an independent constitutional claim that must not have itself been procedurally defaulted. Id.  It should also be noted, though, that since there is no constitutional right to counsel in state post-conviction proceedings, an Alabama state prisoner cannot establish cause excusing a procedural default based upon an alleged attorney error committed in connection with seeking relief on a Rule 32 petition.   See Hill v. Jones, 81 F.3d 1015, 1024-26 (11th Cir. 1996). Brownlee's allegations of cause and prejudice for claims that the State claims are procedurally defaulted will be considered in the discussion of those individual claims.

### C. Fundamental Miscarriage of Justice

However, Brownlee also seems, perhaps, to be suggesting that he can meet the "fundamental miscarriage of justice" exception to the procedural default doctrine. That exception, however, implicates only a "narrow class of cases," Schlup v. Delo, 513 U.S. 298, 315 (1995), where a petitioner can establish "actual as compared to legal innocence." High v. Head, 209 F.3d 1257, 1270 (11th Cir. 2000) (quoting Sawyer v. Whitley, 505 U.S. 333, 339 (1992)).   " 'To be credible,' a claim of actual innocence 'requires petitioner to support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." High, supra (quoting Schlup, 513 U.S. at 324).   The miscarriage of justice standard that a petitioner must meet differs depending on the challenge brought by the petitioner. If the petitioner claims actual innocence of the underlying crime, he must show that " 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.' " Schlup, 513 U.S. at 327, (quoting Carrier, 477 U.S. at 496). More specifically, the petitioner must demonstrate "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup, 513 U.S. at 327.   If, however, a capital petitioner "challenges his death sentence in particular, he must show 'by clear and convincing evidence' that no reasonable juror would have found him eligible for the death penalty in light of the new evidence."

Calderon v. Thompson, 523 U.S. 538, 559-60 (1998) (quoting Sawyer, 505 U.S. at 348).
Brownlee appears to argue actual innocence with respect to both his conviction and
sentence.

At the Rule 32 hearing, Brownlee presented new evidence in the form of testimony
by Goodgame, James Threatt, and Marty Lee George, who were jail inmates with
Goodgame, which, Brownlee asserts, bolsters his claim that he is actually innocent of the
robbery-murder for which he was convicted.   In short, Goodgame recanted his trial
testimony, stating that while he had participated in the robbery of Jodie's Lounge,
pressure and threats from his attorney and the prosecutor caused him to implicate
Brownlee falsely.   Threatt and George each testified that while they were inmates,
Goodgame told him that Brownlee was not involved in the crime.   However, the state
court expressly found that the testimony given by these witnesses at the Rule 32 hearing
was not credible.  As grounds for that determination, the state court first noted the vague
and changing nature of Goodgame's testimony at the Rule 32 hearing.   Namely,
Goodgame was at first unwilling to identify who, if not Brownlee, the other two men
involved in the robbery were, only later, upon threat of a contempt citation, to state
vaguely that he had met them at a crack house the day before, that they were from "out-
of-town," that one of them was named "Ron," that he did not know the other man's
name, and then later stated that the other man's name was "Sonny." (Tab R-63 at 33-34).
The order also recounted that while Goodgame denied having planned the robbery, he
stated that he did not know who did, and that Goodgame, despite his claim of
prosecutorial coercion, subsequently admitted that the prosecutor had told him to tell the
truth at Brownlee's trial and never told him to lie. Id. at 34-37.  Finally, the state court
referred to testimony by the prosecutors at Brownlee's trial, indicating that, in a last ditch
effort at a plea bargain, Brownlee confessed following the jury's sentencing verdic that he
participated in the robbery but denied being the shooter. Id. at 38.  As for Threatt and

George, the state court found their testimony not credible because of evidence indicating that (1) Goodgame denied knowing the latter and said that he might have only "possibly" told the former that Brownlee was innocent; (2) Threatt and George had violated their parole and probation due to failed drug tests; (3) George had just happened to see Brownlee in the Jefferson County Jail four months prior to testifying on his behalf at the Rule 32 hearing; and (4) Threatt "ran around" with one of Brownlee's brothers. Id. The state court judge had the opportunity to observe the demeanor of all of the witnesses at both Brownlee's trial and at the hearings on Brownlee's Rule 32 petition, and was, therefore, in the best position to assess their credibility. The state court's credibility findings, supra, are well-supported by the record, and the Court concludes that they are to be afforded a presumption of correctness under § 2254(d). See, e.g., Coulter v. Herring, 60 F.3d 1499, 1503 (11th Cir. 1995) (applying the statutory presumption of correctness under § 2254(d) to the state court's credibility determination). Accordingly, the Court must also defer to those credibility determinations in assessing whether Brownlee has presented sufficient evidence to meet the "fundamental miscarriage of justice" exception. Cf. In re Jones, 137 F.3d 1271, 1273 (11th Cir. 1998) ("[I]n light of the credibility findings of the [state court post-conviction] judges with respect to the 'newly-discovered' evidence" we cannot conclude that [the federal habeas petitioner] has made a prima facie showing . . . that, but for constitutional error, no reasonable fact finder would have found [him] guilty of the underlying offense" (footnote omitted)). See also Klein v. Neal, 45 F.3d 1395, 1400-01 (10th Cir. 1995). Taking account of the state court's credibility determinations, it is apparent that Brownlee cannot make a showing that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. See Madrid v. Gregoire, 187 F.3d 648 (table), 1999 WL 439460, **2 (9th Cir. 1999) (holding that the district court did not err in concluding that a federal habeas petitioner had failed to make a claim of actual innocence because the only evidence thereof, a

witness's recantation, was determined to not to be credible by the state trial court and on habeas review such was presumed to be correct under 28 U.S.C. § 2254). He has not, therefore, met the "fundamental miscarriage of justice" exception as it applies to actual innocence of the underlying crime.

Nor can he prevail on his claim that he is actually innocent with respect to his sentence. In his brief, he seems to suggest that he meets this exception to the procedural default rule simply by virtue of the fact that his trial counsel had a conflict of interest. See Petitioner's Amended Brief at 63. However, the United States Court of Appeals for the Eleventh Circuit has held that even if a conflict of interest by counsel is shown, such is not sufficient to meet the fundamental miscarriage of justice exception; there must be a showing of factual innocence. See High v. Head, 209 F.3d at 1274. Brownlee also appears to argue that he is actually innocent for purposes of sentencing based upon alleged inaccuracies in the case action summary sheets offered to prove two of the three aggravating circumstances found at sentencing: that he was on parole when he committed the murder and that he was previously convicted of a felony involving the use or threat of violence to the person. However, Brownlee presented no evidence in state court and he has made no allegation that might be interpreted to be a claim that, as a factual matter, he was not on parole or that he did not have a prior felony conviction involving the use of force. Thus, Brownlee's claim, that the evidence of the two aggravating factors was "unreliable," smacks of a claim of legal innocence, as opposed to the factual innocence required to show a fundamental miscarriage of justice. Moreover, Brownlee was eligible for the death penalty merely by virtue of the fact that the jury returned a guilty verdict, because the robbery element of the capital murder is also an independently sufficient aggravating circumstance under Alabama law. See, e.g., Ex parte Windsor, 683 So.2d 1042, 1060 (Ala. 1996), cert. denied, 520 U.S. 1171 (1997). Therefore, even if the two aggravating factors potentially relating to the case action summary sheets were not

established, he still was eligible for the death penalty based on the robbery element of the murder, and his claim of actual innocence for sentencing purposes fails.  See <u>Sawyer v. Whitley</u>, 505 U.S. at 348; <u>Roberts v. Singletary</u>, 29 F.3d 1474, 1479 (11th Cir. 1994); <u>Johnson v. Singletary</u>, 938 F.2d 1166, 1183 (11th Cir. 1991) (en banc).

## III. ANALYSIS OF THE CLAIMS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Brownlee points to a myriad of acts and omissions of his appointed trial and appellate lawyers that, he claims, violated his right to effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.[7] The deprivation of the right to effective assistance of counsel is an error that justifies the issuance of the writ of habeas corpus. <u>Terry Williams v. Taylor</u>, ___ U.S. ___, ___, 120 S.Ct. 1495, 1504 (2000).  The United States Court of Appeals for the Eleventh Circuit recently set forth the standards applicable to ineffective-assistance-of-counsel claims as follows:

> In order to succeed with a challenge based on ineffective assistance of counsel, a petitioner has to satisfy a two part test. First, the petitioner must show that counsel's performance was deficient. See <u>Strickland v. Washington</u>, 466 U.S. 668, 687 [ ] (1984). This means that the petitioner must show that the representation provided by counsel was outside the 'wide range of competent assistance' and he must also overcome the presumption of competence. <u>Id.</u> at 690 [ ].  In analyzing counsel's competence, the court must apply a 'heavy measure of deference to counsel's judgments.' <u>Id.</u> at 691 [ ]. Second, the petitioner must show that the performance prejudiced the defense, so that the result of the trial is not reliable. See <u>id.</u>  To satisfy this test, the defendant 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' <u>Id.</u> at 694 [ ]. Furthermore, '[a] reasonable probability is a probability sufficient to

---

[7]The Sixth Amendment right to effective assistance of counsel is applicable to the states via the Due Process Clause of the Fourteenth Amendment. See <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963).

undermine confidence in the outcome.' Id. Because both parts of the test
must be satisfied in order to show a violation of the Sixth Amendment, the
court need not address the performance prong if the defendant cannot meet
the prejudice prong, see id., or vice versa.

Holladay v. Haley, 209 F.3d 1243, 1247-48 (11ᵗʰ Cir. 2000).

As indicated previously, in assessing claims alleging ineffective assistance of counsel,
under the pre-AEDPA version of 28 U.S.C. § 2254(d), the Court is generally required to
afford a presumption of correctness to state court findings of historical fact underlying
those claims. See Strickland, 466 U.S. at 698; Townsend v. Sain, 372 U.S. 293, 309 n.6
(1963); Washington v. Watkins, 655 F.2d 1346, 1351-52 (5ᵗʰ Cir. Unit A September 14,
1981).[8] However, a state court's resolution of the performance and prejudice components
of the Strickland ineffectiveness test are, by contrast, subject to de novo review because
such ultimate conclusions involve mixed questions of law and fact. See Kimmelman v.
Morrison, 477 U.S. 365, 388-89 (1986); Townsend, 372 U.S. at 309 n.6; Mills v. Singletary,
161 F.3d 1273, 1285 (11ᵗʰ Cir.1998); Mills v. Singletary, 63 F.3d 999, 1023-24 n.43 (11ᵗʰ Cir.
1995).

The Court also notes that Brownlee argues in his brief that he is entitled to an
evidentiary hearing with respect to a number of his claims alleging ineffective assistance
of counsel. However, to the extent that Brownlee is claiming he should be allowed to
present evidence in this Court on a material fact that was not adequately developed in the
state court proceedings, he must show, like with a procedurally defaulted claim, either (1)
cause and prejudice for his failure to present the evidence in state court or (2) that a
fundamental miscarriage of justice will result unless a federal evidentiary hearing is held.

---

[8]All decisions of the United States Court of Appeals for the Fifth Circuit handed down
prior to the close of business on September 30, 1981 are binding precedent in the Eleventh
Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11ᵗʰ Cir. 1981) (en banc). Also
binding precedent in the Eleventh Circuit are all of the post-September 30, 1981 decisions of
Unit B of the former Fifth Circuit. Stein v. Reynolds Securities, Inc., 667 F.2d 33, 34 (11ᵗʰ Cir.
1982).

See <u>Baldwin</u>, 152 F.3d at 1312. Brownlee argues that he can show cause and prejudice for his failure to present certain evidence supporting some of his claims of ineffective assistance of counsel. Those arguments will be addressed, where necessary, in the context of the discussion of the particular claims to which they pertain. However, as discussed previously, Brownlee has not met the actual innocence showing required to satisfy the "fundamental miscarriage of justice" exception. The Court will now proceed to address Brownlee's specific claims of ineffective assistance of counsel.

### 1.  Failure to Move for a Change of Venue
<u>(Claim A(8)(a)(1))</u>[9]

First, Brownlee argues that his appointed lawyers were constitutionally ineffective for failing to seek a change of venue, based upon allegedly excessive and prejudicial pretrial publicity. The State responds that this claim has been procedurally defaulted because Brownlee properly raised it in his Rule 32 petition in state court but then allegedly failed to present it to the Alabama Court of Criminal Appeals. It is true that if Brownlee failed to present this claim on that state court appeal, he cannot raise it here, unless he can show either cause and prejudice for failing to do so or that a fundamental miscarriage of justice would result from the Court's failure to address the claim. See <u>Collier v. Jones</u>, 910 F.2d 770, 773 (11th Cir. 1990). The Court concludes, however, that this issue is not procedurally defaulted on the ground asserted by the State.[10]

---

[9]These claim identifications correspond to the paragraph designations of the ineffective assistance claims in Brownlee's first amended habeas petition and are employed to indicate which of those claims and portions thereof are addressed under the heading. This is necessary because the recitation of claims of ineffective assistance of counsel in Brownlee's habeas petition are repetitive and often overlap.

[10]In addition to its defense that a number of Brownlee's claims, including this one, are procedurally defaulted because he failed to present them in his appeal to the Alabama Court of Criminal Appeals after the trial court denied his Rule 32 petition, the State seems to suggest for the first time in its supplemental brief that Brownlee has also procedurally defaulted this claim and others because he allegedly did not present them to the Alabama Supreme Court in his

Pursuant to Harris v. Reed, 489 U.S. 255, 263 (1989), if the last state court rendering a judgment includes a "plain statement" that its disposal of a federal claim rests on an independent and adequate state ground, including a procedural bar, then even if the state court issues an alternative ruling based on its interpretation of federal law, a federal habeas court should decline, under the procedural default doctrine, to reach the merits of the federal claim. However, where the last state court presented with a federal claim might have applied a state procedural bar but instead addressed the merits of the claim, there is no procedural bar to federal habeas review. See, e.g., Thomas v. Harrelson, 942 F.2d 1530, 1531-32 (11th Cir. 1991). Indeed, if there is ambiguity in the state court's

---

petition for writ of certiorari for discretionary review in that court. See Respondent's Supplemental Brief at 19. ("Even when review in the state supreme court is discretionary, a petitioner must present his claims to that court in order to exhaust all available remedies"). In support, the State cites a United States Supreme Court decision holding that an Illinois state prisoner defaulted a number of federal claims because he failed to present them to the Illinois Supreme Court on direct appeal before filing a petition for federal habeas relief, notwithstanding the limited and discretionary nature of review afforded by the Illinois Supreme Court. See O'Sullivan v. Boerckel, 526 U.S. 838, 844-47 (1999). There is, however, authority in this circuit holding that an Alabama state prisoner petitioning for federal habeas review does not default his federal claims based upon his failure to present those claims to the Alabama Supreme Court, where review in that court is discretionary under Alabama Rule of Appellate Procedure 39. See Smith v. White, 719 F.2d 390 (1983). While criminal defendants like Brownlee who are sentenced to death have an appeal of right to the Alabama Supreme Court on direct review, that court's jurisdiction is discretionary with respect to review of collateral attacks upon such convictions. No court appears to have addressed whether Boerckel abrogates Smith. However, this Court will not decide the issue here. Assuming that Boerckel both abrogates Smith and applies to petitions for post-conviction relief in state courts, see White v. Godinez, 192 F.3d 607 (7th Cir. 1999) (per curiam), the Court concludes that the State has waived this ground of procedural default because it was not raised in its answer, nor more than four years after Mr. Brownlee filed his petition and more than nine months after the Supreme Court issued its opinion in Boerckel. See Esslinger v. Davis, 44 F.3d 1515, 1525 n.32 (11th Cir. 1995) ("The state can waive a procedural bar to relief by explicitly waiving, or by merely failing to assert, the bar in its answer to the habeas petition"); Davis v. Zant, 36 F.3d 1538, 1545 (11th Cir. 1994); Hernandez v. Cowan, 200 F.3d 995, 997 (7th Cir. 2000) (holding that the State of Illinois had failed to timely raise, and thus waived, the defense that the petitioner had procedurally defaulted his federal claims by not presenting them for discretionary review in the Illinois Supreme Court).

opinion regarding whether a state procedural bar was relied upon, federal habeas review of the merits is not precluded. <u>Harris</u>, 489 U.S. at 261-62. Thus, where the last state court to be presented with a federal claim could have found it defaulted under state law and that court does not specifically discuss the claim, if the court otherwise indicates that it disposed of the federal claim on the merits, that claim may be reviewed on habeas. See, <u>e.g.</u>, <u>Cumbie v. Singletary</u>, 991 F.2d 715, 720 (11th Cir. 1993)(holding no procedural default where state appellate court simply stated, "We find no merit to the remaining issues," which apparently included an otherwise unaddressed Confrontation Clause claim).

On appeal from the trial court's denial of his Rule 32 petition, Mr. Brownlee claimed that his appointed counsel were constitutionally ineffective in numerous respects, although he did not specifically argue in the text of his brief in the Alabama Court of Criminal Appeals that one of their deficiencies was in failing to move for a change of venue. However, in footnote 29 of his brief in that court Mr. Brownlee listed 31 substantive claims, including that a change of venue should have been ordered, which he argued the Court of Criminal Appeals should address on the merits because the failure of his attorneys to raise such claims at trial and on direct appeal documented their ineffective assistance. (Tab R-70 at 63-64 & n.29). And while the Court of Criminal Appeals did not discuss how the failure to raise those particular claims did or did not constitute ineffective assistance of counsel, that court stated in pertinent part as follows:

> The appellant claims that the trial court misapplied the rules of preclusion regarding post-conviction petitions. This claim is without merit. We earlier stated that claims of ineffective assistance of counsel are cognizable in a Rule 32, Ala. R. Crim. P., petition. . . . The trial court's order sufficiently addressed the merits of the ineffective assistance of counsel claims, as well as any other claims it deemed necessary to address, in the appellant's petition.

<u>Brownlee v. State</u>, 666 So. 2d at 100. The Court concludes that the foregoing can be

reasonably interpreted to suggest that the Court of Criminal Appeals considered and disposed of all of Mr. Brownlee's claims of ineffective assistance of counsel, including those referencing footnote 29 of his appellate brief, based upon that court's determination that such claims were correctly resolved on the merits by the trial court. Thus, there is no "plain statement" from the Court of Criminal Appeals that it relied upon a state procedural bar with respect to the claims of ineffective assistance of counsel Brownlee referenced in his brief, and this Court may, therefore, address the merits of those claims. Harris v. Reed; Cumbie v. Singletary, supra.

To prevail on this claim of ineffective assistance of counsel, Mr. Brownlee must show (1) that his counsel's failure to seek a change of venue was so unreasonable as to fall outside the wide range of competent assistance and (2) that he suffered prejudice as a result of this failure, i.e., that there is a reasonable likelihood that the outcome of his trial would have been different if his attorneys had moved for a change of venue. See Baldwin v. Johnson, 152 F.3d 1304, 1314 (11th Cir. 1998). See also Braun v. Ward, 190 F.3d 1181, 1189 (10th Cir. 1999) ("Braun failed to show any reasonable probability that the outcome of the death penalty would have been any different in a different venue, given the 'overwhelming evidence against him,' including evidence on the aggravating [factors].") (Citation omitted). The Court concludes that Mr. Brownlee has not established either prong.

In order to assess the reasonableness of the failure to move for a change of venue and what prejudice might have resulted therefrom, the Court looks to the standards that would have been employed at the time by the Alabama state court to evaluate such a motion, had one been made.[11]  See e.g., Baldwin, 152 F.3d at 1314 (holding that a claim

---

[11]While a federal habeas court may not grant relief based on violations of state law, see note 3, supra, a petitioner may establish that his federal constitutional right to effective assistance of counsel was violated by his attorney's failure to raise a meritorious claim under state law. See Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984) ("[T]he issue of ineffective

alleging ineffective assistance for failing to seek a change of venue was without merit, because the petitioner suffered no prejudice in that he was not entitled to a change of venue under Alabama law). See also Burston v. Caldwell, 506 F.2d 24, 31 (5th Cir.) (holding that there was no support in the record for the finding that counsels' assistance was ineffective when considered in conjunction with procedural and substantive law as it existed in Georgia in 1935, when the petitioner's trial was held), cert. denied, 421 U.S. 990 (1975).[12] In order to be entitled to a change of venue under Alabama law, Brownlee would have had to prove either "that there existed actual [juror] prejudice against [him] or that the community was saturated with prejudicial publicity." Eddins v. State, 501 So. 2d 574, 575 (Ala. Cr. App. 1986) (citing Sheppard v. Maxwell, 384 U.S. 333 (1966); Franklin v. State, 424 So. 2d 1353 (Ala. Cr.. App. 1982). In the latter situation,

> it is recognized that the publicity may be inherently prejudicial, as where the totality of the circumstances involving the media coverage results in inherently prejudicial publicity when 'newsmen took over practically the entire courtroom,' Sheppard v. Maxwell, 384 U.S. 333, 355 [ ] (1966); by the process of televising the defendant's notorious, heavily publicized, and highly sensational criminal trial, Estes v. Texas, 381 U.S. 532 [ ] (1965); where the accused confesses on television, Rideau v. Louisiana, 373 U.S. 723 [ ] (1963); or so many veniremen have fixed opinions that suspicion is cast upon all, Murphy v. Florida, 421 U.S. 794 [ ] (1975).

Grayson v. State, 479 So. 2d 69, 74 (Ala. Cr. App. 1984). However, pretrial publicity that is factual or objective in nature generally does not implicate inherent prejudice. Davis v.

---

assistance--even when based on the failure of counsel to raise a state law claim--is one of constitutional dimension").

[12] All decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc). Also binding precedent in the Eleventh Circuit are all of the post-September 30, 1981 decisions of Unit B of the former Fifth Circuit. Stein v. Reynolds Securities, Inc., 667 F.2d 33, 34 (11th Cir. 1982).

State, 554 So. 2d 1094, 1100 (Ala. Cr. App. 1984). Indeed, "[n]ewspaper articles or widespread publicity, without more, are insufficient to grant a motion for change of venue." Ex parte Grayson, 479 So.2d 76, 80 (Ala.), cert. denied, 462 U.S. 865 (1985). A defendant is not entitled to jurors who are totally ignorant of the facts and issues involved in the case. Id. Nor is a defendant entitled to jurors who have not entertained a preconceived notion as to his guilt or innocence; it is sufficient if the jurors can lay aside their impressions or opinions and render a verdict based on the evidence presented. Id. "Thus, '[t]he proper manner for ascertaining whether adverse publicity may have biased the prospective jurors is through the voir dire examination." Id. (quoting Murphy v. Florida, 421 U.S. 794, 799-800 (1975).

In its order denying Brownlee's Rule 32 petition, the trial court found that any prospective juror who indicated having seen or read anything about the case was subsequently individually examined on voir dire regarding his or her ability to be fair and impartial regardless of what they knew or remembered from any pretrial publicity regarding the case. Tab R-63 at 41. That court further stated that of the 56 prospective jurors in the case, only 12 responded that they had heard anything about the case as a result of pretrial publicity and the majority of the 12 could not recall any details, and all 12 indicated that they could be fair and impartial regardless of what they had seen or read. Id. These findings are supported by the record and are presumed correct under 28 U.S.C. § 2254(d).[13] Thus, there is no indication that a motion for change of venue was warranted based upon actual juror prejudice. Nor do any of the newspaper articles Brownlee offered at the Rule 32 hearing come close to showing that the community was saturated with the

---

[13]Mr. Brownlee argues that he is entitled to an evidentiary hearing on his claim that his attorneys were ineffective for failing to move for a change of venue. He asserts that this is so because the findings made by the state court allegedly did not address or resolve the relevant facts. See 28 U.S.C. § 2254(d)(1) (1994); Townsend v. Sain, 372 U.S. 293, 313-15 (1963). However, the Court concludes that the findings made on this issue by the state court sufficiently resolved the issue.

quantity or quality of prejudicial pretrial publicity that might warrant a change of venue based upon "presumed" or "inherent" prejudice. Because there is no evidence indicating that a motion for change of venue was warranted or had any chance of succeeding, the Court concludes that Brownlee has failed to show either that his counsel was constitutionally deficient or that he suffered prejudice.

## 2. Failure to Bind Brownlee Over to the Grand Jury
### (Claim A(8)(a)(6)).

Brownlee claims that his trial counsel was ineffective for failing to object to the failure to bind him over before the grand jury, allegedly in violation of the procedural requirements set forth in Temporary Alabama Rule of Criminal Procedure 16.2. The State responds that this claim is procedurally defaulted because Brownlee included it in his Rule 32 petition but then failed to present it to the Alabama Court of Criminal Appeals. Indeed, such appears to be the case. Brownlee did not include this ground of ineffective assistance in the text of his brief before the Court of Criminal Appeals, and, unlike his claim alleging that his trial counsel were ineffective for failing to move for change of venue, this claim is not referenced in footnote 29 of his appellate brief. Thus, the Court concludes, it was not presented to the Court of Criminal Appeals and is procedurally defaulted. See Collier v. Jones, 910 F.2d 770, 773 (11th Cir. 1990). And even if it is not defaulted, Brownlee has failed to allege any facts or present any argument on the merits tending to show that this alleged failure by his trial counsel was either constitutionally deficient or caused him any prejudice under Strickland. Accordingly, this claim affords no basis for relief.

## 3. Failure to Adequately Examine Potential Jurors
### (Claim A(8)(b)(1)

Brownlee claims in his petition that his trial counsel were ineffective during jury selection for allegedly failing to inquire about (1) potential bias in favor of the death

penalty, (2) potential racial bias, and (3) for failing to "voir dire potential jurors in a way to effectively discern if they would be biased or should otherwise be struck for cause." First Amended Petition at 20. Each of these contentions will be addressed in turn.

### a. Pro-Death-Penalty Bias

Brownlee claims that his trial counsel were deficient for allegedly failing to ensure that members of the venire were adequately examined so as to identify jurors who would automatically sentence him to death based on a capital conviction. The record indicates that the trial court conducted extensive voir dire on the issue of whether jurors were so unalterably <u>opposed to</u> the death penalty that they would be unable to perform their duties to consider the imposition of such a punishment, which would allow them to be excused for cause. See <u>Witherspoon v. Illinois</u>, 391 U.S. 510 (1968); <u>Wainright v. Witt</u>, 469 U.S. 412 (1985). However, the record also shows that neither the trial court nor Brownlee's counsel sought to inquire into the reverse situation, <u>i.e.</u>, whether a juror might be excused based upon a similarly strong bias <u>in favor of</u> the death penalty. In <u>Witt</u>, the Supreme Court clarified that the test for determining whether a potential juror may be excused for cause based upon his opposition to the death penalty is "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" 469 U.S. at 424 (quoting <u>Adams v. Texas</u>, 448 U.S. 38, 45 (1980)). Several weeks before Brownlee's trial, the Alabama Court of Criminal Appeals released an opinion extending the application of this standard to cases involving the issue of whether a juror is to be excused because of a pro-death penalty bias as well. See <u>Bracewell v. State</u>, 506 So.2d 354, 358 (Ala. Cr. App. 1986). Subsequently, the United States Supreme Court validated the general correctness of that analysis. See <u>Morgan v. Illinois</u>, 504 U.S. 719, 728-29 (1994).

Even assuming that Brownlee's counsel was constitutionally deficient for failing to initiate an inquiry into possible pro-death bias on the part of potential jurors, which

is itself doubtful, the Court concludes Brownlee has fallen far short of showing the prejudice required under <u>Strickland</u>. The failure to "life-qualify" the jury does not mean that the make-up of the jury is unfair or partial. <u>Banks v. Horn</u>, 928 F.Supp. 512, 518 (M.D. Pa. 1996). Brownlee has not alleged, and there is nothing in the record suggesting, that any potential juror was, in fact, particularly in favor of the death penalty, never mind an indication that any juror might have been excused for cause on that basis. Thus, he has failed to allege facts entitling him to relief on this claim. <u>United States v. Chandler</u>, 950 F.Supp. 1545, 1557 (N.D. Ala. 1996). Because it must be presumed that jurors follow instructions, <u>Ingram v. Zant</u>, 26 F.3d 1047, 1053 (11th Cir. 1994), and because Brownlee's contention is too speculative to show prejudice, he is not entitled to relief on this claim. <u>Boliek v. Delo</u>, 912 F.Supp. 1199, 1219 (W.D. Mo. 1995), rev'd on other grounds, 96 F.3d 1070 (8th Cir. 1996).

   b.  Racial Bias

The record shows that the examination of the venire did not include questions directed towards detecting racial bias. Brownlee argues that his trial counsel were constitutionally ineffective for failing to initiate such an inquiry. The Court disagrees, because Brownlee has failed to show either deficient performance or prejudice under the <u>Strickland</u> standards with respect to this claim.

In <u>Turner v. Murray</u>, 476 U.S. 28, 36-37 (1986), the Supreme Court held that, under the Sixth and Fourteenth Amendments, "a capital defendant accused of an interracial capital crime is entitled to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias." However, courts have repeatedly held that a trial counsel's failure to inquire of jurors on voir dire about racial prejudice is reasonable, and thus not indicative of constitutionally deficient performance, because such questions have the potential to emphasize unduly the racial aspect of the crime and to polarize and irritate jurors. See, <u>e.g.</u>, <u>Magwood v. Smith</u>, 791 F.2d 1438, 1445 (11th Cir. 1986); <u>Sexton</u>

v. French, 163 F.3d 874, 887 (4th Cir. 1998); Moore v. Butler, 819 F.2d 517, 520 (5th Cir. 1987); Gustave v. United States, 627 F.2d 901, 906 (9th Cir. 1980).  Further, as with his contention that his counsel should have inquired about pro-death-penalty bias, Brownlee has failed to show that there is a reasonable probability that the outcome of his trial would have been different if his counsel had asked jurors about potential racial bias. Thus, the Court concludes, he is not entitled to relief on this claim.

### c.  Generally

Brownlee argues that his trial counsel were deficient at jury section by allegedly failing to "voir dire potential jurors in a way to effectively discern if they would be biased or should otherwise be struck for cause."  He has failed, however, to allege any specific facts or present any legal argument in support of this claim, either in his petition or his brief.  The Court concludes that the trial record of juror voir dire belies this argument. Brownlee has failed to establish either deficiency or prejudice under Strickland.  This claim is without merit.

### 4.  Failure to Make a Batson Objection
### (Claim A(8)(b)(3)-(4)

Brownlee claims that his trial counsel were ineffective at jury selection because they failed to object to peremptory challenges made by the prosecution that were allegedly calculated to exclude black people from serving on his jury, in violation of Batson v. Kentucky, 476 U.S. 79 (1986).  Mr. Brownlee also urges that he is entitled to an evidentiary hearing on this claim.  The State responds by arguing that this claim is procedurally defaulted because Brownlee allegedly did not present it to the Alabama Court of Criminal Appeals following the trial court's denial of relief on his Rule 32 petition.  However, the Court concludes that Brownlee referenced this ineffective assistance claim in footnote 29 of his appellate brief.  Thus, the Court concludes that it may address the merits for the same reasons stated above respecting Brownlee's

ineffectiveness claim founded upon his counsel's failure to move for a change of venue.

Unfortunately for Brownlee, a review of this claim on the merits reveals that he is not entitled to any relief based upon it. Brownlee has failed to allege any facts underlying this claim. Rather, he has made a bare, conclusory allegation that the prosecution exercised some unspecified number of peremptory challenges upon some unidentified members of the venire on the basis of race and that his lawyers should have objected. He presented no evidence at the Rule 32 proceedings tending to support this claim. Further, the Rule 32 judge, who also presided at trial, found that there was no factual basis to suggest that a Batson objection was warranted, based upon testimony by Brownlee's trial attorneys that they were aware of the Batson decision but believed that the prosecution struck blacks and whites in roughly equal numbers, that there appeared to be legitimate reasons for striking black members of the venire, and that several black people ultimately served on Brownlee's petit jury.[14] Brownlee has not directed the Court's attention to any evidence presented in the Rule 32 proceedings tending to undercut these findings; indeed, Brownlee seems to acknowledge that he did not present evidence in those proceedings sufficient to establish that his lawyers' failure to raise a Batson challenge was constitutionally deficient or that he suffered resulting prejudice. Instead, he simply asserts that he requires a hearing in this Court to develop these issues. However, he has neglected to articulate facts in support of his claim; what additional evidence, if any, he might present on them; or why he failed to present such evidence in state court. The Court concludes that Brownlee is not entitled to a hearing on this issue. See Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (en banc) ("The petitioner will not be entitled to an evidentiary hearing when his claims are merely 'conclusory allegations

_____

[14]The trial record does not clearly establish how many blacks served on Brownlee's petit jury. However, at the Rule 32 hearing Dunn indicated that he believed that there may have been four, while Brownlee himself stated that there were three, which Dunn acknowledged could be correct. See Rule 32 Hearing Transcript at 444-45.

unsupported by specifics' or 'contentions that in the face of the record are wholly incredible,' " quoting <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977)).  Brownlee's failure to present evidence showing either deficiency or prejudice under <u>Strickland</u> causes the Court to resolve this issue adversely to him.

### 5.  Failure to Ensure Jury Drawn From Fair Cross Section
### (Claim A(8)(b)(2)

Brownlee asserts that his trial counsel were ineffective because they "failed to ensure that [his] jury be drawn from and composed of a fair cross section of the population in Jefferson County, Alabama." Brownlee alleges no further facts in support of this claim, which the Court interprets to be a contention that his counsel was deficient for failing to argue that the venires from which Brownlee's grand and petit juries were chosen under-represented black and female jurors. See Petitioner's Supplemental Brief at 66.  However, Brownlee admits that he has not presented evidence sufficient to establish that the procedures for drawing the venires was unlawful, and he further concedes implicitly that he has not yet secured such evidence. See <u>id.</u> at 67.  The Court concludes that regardless of whether Brownlee might at some point in the future be able to obtain evidence tending to support a substantive claim that the procedures for constituting the venires were unconstitutional, his inability to obtain such evidence more than four years after filing his habeas petition belies his assertion that his trial counsel's omission in raising the issue at trial was constitutionally deficient under <u>Strickland</u>.  This issue is without merit, as Brownlee has presented no evidence whatsoever tending to indicate that his counsel had reason to believe that a challenge on this ground was warranted or had any chance of success.  See <u>Gates v. Zant</u>, 863 F.2d 1492, 1497 (11th Cir. 1989); <u>Birt v. Montgomery</u>, 725 F.2d 587, 598 (11th Cir.) (en banc), cert. denied, 469 U.S. 874 (1984).

### 6.  Failure to Ensure Transcription of "Critical" Sections of Voir Dire
### (Claim A(8)(b)(5)

Brownlee alleges that his trial counsel were ineffective because they "did not adequately preserve the record in that they never had critical sections of the trial transcribed, including important parts of the voir dire for the selection of jurors, as well as other important portions of the record." First Amended Petition at 21. Once again, Brownlee fails to support this claim with any underlying facts. To the extent that this claim relates to defense counsel's failure to ensure that portions of juror voir dire or other unspecified parts of the trial that he claims should have been transcribed, it is without merit.[15] Brownlee has failed to allege or prove any specific prejudice resulting from defense counsel's omission on this vague claim. See United States ex rel. Link v. Lane, 811 F.2d 1166, 1172 (7th Cir. 1987); Morrison v. Thigpen, 1995 WL 914616, *16 (M.D. Ala. 1995), judgment amended on other grounds, 952 F.Supp. 729 (M.D. Ala. 1996).

### 7.  Failure to Object to Trial Court's Excusing Jurors for Cause
### (Claim A(8)(b)(6)

Brownlee contends that his trial counsel were ineffective because they allegedly "failed to object to the trial court's improper and arbitrary exercise of cause challenges against some venire members [who] had demonstrated their ability to faithfully follow their oath as jurors." First Amended Petition at 21. See also Witherspoon v. Illinois, 391 U.S. 510 (1968); Wainwright v. Witt, 469 U.S. 412 (1985). Brownlee appears to claim that his counsel should have objected to the trial court's excusing for cause two potential jurors, a Mrs. Bellenger and a Mrs. Presley, who, Brownlee alleges, indicated that they could consider voting for the death penalty. See id. at 41. The record shows, however, that Brownlee's counsel did object to the prosecutor's strikes of both Mrs. Bellenger and Mrs. Presley for cause. Trial Record at 71, 74. Brownlee has failed to establish deficient

---

[15]Brownlee has also argued that his counsel was ineffective for failing to ensure that discussions regarding the stipulation to Brownlee's prior robbery convictions were transcribed for the record. The Court addresses that particular claim elsewhere.

performance or to even allege any specific prejudice, and this issue is, therefore, without merit.

### 8. Failure to Investigate and Argue Incompetency to Stand Trial
#### (Claims A(8)(a)(4), A(8)(c)(7))

Brownlee claims that his trial counsel should have investigated his mental problems and limitations to establish that he was incompetent to stand trial. Defense counsel has a duty to investigate his client's competency. Futch v. Dugger, 874 F.2d 1483, 1487 (11ᵗʰ Cir. 1989). Competency in this sense means that, at the time of trial and sentencing, a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." Alexander v. Dugger, 841 F.2d 371, 375 (11ᵗʰ Cir. 1988) (quoting Dusky v. United States, 362 U.S. 402 (1960)). Counsel can be ineffective either by failing to make reasonable investigation into his client's competency or by failing to make a reasonable decision that such investigation was unnecessary. Futch, 874 F.2d at 1487. However, the Rule 32 court found that based on their discussions with Brownlee, his attorneys had no reason to believe that he had a mental problem of any kind, Tab R-63 at 8-9, indicating that their performance was not deficient. Moreover, in order to demonstrate prejudice from counsel's failure to investigate his competency, Brownlee must show that there exists "at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial." Id. (quoting Alexander, 841 F.2d at 375). Brownlee has failed to do so, in that he gives no "concrete examples suggesting that at the time of his trial he did not have the ability to consult with his lawyer or that he did not understand the proceedings against him." Alexander, 841 F.2d at 375. Instead, he emphasizes that his counsel could have obtained records documenting his history of outpatient treatment for mental problems, without attempting to demonstrate or explain how these past problems rendered him incompetent to stand

trial. See id. Compare Agan v. Singletary, 12 F.3d 1012, 1018 (11th Cir. 1994) (finding ineffective assistance where the attorney failed to obtain the defendant's medical or military files that would have raised a "red flag" as to his competency). Finally, Dr. Beidleman, the psychologist who testified on Brownlee's behalf, indicated at the sentencing hearing before the trial judge that, in his opinion, while Mr. Brownlee showed signs of a mixed substance abuse disorder in remission, a mixed personality disorder, and borderline intellectual functioning, Trial Record at 508, he was, nonetheless, not actively psychotic and there was no evidence of a thought disorder or severe mood disturbance. Id. at 508. Similarly, at the Rule 32 hearing Dr. Beidleman acknowledged, after reviewing the records of Brownlee's treatment, that he believed Brownlee was competent to stand trial despite his mental problems. Rule 32 Transcript at 254-56. Brownlee has failed to show prejudice on this claim, and he is not entitled to relief.

### 9. Failure to Investigate and Present an Insanity Defense
### (Claim A(8)(a)(4), A(8)(c)(7))

Brownlee also asserts that his trial counsel were ineffective for failing to investigate and present an insanity defense. It is true that if an attorney fails to conduct a reasonably substantial investigation into a plausible line of defense, including a plea of insanity, that failure is justified only if based on a reasonable strategic choice bolstered by reasonable professional assumptions. Tucker v. Zant, 724 F.2d 882, 893 (11th Cir. 1984). However, in this case, there has been no evidence presented indicating that Brownlee was, in fact, legally insane at the time of the offense. Indeed, Dr. Beidleman testified at the Rule 32 hearing that he did not believe Brownlee was insane. See Rule 32 Hearing Transcript at 273-74. In light of Brownlee's consistent denial of complicity in the crime and his failure to come forward with any evidence supporting a claim of insanity at the Rule 32 hearing, it cannot be said that his counsel was ineffective for failing to pursue an insanity defense. See Kight v. Singletary, 50 F.3d 1539, 1546 (11th Cir. 1995); Presnell v. Zant, 959 F.2d

1524, 1533 (11th Cir. 1992); <u>Bundy v. Dugger</u>, 850 F.2d 1402, 1412 (11th Cir. 1988), cert. denied, 488 U.S. 1034 (1989); <u>Tucker</u>, <u>supra</u>. Brownlee is not entitled to relief on this claim.

### 10.  Failure to Investigate and Present an Alibi Defense
#### (Claims A(8)(c)(8), A(8)(c)(9), A(8)(c)(14), A(8)(d)(5), A(8)(e)(12))

Brownlee contends that his trial counsel were ineffective for failing to investigate or present an alibi defense. At a hearing on his Rule 32 petition, Brownlee testified that he told his attorneys before trial that he was not involved in the robbery at Jodie's Lounge, and that he was out alone robbing a dope house at the time. He stated further that he advised them that two people he met afterwards could corroborate that he was not near Jodie's Lounge when it was robbed. Brownlee acknowledged that he told his attorneys that he knew these potential witnesses only as "Kenny" and "Gene," but that Reavor Jones could help them locate the former. Based on this testimony, Brownlee claims that his counsel should have followed up these leads and presented evidence developing his alibi, including putting him on the stand to testify on his own behalf.

An attorney's unreasonable failure properly to investigate an alibi defense may constitute ineffective assistance of counsel. See, <u>e.g.</u>, <u>Code v. Montgomery</u>, 799 F.2d 1481 (11th Cir. 1986); <u>United States v. Mills</u>, 760 F.2d 1116, 1121 (11th Cir. 1985). However, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make a reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary." <u>Holladay v. Haley</u>, 209 F.3d at 1252 (quoting Strickland, 466 U.S. at 690-91). "A particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." <u>Holsomback v. White</u>, 133 F.3d 1382, 1387 (11th Cir. 1998) (citing <u>Strickland</u>, 466 U.S. at

690-91). The information available to counsel at the time of his pretrial investigation is the main circumstance considered in evaluating the reasonableness of counsel's pretrial investigation. Greene v. United States, 880 F.2d 1299, 1306 (11th Cir. 1989).

Here, the Rule 32 court discounted Brownlee's testimony discussed above, pertaining to the information he allegedly provided to his trial attorneys. Instead, the court credited conflicting testimony from Kendrick. See Tab R-63 at 13. While acknowledging that Brownlee had stated during their pretrial discussions that he was out robbing a dope house when the Jodie's Lounge robbery occurred, Kendrick stated that Brownlee had averred that Goodgame and Harris, his co-defendants in the Jodie Lounge robbery, also participated in the dope house robbery. Rule 32 Hearing Record at 502-04. Kendrick also testified that Brownlee indicated to him that Goodgame and Harris, along with possibly Warren and Jones, were the only ones who might corroborate this alibi. Id. Kendrick also denied recalling Brownlee ever telling him about "Kenny" or "Gene." See id. at 506-07. Based on the information it found Brownlee provided to his attorneys, the Rule 32 court determined that they could not have reasonably been expected to develop an alibi defense. Tab R-63 at 13. Affording a presumption of correctness to the Rule 32 court's findings, the Court concludes that Brownlee's attorneys' performance was not constitutionally deficient in failing to develop an alibi defense.

Brownlee also claims that his counsel was ineffective for failing to put him on the stand. A defendant has a constitutional right to testify on his own behalf. See United States v. Teague, 953 F.2d 1525, 1530 (11th Cir.) (en banc), cert. denied, 506 U.S. 842 (1992). However, the Rule 32 court credited testimony from Kendrick indicating that Brownlee had made it clear that he did not wish to testify. Tab R-63 at 13. Under such circumstances, it cannot be said that Brownlee's right to testify was infringed. See, e.g., United States v. Camacho, 40 F.3d 349, 355 (11th Cir. 1994). Moreover, the Rule 32 court found that not having Brownlee testify was a reasonable strategic decision given the

questionable alibi he provided his attorneys, Tab R-63 at 13, and even more obviously so because the prosecution might have alerted the jury to the fact of Brownlee's four prior robbery convictions.  See Rule 32 Hearing Record at 402; <u>Timmons v. State</u>, 487 So. 2d 975, 979 (Ala. Cr. App. 1986) (holding that, as general rule, a defendant who takes the stand in his own behalf during a criminal trial can be questioned on cross examination about prior convictions for crimes involving moral turpitude, which includes robbery).

The Court concludes the failure to put Brownlee on the stand does not implicate constitutionally deficient performance, nor has Brownlee demonstrated prejudice.

### 11.  Failure to Investigate the Crime Scene, Ballistics Evidence, and the Involvement of Jones, Warren, Goodgame, and Harris
#### (Claims A(8)(a)(3), A(8)(c)(2), A(8)(c)(6), A(8)(c)(12))

Brownlee argues that his trial attorneys were constitutionally ineffective in failing to investigate a number of other guilt phase issues.  In particular, he complains that his counsel failed to visit the crime scene; failed to investigate ballistics evidence, including the alleged use of a starter's pistol at the crime scene; and failed to investigate the role that Goodgame, Jones, Warren, and Harris each played in the robbery-murder at Jodie's Lounge and their criminal records.  Again, counsel has a duty to make a reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary.  It is undisputed that Brownlee's counsel were the beneficiaries of an "open file" discovery policy of the district attorney's office, under which they had access to the entire file kept by the prosecution on the Jodie's Lounge robbery-murder.  Tab R-63 at 10.  Among the materials in that file were the pretrial statements given to police by witnesses, as well as statements by Goodgame, Jones, and Warren,[16] along with photographs and a diagram of the crime scene prepared by a police evidence technician.

---

[16]Harris, a charged co-defendant, refused to waive his right against self-incrimination and thus did not give a statement to police or testify at Brownlee's trial.

In addition, Brownlee's counsel had the transcript of a preliminary hearing at which Warren testified. Because of this substantial evidence in their possession, it appears that the Rule 32 court implicitly found in its order that the decisions of Brownlee's attorneys not to visit the crime scene and further pursue the avenues Brownlee now suggests were reasonable and thus constitutionally sufficient. Id. The Court agrees that it appears that Brownlee's counsel's performance was not deficient under Strickland.

But even assuming that it was deficient, Brownlee cannot show prejudice. As noted by the Rule 32 court, there was no indication that Brownlee's attorneys were caught off-guard by any evidence presented at trial. Tab R-63 at 10. And generally, a petitioner cannot establish a claim of ineffective assistance of counsel based upon an alleged failure to investigate and develop useful evidence without making " 'a specific, affirmative showing of what the missing evidence or testimony would have been . . . ." Anderson v. Collins, 18 F.3d 1208, 1221 (5th Cir. 1994) (quoting United States ex rel. Partee v. Lane, 926 F.2d 694, 701 (7th Cir. 1991), cert. denied, 502 U.S. 1116 (1992). Accord McBride v. Sharpe, 25 F.3d 962, 972-73 (11th Cir. 1994); Proffitt v. Wainwright, 685 F.2d 1227, 1249 (11th Cir. 1982) (both rejecting claims of ineffective assistance alleging inadequate investigation by counsel where petitioners made no showing that additional investigation would have revealed favorable material evidence); Aldrich v. Wainwright, 777 F.2d 630, 636 (11th Cir. 1985) ("Speculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation"). This is because without knowing what additional evidence might have been discovered, it is "nearly impossible to determine whether the petitioner was prejudiced by the deficiencies in counsel's performance." Anderson, supra (quoting Partee, supra). Brownlee complains that his attorneys should have further investigated the crime scene, ballistics evidence, and the "involvement" of Goodgame, Harris, Warren, and Jones, but he has not alleged, nor did he offer to prove at the Rule 32 hearing, what specific additional evidence on these

issues might have been discovered had his attorneys done so.[17] Moreover, there is absolutely no indication that any additional investigation of these issues would uncovered evidence so favorable that it potentially would have altered the jury's guilty verdict. Based on the foregoing, the Court concludes that Brownlee is not entitled to relief on these claims.

## 12. Failure to Object to "Misrepresentations" Regarding Goodgame's
## Criminal Record and Plea Bargain "Deal"
### (Claims A(8)(c)(1), A(8)(d)(19), A(8)(e)(5), A(8)(e)(6))

Brownlee next argues that his trial counsel should have objected to alleged "misrepresentations" regarding Goodgame's criminal record and the "deal" prosecutors offered him in exchange for his testimony. More specifically, he argues that his lawyers' performance was deficient in failing to advise the jury (1) that Goodgame had three prior convictions, rather than the two he told the jury he had, and (2) that, because of these prior convictions, the Alabama's Habitual Felony Offender Act ("HFOA"), § 13A-5-9, Ala. Code 1975, allegedly mandated that Goodgame be sentenced to life imprisonment without the possibility of parole for any felony conviction arising out of his role in the Jodie's Lounge robbery. See First Amended Petition at 45. Brownlee emphasizes that instead of life without parole, prosecutors agreed to recommend that Goodgame receive four consecutive life sentences, but with the possibility of parole, and Brownlee asserts that his counsel should have objected or otherwise pointed out to the jury that Goodgame was receiving this added benefit via the allegedly plea-bargained non-application of the HFOA.[18] The Court concludes that Brownlee is not entitled to relief on these claims

---

[17]One of Brownlee's principal claims is that his trial counsel were ineffective at sentencing because they failed to conduct a proper investigation regarding mitigating evidence. That claim will be addressed separately.

[18]The Court would note that under Alabama law, application of the HFOA is mandatory, and a prosecutor has a duty to disclose to a sentencing court known information that a defendant

because it is apparent that he suffered no prejudice.

The trial record shows that the prosecutor elicited testimony from Goodgame indicating that, at the time he testified at Brownlee's trial in January 1987, he had only two prior convictions, for theft of property. See Trial Record at 237-38. Goodgame did indeed have two convictions for theft of property in the third degree, in violation of § 13A-8-5, Ala. Code 1975, arising out of guilty pleas entered December 1981 and May 1984. Tab R-69 at 43, 48. However, case action summary sheets included in the supplemental record of the Rule 32 proceedings show that he also pled guilty on January 26, 1984 to attempting to commit the offense codified at § 13A-11-72(a), Ala. Code 1975, possession of a pistol by a person convicted of a "crime of violence." Tab R-69 at 46.[19] It is undisputed that the jury was not told of this other conviction. But given the jury's knowledge of Goodgame's admitted participation in the Jodie's Lounge robbery, that he had the two other convictions, that he had numerous other criminal cases pending against him, and that he was testifying under the terms of a plea bargain, the Court has no difficulty concluding that there is no reasonable likelihood whatsoever that the outcome of Brownlee's trial would have been different if the jury was advised that it might

---

has prior felony convictions that would require him to be sentenced under that act. See McClaren v. State, 500 So. 2d 1325, 1326 (Ala. Cr. App. 1986).

[19]Brownlee alleges that this prior conviction is for the completed offense delineated by § 13A-11-72(a). However, the case action summary sheets included in the supplemental record on appeal, cited in text, show that while Goodgame was charged with the completed offense, he pled guilty to the attempt crime. The Court also notes that, in its opinion affirming the denial of relief on Brownlee's Rule 32 petition, the Alabama Court of Criminal Appeals seems to have found that this handgun conviction was merely one of several pending against Goodgame and thus not final at the time he testified at Brownlee's trial. See Brownlee v. State, 666 So. 2d at 99. The record confirms that Goodgame did have several other criminal cases pending at that time, but none appears to have involved handgun possession. See Trial Record at 237. Further, the case action summary sheets conclusively establish that he was convicted of attempted unlawful handgun possession approximately three years before Brownlee's trial.

consider, for purposes of impeachment, that Goodgame also had this one other prior conviction, which is only a Class A misdemeanor under Alabama law. See Nunnery v. State, 410 So. 2d 444, 448-49 (Ala. Cr. App. 1982) (holding that a conviction under § 13A-11-72 is a Class C felony); § 13A-4-2(d)(4) (if the completed offense is a Class C felony, the attempt is a Class A misdemeanor).

Brownlee also asserts, though, that the undisclosed prior conviction, along with the two others for theft that were disclosed to the jury, mandated that Goodgame be sentenced under the HFOA to life imprisonment without the possibility of parole for any felony conviction arising out of his participation in the Jodie's Lounge robbery, but that the prosecutor was instead going to recommend that he receive four consecutive life sentences, but with the possibility of parole. Therefore, Brownlee argues, his counsel were deficient in neglecting to object or highlight to the jury that Goodgame was purportedly going to receive this additional benefit under his plea bargain. The Court disagrees, because Goodgame's prior convictions did not mandate that he be sentenced under the HFOA at all, let alone to life imprisonment without parole. As stated above, Goodgame's conviction for attempted unlawful handgun possession is only a Class A misdemeanor under Alabama law. Likewise, his two convictions for theft of property are in the third degree, also Class A misdemeanors. See § 13A-8-5, Ala. Code 1975.[20] Because Goodgame's prior convictions were not felonies, they do not implicate an enhanced sentence under the HFOA. See § 13A-5-9; e.g., McCray v. State, ___ So. 2d ___, ___, 2000 WL 336924, *3 (Ala. Cr. App. 2000) (sentences may not be enhanced under the HFOA using a misdemeanor conviction). Brownlee has not shown that the HFOA

_____

[20]Brownlee at times seems to assert that Goodgame also has a prior conviction for robbery in the first degree, a Class A felony, see § 13A-8-41. However, it is apparent from the case action summary sheets that while Goodgame was charged with first degree robbery in February 1984, such ultimately resulted in one of his third degree theft convictions, via a guilty plea. (Tab R-69 at 47-48).

required Goodgame to be sentenced to life imprisonment without the possibility of parole, so he cannot show that his lawyers were deficient or that he was prejudiced by their failure to argue that it did.  These claims are without merit.

### 13.  Failure to "Challenge the State's Reliance upon"
### Sonny Warren and Reavor Jones/
### Failure to Object to their "Informal" "Deals"
### (Claims A(8)(a)(3), A(8)(c)(1), A(8)(c)(2), A(8)(c)(4), A(8)(c)(11), A(8)(d)(19), A(8)(d)(21)
### A(8)(d)(22), A(8)(e)(5), A(8)(e)(7), A(8)(e)(16))

Brownlee also asserts a number of claims alleging ineffective assistance of counsel relating to one of his principal themes: that his conviction was secured in violation of Alabama law because it was allegedly based solely upon the testimony of accomplices to the crime.  Some further explanation is helpful.  Under Alabama law, the testimony of an accomplice must be corroborated by other evidence tending to connect the defendant with the commission of the offense.  See § 12-21-222, Ala. Code 1975.  Goodgame was deemed an admitted accomplice whose testimony had to be corroborated in order that a conviction might lie against Brownlee.  It is not seriously disputed that the only evidence sufficient to corroborate Goodgame's testimony came from the testimony of Reavor Jones and Sonny Warren.  But if Jones and Warren were themselves also accomplices, their testimony could not be used to corroborate Goodgame's or each other's.  See <u>Bone v. State</u>, 706 So.2d 1291, 1295 (Ala. Cr. App. 1997) ("[T]he general rule is that the testimony of an accomplice cannot be corroborated by the testimony of another accomplice").  However, Brownlee asserts that the State could have and should have prosecuted Jones and Warren as accomplices in the Jodie's Lounge robbery, or at least for their admitted use of controlled substances, but deliberately chose not to in order that they might have "an exalted and unwarranted appearance of credibility" and be eligible to corroborate Goodgame's testimony.  First Amended Petition at 19.  Indeed, Brownlee

goes so far as to allege that the non-prosecution of Jones and Warren was part of an undisclosed "informal" "deal" they made with the district attorney's office in exchange for their testimony, and that his counsel should have highlighted this fact to the jury or otherwise objected. See id. at 21, 22.

At times, Brownlee seems to suggest that his defense attorneys were ineffective because they did not attempt to have Jones and Warren prosecuted. However, under Alabama law, "as a general rule, if the prosecutor has possible cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute . . . rests entirely in his discretion." Piggly Wiggly No. 208, Inc. v. Dutton, 601 So.2d 907, 910 (Ala. 1992) (quoting 63A Am.Jur.2d Prosecuting Attorneys § 24 (1984)). Accord Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978). ("[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion"). As private citizens, Brownlee's attorneys simply had no authority to prosecute Jones or Warren for any crime, cf. Knutson v. Bronner, 721 So. 2d 678, 682 (Ala. 1998) (holding that private citizen was not authorized to enforce criminal fine against organizer of political committee for failure to file a statement of organization of a political committee), and their failure to do so clearly does not render their performance constitutionally deficient.

In addition, the Court would note that the touchstone for determining whether a given witness is an accomplice whose testimony requires independent corroboration under § 12-21-222 is not whether that witness is actually prosecuted; rather, the test is whether he or she "could have been indicted and convicted for the offense charged, either as principal or accessory." Williams v. State, 654 So.2d 74, 75 (Ala. Cr. App. 1994) (quoting Gordon v. State, 611 So.2d 453, 455 (Ala. Cr. App. 1992) (emphasis added). Therefore, the fact that Jones and Warren had not been prosecuted would not preclude

either one from being deemed an accomplice.   Indeed, the trial court specifically instructed the jury that they might find Warren was an accomplice whose testimony would have to be independently corroborated under § 12-21-222.  Trial Record 447-48. Brownlee asserts, however, that his trial counsel was also ineffective because they allegedly could have established that Warren was an accomplice as a matter of law by using the transcript of a preliminary hearing at which Warren testified and that they should have requested a jury instruction allowing it to find that Jones was also an accomplice for purposes of § 12-21-222.  The Court concludes that Brownlee is not entitled to relief on these claims.

As at trial, Warren testified that he did not drive the car that was used in the robbery at Jodie's Lounge, and that he merely loaned his car to Goodgame, Brownlee, and Harris, in contradiction of Goodgame's pretrial statements and trial testimony.  However, Warren did admit at that preliminary hearing that when he allegedly lent his car to Goodgame, Harris, and Brownlee, he knew or at least had a "suspicion" that they were going to use it to commit a robbery, although he allegedly believed that such robbery was going to occur at a dope house, not Jodie's Lounge.  Supplemental Record on Appeal of Rule 32 Petition at 502-03, 512.  Brownlee argues that his counsel unreasonably failed to bring out this specific point at trial, and that, if they had, Warren would have been characterized as an accomplice as a matter of law for purposes of § 12-21-222, or at least the jury would have been more likely to find that Warren was an accomplice.  However, even assuming arguendo that Warren's preliminary hearing testimony was sufficient to establish that he was an admitted accomplice in the robbery of Jodie's Lounge, that fact would not require the conclusion as a matter of law that he was an accomplice to Dodd's capital murder, which is what would trigger the requirement of independent corroboration of his testimony.  See Wright v. State, 494 So. 2d 726, 738-39 (Ala. Cr. App. 1985).  Given Warren's denial of complicity in the robbery and the murder, the issue of

Page 53 of 114

whether he was an accomplice for purposes of § 12-21-222 would have been submitted to the jury in any event. Id. So Brownlee suffered no prejudice at all in this respect. Moreover, there is no reasonable probability that the outcome of Brownlee's trial would have been different if the evidence from the preliminary hearing was used. While Warren might have admitted at the preliminary hearing that he knew that when he loaned his car it was going to be used in a robbery of some sort, he similarly acknowledged at trial that he was aware "by the time that either [Goodgame, Brownlee, and Harris] left [Jones's apartment] or when they came back, that some type of robbery had went down." Trial Record at 319. Thus, while there might be a difference between his testimony at the preliminary hearing and at trial on this particular point, it is minimal.

Brownlee also suggests that Jones might also have been found to be an accomplice for purposes of § 12-21-222, because she "admitted to being in her home at the time the alleged robbery of Jodie's Lounge was planned," she "allowed these alleged criminal negotiations to continue," and "she gave these alleged criminals asylum in her home when they returned with the spoils from the crime." Petitioner's Amended Supplemental Brief at 157-58 (footnotes omitted). Thus, Brownlee reasons, his attorneys were ineffective because they failed to request an instruction that would allow the jury to find she was also an accomplice. However, the trial record discloses no evidence that Jones participated at all in the planning of any robbery or that she received any proceeds. The evidence cited by Brownlee amounts to nothing more than a showing that she was present in her apartment while others planned the robbery and when they returned there after the plan's execution. This is clearly insufficient under Alabama law to find that she was an accomplice. See, e.g., Garrison v. State, 520 So. 2d 219, 222 (Ala. Cr. App. 1987) (witness could not have been an accomplice for purposes of § 12-21-222 just because he "happened to be present in the apartment he shared with [the defendant] when the crime was being

planned"). Brownlee has failed to show deficient performance or prejudice.[21]

Finally, Brownlee asserts that the prosecution engaged in misconduct under <u>Giglio</u> <u>v. United States</u>, 405 U.S. 150 (1972), by not prosecuting Jones and Warren and by failing to disclose that such inaction was, Brownlee alleges, part of an informal deal made to secure their testimony, and that his counsel were ineffective for failing to object to such misconduct. There are numerous reasons why this line of argument must be rejected. First, the State's failure to prosecute Jones or Warren simply does not, in itself, implicate misconduct, because, as indicated previously, such decisions are generally left to the discretion of prosecutors. Second, one might assume that the prosecution did secretly promise Jones and Warren that they would not be prosecuted if they testified and that this agreement was not disclosed, in violation of <u>Giglio</u>. Even so, the Court fails to see how Brownlee's trial counsel can possibly be faulted for failing to raise an objection regarding that deal, about which they would have had no knowledge because, according to Brownlee, it was suppressed. But more fundamentally, the underlying facts as found by the Rule 32 court, which are entitled to a presumption of correctness under § 2254(d), do not show prosecutorial misconduct on this issue. The order denying Brownlee's Rule 32 petition indicates that the state court determined that there was no evidence that the district attorney's office deliberately withheld charging Jones and Warren as part of some deal that had to be disclosed. See Tab R-63 at 48, 63. Because the facts as found by the Rule 32 court do not show prosecutorial misconduct, there was nothing to which Brownlee's counsel might have objected, and their performance was not constitutionally deficient.

### 14. Failure to Object to Goodgame's Unsworn Testimony

---

[21]Brownlee also raises related claims that his counsel should have argued for an instruction that the jury could not convict him if it found that both Jones and Warren were accomplices. But because the evidence was insufficient to find that Jones was an accomplice, this claim is without merit.

(Claims A(8)(c)(3), A(8)(d)(1), A(8)(e)(1))

Brownlee next alleges that Goodgame was not sworn before he testified at trial, and he contends that his trial counsel were constitutionally ineffective for failing to object or otherwise alert the trial judge to this fact. It is undisputed that the trial record does not show that Goodgame was sworn before he testified. See Trial Record at 234, 236. Nonetheless, the state court judge presented with Brownlee's Rule 32 petition, who also presided over his trial, expressly found, based upon his review of stenographic notes and an audio cassette recording of the trial supplied by the court reporter, that Goodgame was sworn before testifying, but through an oversight the oath was not transcribed for the record by the typist. Rule 32 Record at 577; Tab R-63 at 31-32.

Brownlee seems to recognize that if the state court's above determination is afforded a presumption of correctness, then he cannot prevail on this claim, as Brownlee's trial counsel can hardly be faulted for failing to point out that Goodgame was not sworn if he was, in fact, sworn. However, Brownlee urges that the state court's finding on this issue should not be afforded any deference and that this Court must hold an evidentiary hearing. First, he argues that the certified record transcript of his trial is, under Alabama law, conclusive and unimpeachable with respect to the events occurring at those proceedings, and, therefore, the Rule 32 court erred in relying upon the stenographic tape and audio cassette of the trial proceedings provided by the court reporter, because such are not part of and contradict the certified transcript. The obvious problem with this line of argument is that it hinges entirely upon a construction of state law. As such, it affords no basis upon which this Court might grant relief on habeas.   See, e.g., Armenia v. Dugger, 867 F.2d 1370, 1376 (11th Cir. 1989) ("Logically, questions of pure state law do not raise issues of constitutional dimension for federal habeas corpus purposes"). Brownlee does not argue that the evidence considered by the Rule 32 court does not support its finding.  Nor does he claim that any federal law prohibited the Rule 32 court

from considering or relying upon evidence supplementing the certified transcript of his criminal trial. Therefore, the Court concludes, this specific issue is without merit.

Brownlee also seems to contend that he was not afforded a full and fair hearing in the Rule 32 court on the issue of whether Goodgame was sworn, as required by 28 U.S.C. § 2254(d) before a presumption of correctness attaches to state court findings. The record shows that on the issue of whether the oath was administered to Goodgame at Brownlee's trial, the Rule 32 court considered evidence in the form of a copy of the relevant portion of the court reporter's stenographic notes and a letter from the court reporter confirming that those notes show Goodgame was sworn. Rule 32 Record at 507-08. The Rule 32 court also listened to an audiotape of the trial, which the record indicates was made available by the Rule 32 court to Brownlee's counsel and any subsequent reviewing court. Rule 32 Record at 577. Brownlee appears to claim, however, that he was denied a full and fair hearing because he was not permitted to examine under oath the court reporter who provided the letter, stenographic notes, and audiotape. The Court disagrees. Brownlee has not challenged the substantive authenticity of the audiotape of the proceedings or the stenographic notes provided by the court reporter, nor that such all confirm that Goodgame was sworn, as found by the Rule 32 court. Nor has Brownlee offered any hint that an examination of the court reporter would have made any difference whatsoever on this issue. Given the conclusive nature of the audiotape especially, the Court cannot see how the failure to allow such an examination deprived Brownlee of a full and fair hearing. The Court will afford a presumption of correctness under 28 U.S.C. § 2254(d) to the Rule 32 court's finding that the oath was administered to Goodgame. Moreover, even assuming that Goodgame was not formally sworn, there is no indication of a reasonable probability that the outcome of Brownlee's trial would have been different had his counsel objected to this omission. See Elswick v. Parke, 861 F.2d 720 (table), 1988 WL 117742, **4 (6th Cir. 1988), cert. denied, 489 U.S. 1056 (1989). Accordingly, this claim

of ineffective assistance of counsel is without merit.

## 15. Failure to Object to Photographs & Weapons,
### (Claims A(8)(a)(5), A(8)(c)(10), A(8)(d)(31)

Brownlee argues that his counsel should have objected to the introduction of "gory photographs," which, he alleges, "were needlessly inflammatory and cumulative evidence calculated to enrage the jury's passion." First Amended Petition at 23. He also claims that his counsel should have sought to exclude weapons that were introduced into evidence, because they "were never associated with" him. Id. at 20. The Court concludes that Brownlee is not entitled to relief on either of these claims. The photographs in question were properly admissible under Alabama law. See, e.g., Sockwell v. State, 675 So. 2d 4, 21 (Ala. Cr. App. 1993) ("With regard to photographs of the victim taken after he had been shot, even though they are cumulative and pertain to undisputed matters, generally photographs that depict the external wounds on the body of the victim are admissible"), aff'd, 675 So. 2d 38 (Ala. 1995), cert. denied, 519 U.S. 838 (1996). So were the weapons. See, e.g., Smith v. State, 745 So.2d 922, 929 (Ala. Cr. App. 1999) (holding that whether guns, that were admissible as connected to crime, were connected to defendant was a question of the weight and credibility of the evidence, not admissibility of the weapons). Moreover, state court evidentiary rulings violate the constitution only where they deny fundamental fairness under the Due Process Clause; i.e., the improper evidence "is material in the sense of a crucial, critical, highly significant factor." Snowden v. Singletary, 135 F.3d 732, 737 (11th Cir. 1998) (quoting Osborne v. Wainwright, 720 F.2d 1237, 1238 (11th Cir. 1983) (en banc)). The photographs in this case do not meet that standard, see Williams v. Kemp, 846 F.2d 1276, 1282 (11th Cir. 1988); Osborne, 720 F.2d at 1238-39, nor do the weapons, see Anderson v. Maggio, 555 F.2d 447, 451 & n.6 (5th Cir. 1977). Therefore, the failure to object to these items of evidence cannot give rise to a valid claim of ineffective assistance of counsel. Devier v. Zant, 3 F.3d 1445, 1451 (11th Cir.

1993).  These claims are without merit.

## 16. Failure to Object to Inappropriate Prosecutorial Remarks and
## Appeals to Sympathy
### (Claims A(8)(c)(13), A(8)(d)(17), A(8)(d)(18), A(8)(d)(30), A(8)(e)(3))

Brownlee next complains about his counsel's failure to object to improper remarks and arguments allegedly made by the prosecutor at both the guilt and sentencing phases of the trial.  Brownlee explains in his petition that he is claiming more specifically that the prosecutor engaged in the following alleged improprieties to which his counsel should have objected: (1) introducing the victim's brother "along with co-counsel" at jury selection and otherwise sought to portray the victim's brother "as a member of the prosecution team," id. at 58; (2) made his closing argument "on behalf of" both the State and the victim's family; (3) calling the victim's brother as a prosecution witness solely to gain sympathy, id. at 56; (4) "made repeated references throughout the trial to the personal characteristics of the victim," id. at 46; (5) "argue[d] the victim's worth and . . . invok[ed] the victim's presence in the courtroom," id. at 57; (6) appealed to racial bias by identifying witnesses and the victim by race and by emphasizing that the victim was white and the alleged assailants were black, id. at 29; (7) improperly commented on his right to remain silent, id. at 46; (8) prevented the jury from considering lesser-included charges, id. at 47; (9) "misstated the law and facts," id. at 29; (10) "sought to prejudice the jury . . . . with reference to a robbery charge that was inflammatory and clearly inadmissible," id. at 56 (emphasis original); and (11) "argued a social vengeance theory  to the jury . . . by stat[ing], '[Death] is the supreme penalty.  But we have it and we must use it.  We, you, must gain control over our community again.  And there is only one way to do it.' " Id. at 57.

Based upon having been present during Brownlee's trial and the hearings on Brownlee's Rule 32 petition, as well as his review of the trial transcript, the Rule 32 judge

found that only two of the eleven remarks and arguments listed above potentially had any supporting factual basis in the record. That court acknowledged that the record shows that during the direct examination of a police officer by the prosecutor there was an exchange that could possibly be interpreted as a comment on Brownlee's post-arrest silence (issue 7 above) and that the prosecutor did make the argument to the jury at sentencing about "gain[ing] control over [the] community again" (issue 11 above). However, the Rule 32 judge determined that all of Brownlee's other assertions are without a supporting factual basis in the record. The Rule 32 judge found that the prosecutor simply did not make inappropriate references to the victim's brother, see Tab R-63 at 67-68; suggest that he, the prosecutor, was making his closing arguments "on behalf of" the State and the victim's family, id.; call the victim's brother to testify merely as an appeal for sympathy, id. at 65; make repeated references to the personal characteristics of the victim, id. at 50; improperly argue the victim's worth or invoke his presence in the courtroom, id. at 65-66; appeal to racial bias, id. at 49, 58; prevent the jury from considering lesser-included charges, id. at 51-52; misstate the facts or law, id. at 64; or refer to a robbery charge, id. at 64. This Court concludes that these findings are supported by the evidence and are entitled to a presumption of correctness. Accordingly, this Court resolves that Brownlee's counsel's performance was not deficient with respect to failing to object to these alleged remarks and arguments, nor did Brownlee suffer prejudice. Because he cannot satisfy either prong of Strickland with respect to these ineffective assistance claims, they fail. However, this still leaves the ineffective assistance claims as they pertain to the failure to object to the allegedly improper comment on Brownlee's right to remain silent and what Brownlee characterizes as the prosecutor's "social vengeance" argument.

Brownlee claims that his attorneys should have objected to what he asserts was an improper comment on his invocation of his Fifth Amendment right to remain silent. As

acknowledged by the Rule 32 court, during the prosecution's direct examination of a police officer, Sgt. Carl Quinn, the following exchange occurred:

> Q. What about Virgil Brownlee, did you find him in Huntsville?
>
> A. No, sir, I did not.
>
> Q. When was he arrested?
>
> A. Mr. Brownlee was arrested earlier.
>
> Q. Did you have any conversation with him when he was arrested?
>
> A. Well, not –
>
> Q. If you know?
>
> A. Not really, no.
>
> Q. Did you ask him any questions?
>
> A. Yes, I asked, but there was no conversation.

Trial Record at 377. Brownlee would seem to argue that the prosecutor's query about whether Quinn asked Brownlee any questions when he was arrested, combined with Quinn's affirmative response and volunteered statement, "but there was no conversation," implies that Brownlee chose to remain silent. Thus, Brownlee asserts, the prosecution was attempting improperly to inform the jury that he had refused to answer questions after being arrested. There is no allegation that there was any other reference or argument bearing upon Brownlee's right to remain silent, and the Court finds none in the trial record.

The Fifth Amendment prohibits a prosecutor from commenting directly or indirectly on a defendant's use of the privilege against self-incrimination. See <u>Griffin v. California</u>, 380 U.S. 609, 615 (1965); <u>United States v. Knowles</u>, 66 F.3d 1146, 1162 (11th

Cir. 1995). "In this circuit, the definition of such an impermissible comment turns on whether the remark is 'manifestly intended' by the prosecutor or 'would naturally and necessarily be understood by the jury' as a comment on the defendant's silence." Matire v. Wainwright, 811 F.2d 1430, 1435 (11ᵗʰ Cir. 1987) (quoting United States v. Vera, 701 F.2d 1349 (11ᵗʰ Cir. 1983). The court must consider the intent of the prosecutor and the character of the remarks in the context in which they occur. United States v. Rosenthal, 793 F.2d 1214, 1243 (11ᵗʰ Cir. 1986).

Keeping in mind the foregoing standards, it is evident that the failure of Brownlee's counsel to object to the exchange between the prosecutor in Quinn was neither deficient nor resulted in prejudice under Strickland. As an initial matter, it is clear that Brownlee cannot prevail on his ineffective assistance claim based upon how an objection would have fared under Alabama law, because the Alabama Court of Criminal Appeals held on direct appeal that the exchange did not constitute error under either state or federal law. See Brownlee v. State, 545 So. 2d 164-65. Further, taken in context, the transcript makes it appear at least as likely that the prosecutor was simply attempting to elicit answers explaining what steps Quinn had taken in the investigation of the case, rather than comment on Brownlee's refusal to answer questions. The exchange in question occurred after Quinn recounted in detail how police had developed leads and suspects, and it was followed immediately by additional questions about whether Quinn had spoken with Reavor Jones and another witness. See Trial Record at 373-79. And because the prosecutor only asked whether Quinn had "any conversation" with Brownlee "when" he was arrested, it is not even clear whether this silence occurred after Brownlee was actually arrested and read the Miranda warnings, which generally is not subject to prosecutorial comment, or before arrest, which sometimes may be. See United States v. Carter, 760 F.2d 1568, 1577 (11ᵗʰ Cir. 1985). Indeed, there is no explicit reference in either the prosecutor's question nor Quinn's answer to Miranda warnings or to any expressly stated

desire on Brownlee's part not to answer questions.  At the very most, the isolated and ambiguous exchange constituted a Fifth Amendment violation that resulted in harmless error.  See, e.g., United States v. Gonzalez, 921 F.2d 1530, 1549 (11th Cir. 1991); Brooks v. Kemp, 762 F.2d 1383, 1415 (11th Cir. 1985) (finding that potential prejudicial effect of undesirable prosecutorial commentary was minimized by its brevity).  Therefore, the Court concludes that Brownlee has failed to establish deficient performance or that there is a reasonable likelihood that the result of his trial would have been different had an objection been raised on this point.

Brownlee also argues that his counsel should have objected at sentencing to an argument that Brownlee terms a "social vengeance theory."  During his closing argument at sentencing, the prosecutor stated as follows:

> We have, in the State of Alabama, the death penalty.  And we have that death penalty for certain types of people.  You have heard the evidence presented in the punishment phase about Virgil Lee Brownlee.
> We have the death penalty for violent, hardened criminals.  That is why we have it.  We don't have it for young people who do foolish things.  But we have it to punish and deter people from our community here in the Birmingham Division of Jefferson County.  It is the supreme penalty.  But we have it and we must use it.   We, you, must gain control of your community again.  And there is only one way to do it.  You have sitting before you, a man who is – and I think you can draw this reasonable inference from the evidence that you have heard about him – that he is, in fact, a hardened criminal.

Trial Record at 471-72.

As noted by the Rule 32 court, the prosecutors remarks were not objectionable under state law, in that they amounted to a legitimate general appeal for law enforcement and for the necessity thereof as a deterrent to crime and as a protection to society.  See e.g., McWilliams v. State, 640 So.2d 982, 1001 (Ala. Cr. App. 1991), aff'd. in pertinent part, 640 So. 2d 1015 (Ala. 1993) ("deterrence, retribution, and society's right to self-defense" are proper subjects of prosecutorial argument); Ex parte Waldrop, 459 So.

2d 959, 962 (Ala. 1984) ("In Alabama, the rule is that a district attorney in closing argument may make a general appeal for law enforcement"). Improper prosecutorial arguments are not excludable under the due process clause unless they rendered the defendant's sentencing proceeding fundamentally unfair. Cargill v. Turpin, 120 F.3d 1366, 1379 (11ᵗʰ Cir. 1997). The prosecutor's argument here does not rise to that high level. See, e.g., Collins v. Francis, 728 F.2d 1322, 1339 (11ᵗʰ Cir. 1984); Kennedy v. Dugger, 933 F.2d 905, 914 (11ᵗʰ Cir. 1991); Williams v. Kemp, 846 F.2d 1276, 1283 (11ᵗʰ Cir. 1988). See also Brooks v. Kemp, 762 F.2d 1383, 1407 (11ᵗʰ Cir. 1985)(en banc)(finding that arguments based on special and general deterrence are appropriate in light of accepted penalogical justifications for use of death as a punishment), certiorari granted and judgment vacated, 478 U.S. 1016 (1986), judgment reinstated on remand, 809 F.2d 700 (11ᵗʰ Cir. 1987). Because the argument was not objectionable under either state or federal law, Brownlee cannot show that the failure to object to these remarks was either deficient performance or resulted in prejudice under Strickland. Accordingly, his claim of ineffective assistance of counsel is rejected.

## 17. Failure to Object to Presentence Investigation Report

### (Claims A(8)(a)(5), A(8)(d)(23), A(8)(e)(9))

At sentencing, the trial court was presented with a presentence investigation report, pursuant to § 13A-5-47(b), Ala. Code 1975. See Tab R-38. In one portion of his petition, Brownlee argues that his trial counsel was ineffective for allegedly failing to object to the introduction of this report, which he characterizes as "highly inaccurate . . . unreliable and otherwise unfairly prejudicial."[22] First Amended Petition at 30. Elsewhere in his petition,

---

[22]Specifically, Brownlee alleges that the report impermissibly included information about his juvenile record and contained the following information, which he asserts is false: (1) that he had committed another murder, (2) that he had attempted to shoot and kill police officers, (3) that he was actually identified as the assailant who shot Dodd, and (4) that one of the patrons at Jodie's Lounge had her earrings ripped out of her ears during the robbery.

however, Brownlee expressly acknowledges that his trial counsel did, in fact, object to the report on the grounds that it was unreliable in that it contained hearsay and a number of alleged inaccuracies. See id. at 64. Finally, Brownlee seems to split the difference by arguing that his trial attorneys were ineffective because they allegedly "withdrew [their] objection to the hearsay laden and grossly inaccurate and unreliable presentence report." Id. at 33.

As noted by the Rule 32 court, the record establishes that Brownlee's counsel did object to the report on the grounds that it contained hearsay and that portions of it were allegedly inaccurate. Tab R-63 at 86, citing Trial Record at 493-94. In some sense, Brownlee's counsel could be said to have "withdrawn" the objection that the report was due to be excluded on hearsay grounds, although he maintained that the report should be excluded because of the alleged erroneous substantive information contained therein. See Trial Record at 494. Brownlee's counsel then proceeded to point out which portions of the report it believed were factually incorrect, which led the trial court not to consider those disputed portions. Tab R-63 at 86, citing Trial Record at 493-500.

To the extent that Brownlee's counsel did withdraw his exception to the report on hearsay grounds, such was not indicative of deficient performance. It is clear that the presentence investigation report, although entirely hearsay, is generally admissible at sentencing under Alabama law. See, § 13A-5-47(b); see also, e.g., Boyd v. State, 746 So.2d 364, 398 (Ala. Cr. App. 1999); Williams v. State, 710 So.2d 1276, 1344 (Ala. Cr. App. 1996). Nor is a court precluded by federal law from considering otherwise relevant information at sentencing solely because of its hearsay nature. See, e.g., United States v. Wilson, 183 F.3d 1291, 1301 (11th Cir. 1999); United States v. Rodriguez, 765 F.2d 1546, 1555 (11th Cir. 1985). The record transcript establishes that Brownlee's counsel did, in fact, object both to portions of the report claimed to be factually inaccurate and to the entire report on the grounds that its conclusions were flawed because they were based on

Page 65 of 114

the inaccurate information. While the trial court declined to strike the entire report, it did agree that the disputed portions cited by Brownlee's trial counsel were not to be considered for purposes of sentencing. Under such circumstances, it obviously cannot be said that Brownlee's counsel's performance fell outside the wide range of reasonably competent assistance. And because the trial court excluded the disputed portions of the report, Brownlee suffered no prejudice. This claim is without merit.

### 18. Failure to Object to Instruction Limiting Consideration of Mitigating Evidence

#### (Claim A(8)(d)(20)

Brownlee alleges that following the penalty phase of his trial, the trial court gave an instruction limiting what the jury could consider as mitigating evidence. More specifically, Brownlee appears to hint that he is claiming that the trial court indicated that certain mitigating evidence, including his allegedly "obviously disturbed mental state" should not be considered because it was not "credible." See First Amended Petition at 58-59. In this claim, he argues that his counsel was ineffective for failing to object to this alleged limiting instruction.

It is well established that under the Eighth and Fourteenth Amendments, the "sentencer" in capital cases may not refuse to consider, or be precluded from considering, any relevant mitigating evidence. Baldwin v. Johnson, 152 F.3d 1304, 1321 (11th Cir. 1998) (quoting Hitchcock v. Dugger, 481 U.S. 393, 394 (1987)).[23]  However, the Rule 32 court found after reviewing the record that the sentencing instruction at trial properly explained to the jury (1) that it "should consider any evidence presented during the guilt

---

[23] Although the jury is not the sentencer in Alabama's capital sentencing scheme, it is treated as such for eighth and fourteenth amendment purposes. See Ruffin v. Dugger, 848 F.2d 1512, 1518 n.8 (11th Cir. 1988) (stating the proposition with respect to Florida's similar capital sentencing scheme, citing Hitchcock).

phase of the trial that is relevant to the existence of any aggravating or mitigating circumstance," Trial Record at 481-82; (2) each of Alabama's statutory mitigating factors, see § 13A5-51, Ala. Code 1975, and that the jury might consider whether any of these were established by the evidence, see Trial Record 483-84; and (3) that mitigating circumstances to be considered also shall include "any aspect of the defendant's character or record, or any circumstances of the offense that the defendant offers as a basis for a sentence of life imprisonment without parole, instead of death," see Trial Record at 484; Tab R-63 at 68-69. Finally, the Rule 32 court found that there was nothing in the trial court's sentencing instruction suggesting that any mitigating evidence should not be considered, because it was not "credible" or otherwise. These findings are supported by the evidence, and they imply that the claimed improprieties in the trial court's sentencing instructions simply do not exist. Thus, there was nothing to which Brownlee's counsel might have reasonably objected, and, correspondingly, there was no prejudice. Thus, Brownlee failed to establish ineffective assistance of counsel under Strickland. This claim is without merit.

### 19. Conflict of Interest/Failure to Challenge Prior Convictions
#### (Claims A(8)(a)(2), A(8)(a)(5), A(8)(d)(2)-(4), A(8)(d)(24), A(8)(e)(2), A(8)(e)(11))

Brownlee argues that, at sentencing it became apparent that one of his appointed trial attorneys, Burton Dunn, had a conflict of interest that violated his right to effective assistance of counsel. The record shows that Dunn, who previously worked in the Jefferson County District Attorney's office, is listed as the prosecutor of record on the case action summary sheets offered by the State at sentencing to prove Brownlee's four prior robbery convictions. This conflict, Brownlee alleges, caused Dunn to stipulate to the prior convictions rather than attack their validity and challenge the admissibility of the case action summary sheets. Brownlee also raises related claims alleging that, regardless of any conflict of interest, his trial counsel rendered ineffective assistance by

failing to review the court file regarding the prior convictions, by failing to challenge the prior convictions at sentencing, and by failing to ensure that the discussion regarding the stipulation to the convictions were transcribed to the record for appellate review. The Court concludes that Brownlee is not entitled to relief on any of these claims.

### a. Conflict of Interest

A criminal defendant can establish that his counsel rendered ineffective assistance, in violation of the Sixth and Fourteenth Amendments, based upon a showing that his counsel "actively represented conflicting interests." Cuyler v. Sullivan, 446 U.S. 335, 350 (1980). See also Burden v. Zant, 24 F.3d 1298, 1304 (11th Cir. 1994). To prove such a constitutional violation, the defendant " 'must establish that [1] an actual conflict of interest [2] adversely affected his lawyer's performance.' " Freund v. Butterworth, 165 F.3d 839, 858 (11th Cir. 1999) (en banc) (quoting Cuyler, 446 U.S. at 350). "Once it is established that both prongs of the Cuyler test–actual conflict and adverse impact on representation--have been met, a defendant need not show prejudice in order to obtain reversal of his conviction." Burden v. Zant, 24 F.3d at 1304-05.

With respect to the first prong of Cuyler, it is well-established that the attorney's conflict of interest must be "actual"; " '[a] possible, speculative or merely hypothetical conflict does not suffice.' " Mills v. Singletary, 161 F.3d 1273, 1287 (11th Cir. 1998) (quoting Lightbourne v. Dugger, 829 F.2d 1012, 1023 (11th Cir. 1987), cert. denied, 488 U.S. 934 (1988)). In a case involving successive, as opposed to simultaneous, representations, "[a]n 'actual conflict' occurs when a lawyer has 'inconsistent interests.'" Freund, 165 F.3d at 859 (quoting Smith v. White, 815 F.2d 1401, 1405 (11th Cir.), cert. denied, 484 U.S. 863 (1987). "In order to prove that an 'actual conflict' hindered [his] lawyer's performance, [a] petitioner 'must make a factual showing of inconsistent interests' or point to 'specific instances in the record' to suggest an actual impairment of his . . . interests." Id. (citations omitted). "Generally, it is more difficult to prove that

successive representation caused an actual conflict of interest than that simultaneous representation did so." Id. (quoting Smith, 815 F.2d at 1405). In this case, where there is no question involving confidential information learned during a prior representation, Brownlee must show, "[a]t minimum, . . . that counsel's earlier representation . . . was substantially and particularly related to counsel's later representation of [petitioner] . . . ." Id. (quoting Smith, 815 F.2d at 1405).

Brownlee alleges that the case action summary sheets offered by the State to prove his four prior robbery convictions indicate that Dunn was the prosecutor of record in those cases. Therefore, Brownlee contends, Dunn was laboring under an actual conflict, in that he would have to attempt to undercut the very convictions he helped secure in order to counter the State's evidence of aggravation. Indeed, courts have suggested that a defense attorney's active role in a former criminal prosecution of the defendant he later represents may be sufficient to give rise to an actual conflict of interest for Sixth Amendment purposes where the attorney is faced with a situation where the former convictions have a substantial relation to the later defense. Compare United States v. Ziegenhagen, 890 F.2d 937, 940 (7th Cir. 1989) (holding that an actual conflict appeared to exist where the defendant's attorney participated in a prior prosecution of the defendant, with the conviction in that case being offered in the later case to enhance the defendant's sentence) with Maiden v. Bunnell, 35 F.3d 477, 480-81 (9th Cir. 1994) (stating in dicta that it agreed that the prosecutor in Ziegenhagen had an actual conflict, but holding that there was no actual conflict in the case before it because there was no indication that the prior burglary conviction prosecuted by the defendant's attorney related in any way to the later case). However, where defense counsel is "only tenuously and nominally" connected to a prior prosecution that resulted in a conviction offered at the sentencing stage of a later trial, no actual conflict arises for purposes of the Sixth Amendment. Hernandez v. Johnson, 108 F.3d 554, 558-561 (5th Cir. 1997) (concluding

defense counsel did not actively represent conflicting interests based upon the fact that when he was district attorney, his office secured two prior felony convictions against the defendant, which were offered at sentencing, but where the lawyer was not the trial counsel in the prior convictions, and had very minor involvement otherwise). See also United States v. Ziegenhagen, 907 F.2d 152 (table), 1990 U.S. App. LEXIS 9835 (7th Cir. 1990) (affirming after remand, where district court concluded that no actual attorney conflict existed based upon findings that defense counsel had, in fact, played only a "peripheral" role in the prior prosecution).

The fundamental problem with Brownlee's argument is that it ignores the factual findings made by the state court. Although the case action summary sheets recording Brownlee's prior robbery convictions listed Dunn's name as the prosecutor of record, the state court found after a hearing that Dunn was not, in fact, involved in the prosecution of those cases. Tab R-63 at 74. At the hearing Dunn explained that although he had worked in the Jefferson County District Attorney's Office during the time of Brownlee's prior convictions in 1979 and 1980, he did not believe that he was actually the prosecutor involved in those cases. Rather, Dunn stated that, in his role as a supervising district attorney, his name on the case action summary sheets could mean merely that his superior had delegated the cases to him pending their subsequent reassignment by him to one of his subordinates. Indeed, an affidavit sworn by one of the attorneys working under Dunn, Doug Valeska, indicated that he had been the attorney who actually prosecuted several of the prior cases against Brownlee with no assistance or participation from Dunn. Other evidence in the record indicates that the State was represented by Donald Colee when Brownlee pled guilty to three robbery cases in 1980. In support of its assertion that Dunn was only nominally connected to the prior robbery convictions, the State also introduced the case action summary sheet in Brownlee's capital murder case, which listed David Barber, the Jefferson County District Attorney, as the prosecutor of record,

notwithstanding that it is undisputed that the case was actually handled by his subordinates. The Court concludes that the state court's finding that Dunn was only nominally the prosecutor in the prior robbery convictions and was not otherwise involved in those cases is supported by evidence and is entitled to a presumption of correctness under 28 U.S.C. § 2254(d).[24] Based upon those findings, the Court concludes that no actual conflict existed because Dunn was only "tenuously and nominally" connected to the prior robbery prosecutions that resulted in the convictions offered at the sentencing stage of Brownlee's capital trial. Hernandez, 108 F.3d at 560.

In addition to establishing the existence of an actual conflict, Brownlee would also have to prove that such had an "adverse effect" on his lawyer's performance. Freund, 165 F.3d at 860. In order to show adverse effect, a defendant must point to "some plausible alternative defense strategy or tactic that might have been pursued," which was "inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." Id. The defendant "need not show that the defense would necessarily have been successful" if used, but it must have "possessed sufficient substance to be a viable alternative." Id.

Brownlee contends that at the sentencing hearing Dunn could have objected to and otherwise attacked the prior robbery convictions and the case action summary sheets used to prove them but did not do so because of his alleged conflict. However, there is nothing to indicate that this was at all a viable option. There is no dispute that case action summary sheets were then and are generally admissible under Alabama law to prove prior felony convictions for sentencing purposes. See Jones v. White, 992 F.2d 1548, 1569-71 (11th Cir. 1993). Brownlee suggests, however, that if Dunn was not the prosecutor in

---

[24]In the context of a claim alleging a conflict of interest based upon an attorney's prior representation, state court findings of historical fact regarding the nature and scope of the prior representation are generally subject to a presumption of correctness under § 2254(d). See Freund, 165 F.3d at 861-62.

those cases, as he testified at the Rule 32 hearing, then the case action summary sheets were erroneous in listing him as such, and he could have, therefore, objected to their admissibility on that ground. Making such an assumption would appear to concede implicitly that Dunn had no actual conflict of interest. But it is also certain that this argument, if raised, would have been summarily brushed aside as a matter of law by the sentencing court. Under Alabama law, court records offered to show prior convictions for sentencing purposes need show only (1) the defendant's name, (2) the charge for which he was convicted, (3) that he was represented by counsel, and (4) that the record document is properly certified. See Summerford v. State, 621 So. 2d 1346, 1351 (Ala. Cr. App. 1993); Swicegood v. State, 565 So. 2d 1206, 1209 (Ala. Cr. App. 1990); Jackson v. State, 582 So. 2d 598 (Ala. Cr. App. 1991); Dover v. State, 570 So. 2d 784, 787 (Ala. Cr. App. 1990); McGowan v. State, 432 So. 2d 557 (Ala. Cr. App. 1983). Brownlee does not allege that the case action summary sheets were defective with respect to any of these matters. Accordingly, even if Dunn was erroneously listed as the prosecutor in the prior convictions, such a minor imperfection would not have rendered the case action summary sheets inadmissible. Cf. Swicegood, (records admissible despite that case numbers on record of prior case photocopied backwards); Dover, supra (no requirement that the judge in the prior case sign the court records); Favors v. State, 437 So. 2d 1358, 1370 (Ala. Cr. App. 1983) (records not inadmissible because of discrepancies over the use of the descriptive term "Jr." in connection with the defendant's name).

Brownlee also seems to claim that his counsel was adversely effected in that he might have argued at sentencing that his prior robbery convictions were so remote that they should not be considered with respect to establishing the statutory aggravating circumstance that he was "previously convicted of . . . a felony involving the use or threat of violence to the person." However, such an argument would have been futile, under both the facts and the law. In the first place, Brownlee's prior robbery convictions were

hardly that remote; the capital murder for which he was convicted occurred in May 1986, his trial was in January 1987, and his prior robbery convictions date from 1979 and 1980. Further, the statutory language of § 13A-5-49(2), Ala. Code 1975, establishing the relevant aggravating circumstance has, on its face, no time limitation, and no Alabama case conviction supports Brownlee's theory. Indeed, it has been expressly rejected in a case decided subsequent to his conviction. See Smith v. State, 698 So.2d 189, 212 (Ala. Cr. App. 1996). Nor is Alabama barred by the federal constitution from imposing a harsher punishment for an offense based upon the defendant's past crimes that are remote in time. Cf. Lawrence v. Jones, 837 F.2d 1572, 1574 (11th Cir. 1988) (upholding Alabama's habitual offender statute against a due process challenge to the statute's enhancement of punishment based upon crimes remote in time).

Finally, Brownlee argues that his counsel might have had the 1979 robbery convictions excluded on constitutional grounds, because his guilty pleas in those cases, he alleges, were not made knowingly and voluntarily.[25] However, this argument also would have been rejected by the sentencing court on the state law ground that it was an improper collateral attack on the prior convictions. See, e.g., Perkins v. State, ___ So. 2d ___, ___, 1999 WL 1046438, *80 (Ala. Cr. App. 1999); Bush v. State, 695 So.2d 70, 91 (Ala. Cr. App. 1995), aff'd, 695 So.2d 138 (Ala.), cert. denied, 522 U.S. 969 (1997); Minnifield v. State, 439 So.2d 190, 191 (Ala. Cr. App. 1983); Jones v. State, 431 So. 2d 1367, 1372 (Ala. Cr. App. 1983). Moreover, the federal constitution does not require a state sentencing court to address whether a defendant's pleas in prior cases were knowing and voluntary. Cf. Custis v. United States, 511 U.S. 485, 493-97 (1994) (holding that the constitution does not require that a criminal defendant be permitted to collaterally attack

---

[25]In Boykin v. Alabama, 395 U.S. 238 (1969), the Supreme Court held that a guilty plea waives one's privilege against compulsory self-incrimination, right to a jury trial, and the right to confront one's accusers, and that it must appear from the record, therefore, that such a waiver was made knowingly and voluntarily.

a prior state felony conviction used to enhance his punishment at a federal sentencing hearing, except on the ground that he was denied the right to appointed counsel in the prior case). Based on the foregoing, the Court concludes that the alleged conflict resulted in no "adverse effect" on the performance of Brownlee's counsel.

### b. Related Strickland Claims

The Court further determines that the above discussion also resolves Brownlee's related claims of ineffective assistance of counsel brought under Strickland, i.e., those that do not implicate an attorney conflict of interest. Brownlee has not articulated any basis upon which his counsel could have successfully argued at the sentencing hearing either that his prior convictions or the case action summary sheets used to prove them were due to be excluded. Accordingly, he cannot show prejudice either for his counsel's failure to investigate those prior convictions, for stipulating to the prior convictions at sentencing without obtaining Brownlee's consent to do so, or for their failure to have the discussion regarding that stipulation transcribed for the record. In addition, as found by the state court ruling on Brownlee's Rule 32 petition, the decision to stipulate to the prior convictions was a reasonable strategic tactic[26] given that the case action summary sheets were admissible and the jury might be confused or worse if they saw Dunn's name listed as the prosecutor in the prior cases. Thus, Brownlee's counsel was not constitutionally deficient for stipulating to the prior convictions. Brownlee is not entitled to habeas relief based on these claims.

### 20. Failure to Investigate and Present Mitigating Evidence at the Penalty and Sentencing Phases

---

[26]State court findings that certain decisions by counsel were tactical choices are generally entitled to a presumption of correctness under § 2254(d) as questions of fact. Mills v. Singletary, 63 F.3d 999, 1024 n.43 (11th Cir. 1995); McBride v. Sharpe, 25 F.3d 962, 972 (11th Cir. 1994); Horton v. Zant, 941 F.2d 1449, 1462 (11th Cir. 1991); Thomas v. Zant, 697 F.2d 977, 980 (11th Cir. 1983). The Court affords that presumption here, as Brownlee has failed to show that it is not applicable to this particular determination.

(Claims A(8)(d)(6)-(16), A(8)(d)(25)-(29), A(8)(d)(32), A(8)(e)(4), A(8)(e)(8), A(8)(e)(10),
A(8)(e)(13), A(8)(e)(14))

Brownlee argues that his trial counsel was ineffective for failing properly to investigate and present evidence of mitigation at the penalty phase before the jury and the sentencing phase before the trial judge. These claims receive most of Brownlee's attention in the instant case. In fact, the failure of his attorneys to investigate and present mitigating evidence is the sole issue addressed in his reply brief.

After the jury found Brownlee guilty of the capital offense, the case proceeded to the penalty phase before the jury. The State requested that the evidence from the guilt phase of the trial be considered, as well as the defense's stipulation that Brownlee had four prior robbery convictions. In addition, the state presented brief testimony from a witness establishing that Brownlee was on parole for less than two months at the time of the capital offense.

In response, Brownlee's appointed counsel did not present any evidence of mitigation to the jury, relying instead solely upon argument. Dunn and Kendrick each told the jury that he would not "rehash" the evidence presented during the guilt phase of the trial because, they said, the jury had already resolved that Brownlee was guilty. See Trial Record at 472-73, 476. Instead, they emphasized that Goodgame was going to receive only a life sentence for his admitted role in the Jodie's Lounge robbery-murder and would even be eligible for parole. Id. at 473-74. Kendrick similarly argued that a death sentence was disproportionate when compared with the non-prosecution of Warren and the lesser sentence offered to Goodgame, especially since the evidence, Kendrick stated, placed him inside the bar and indicated he "could just as easily been the triggerman as [Brownlee or Harris]." Id. at 477. Dunn also contended that a sentence of life imprisonment was in some respects worse than a sentence of death, and he asserted that sentencing Brownlee to death served no purpose, as it would not bring Dodd back to life

and society was adequately protected by a sentence of imprisonment because Brownlee would never be eligible for release. Id. at 475-76. Finally, Brownlee's lawyers pleaded for the jury to spare Brownlee's life, with Dunn emphasizing that Brownlee is not simply an "object," but a "living, breathing human being," and both lawyers noted that Brownlee's family attended the trial and loved him just as much as Dodd's family loved Dodd. Id. at 474-77.

The jury rendered a verdict recommending that Brownlee be sentenced to death. The case then proceeded to the final sentencing phase before the trial judge. Prior to that phase, the trial judge recommended to Dunn that he contact Dr. Beidleman, the psychologist, about testifying on Brownlee's behalf at the sentencing hearing. At that point, Brownlee's counsel arranged for Beidleman to testify and also spoke with family members about appearing as witnesses. Dr. Beidleman interviewed Brownlee and administered to him a number of psychological tests. He also interviewed two of Brownlee's sisters. Based on the foregoing examinations and interviews, Dr. Beidleman testified that he diagnosed Brownlee as having a mixed substance abuse disorder, in remission; a mixed personality disorder; and borderline intellectual functioning. Trial Record at 506. As to the latter finding, Beidleman explained that Brownlee tested as having a verbal IQ of 70, which is classified as the mild mental retardation range, but that Brownlee's "adaptive intelligence" indicated that his skills were actually somewhat higher, "out of the retarded range, but still impaired." Id. at 506-07. Dr. Beidleman explained that he believed Brownlee to be "somewhat suspicious and paranoid," but not actively psychotic. Id. at 507-08. Nor, he stated, was there evidence of a thought disorder or severe mood disturbance. Id. at 508. Beidleman also testified about Brownlee's long history of drug abuse, and about how he believed it likely that Brownlee was highly intoxicated at the time of the crime. Id. at 508-10. Finally, Beidleman indicated that Brownlee and his sisters reported that he received an "undesirable discharge" from the

army and that he was treated for episodic blackouts and seizures, which Beidleman indicated might have been related to his drug use. Id.

Two of Brownlee's sisters also testified at the sentencing hearing before the court, after the jury had rendered its sentencing verdict. One sister, Maryann Andrews, testified that Brownlee had engaged in strange and self-destructive behavior. For instance, she alleged that on one occasion, Brownlee jumped out of a second-story window and threw out a television set, and when family members did get to him, "he was on the floor with his chest all cut up." Id. at 530. This led to the family taking him to Hillcrest Hospital for a consultative psychiatric examination. Id. at 530-31. She also indicated that he seemed to have more than one personality at times and would go through severe mood changes. Id. at 533. Andrews stated, though, that Brownlee was never dangerous to others and had "helped raise" her then-nine-year-old-daughter. The other sister, Gail Brownlee, corroborated that her brother had abused drugs and did bodily harm to himself on several occasions, which caused family members to take him to Cooper Green Hospital, which referred him to Hillcrest. Id. at 538. Like Andrews, she testified that he was not violent towards others. Id. at 540.

The trial court found, however, that neither the testimony of Dr. Beidleman nor Brownlee's sisters nor any other evidence established the existence of any statutory or non-statutory mitigating circumstance. In particular, the court noted that it found that Brownlee's capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of law was not substantially impaired because of alleged drug use or otherwise. Although Goodgame testified that the robbery participants ingested illicit drugs before the crime, the trial court credited testimony from Jones and Warren indicating that drugs were taken in substantial amounts only after the robbery, which resulted in Harris overdosing. See Trial Record at 585-86. The court determined, on the other hand, that there were three aggravating factors present: (1) that the capital offense

Page 77 of 114

was committed while Brownlee was under a sentence of imprisonment, i.e., on parole, which was undisputed; (2) that Brownlee had previously been convicted of robbery, a felony involving the use or threat of violence to the person, which was also undisputed; and (3) that the capital offense was committed while Brownlee was engaged in the commission of a robbery, which was established by the jury's guilty verdict. Weighing the existence of these aggravating factors against its finding of no mitigating circumstances, the trial court sentenced Brownlee to death.

Brownlee argues that his appointed trial attorneys were constitutionally ineffective for their failure to investigate and present evidence of mitigating circumstances at both the penalty phase before the jury and the sentencing phase before the trial judge. Brownlee alleges that his attorneys failed to conduct any investigation of potential mitigation materials until after the jury returned its advisory sentencing verdict, which prevented the jury from being able to consider available evidence regarding his family background, limited intellect and other mental problems, seizures, military record, prison record, history of drug and alcohol abuse, intoxication on the night of the crime, and the troubled environment in which he was raised. Brownlee acknowledges that his counsel did investigate many of these issues following the jury's advisory penalty verdict and prior to the sentencing hearing before the trial judge. He also concedes, as he must, that the resulting testimony of his sisters and Dr. Beidleman before the trial judge did present some of these issues of potential mitigation. However, Brownlee suggests that even though his attorneys presented potentially mitigating evidence to the trial judge before he passed sentence, such does not remedy their failure to present evidence to the jury. And finally, Brownlee complains that even the investigation conducted by his attorneys prior to the sentencing hearing before the judge was not reasonably adequate and prevented the full development of mitigating evidence before the judge and the jury. Once again, in order to prevail on these claims of ineffective assistance of counsel,

Page 78 of 114

Brownlee must show both constitutionally deficient performance and prejudice.

In determining whether an attorney's performance is deficient within the meaning of <u>Strickland v. Washington</u>, there is no absolute duty to investigate particular facts or a certain line of defense. <u>Chandler v. United States</u>, ___ F.3d ___, ___, 2000 WL 1010248 (No. 97-6365, July 21, 2000, Slip op. at *23) (11th Cir. 2000) (en banc). However, counsel's actions always must be reasonable. Thus, he has a duty to make a reasonable investigation, including an investigation of the defendant's background for possible mitigating evidence, or to make a reasonable decision that makes such an investigation unnecessary. See <u>Strickland</u>, 466 U.S. at 690-91; <u>Porter v. Singletary</u>, 14 F.3d 554, 557 (11th Cir. 1994).

The Court agrees with Brownlee both that the evidence shows his attorneys failed to conduct any kind of substantive investigation into his background or character for purposes of presenting potentially mitigating evidence at sentencing until after the jury returned its advisory verdict, and that such constituted deficient performance within the meaning of <u>Strickland</u>. The Rule 32 court's order seems to suggest that Brownlee's counsel did not present background evidence concerning mitigation because "[t]here was no mitigating evidence to introduce to the jury other than the weakness of the state's case." Tab R-63 at 17. However, there are two problems with that statement. First, Brownlee's counsel had not done any investigation into Brownlee's background or character, so they did not know what evidence there might have been to present. And second, virtually any evidence shedding light on a defendant's background, character, or prospects for rehabilitation or adjustment to prison life is relevant to mitigation and is to be considered by the sentencer when offered. See <u>Boyde v. California</u>, 494 U.S. 370, 381-82 (1990); <u>Penry v. Lynaugh</u>, 492 U.S. 302, 319 (1989); <u>Skipper v. South Carolina</u>, 476 U.S. 1 (1986). Indeed, virtually all the evidence presented to the trial judge at sentencing obviously bears upon the inquiry of mitigation, as did much of the evidence at the Rule

32 hearing.

Frankly, this Court cannot see how the Rule 32 judge's statement that there was "no mitigating evidence" to be presented at sentencing can be squared with the undisputed testimony that Brownlee has an IQ of slightly above 70, unless one assumes the judge's statement refers only to evidence <u>he</u> himself actually found sufficient to be a mitigating circumstance. The Supreme Court has stated that "evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse." <u>Penry</u>, 492 U.S. at 319 (quoting <u>California v. Brown</u>, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring). Thus, sentencers in Alabama capital cases have found, on similar evidence to that offered here, that a defendant's limited mental resources were a non-statutory mitigating factor. See, <u>e.g.</u>, <u>Perkins v. State</u>, ___ So. 2d ___, ___, 1999 WL 1046438, *97 (Ala. Cr. App. 1999); <u>Dobyne v. State</u>, 672 So. 2d 1353, 1353 (Ala. Cr. App. 1994). See also <u>Ex parte Henderson</u>, 616 So. 2d 348, 350 (Ala. 1992) (holding that where it was undisputed that the defendant "was of very low intelligence" (a verbal IQ of 73, a performance IQ of 63, and a full scale IQ of 68) the sentencing court erred in failing to consider the defendant's limited intellectual functioning as a non-statutory mitigating circumstance).[27] The trial judge obviously may have been entitled to find, as a factual matter, that Brownlee's low IQ and other evidence of his background and character was not enough to establish circumstances that actually weighed against the imposition of the death penalty. " 'Although consideration of all mitigating circumstances is required by the United States' Constitution, the decision of whether a particular mitigating circumstance

---

[27]Brownlee has not argued that the sentencing judge was required to consider Brownlee's limited intelligence as a non-statutory mitigating factor, nor that his counsel was ineffective for failing to raise such an argument.

in sentencing is proven and the weight to be given it rest with the judge and jury.' " Darrell v. State, 470 So. 2d 1303, 1308 (Ala. Cr. App. 1984), aff'd, 470 So.2d 1309 (Ala.), cert. denied, 474 U.S. 935 (1985) (quoting Smith v. State, 407 So. 2d 894, 901 (Fla.1981)) (citations omitted).   Nonetheless, the trial court's findings do not change the potentially mitigating character or relevancy of the evidence that was subsequently presented, or preclude the possibility that the jury might have found one or more mitigating circumstances existed based on that same evidence.

The Rule 32 court seems to have also found that Brownlee's counsel made a conscious decision to forego an investigation into such evidence in favor of pursuing a penalty phase strategy emphasizing residual doubts about Brownlee's guilt and an "emotional and personal plea" to the jury to spare his life.  See Tab R-63 at 16. Of course, as the Eleventh Circuit's recent en banc decision in Chandler indicates, it may be reasonable for an attorney not to investigate a defendant's background or character if he reasonably decides to present a defense at sentencing based on residual doubt where the State's evidence of guilt was weak.  And the question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct. Provenzano v. Singletary, 148 F.3d 1327, 1330 (11th Cir. 1998).

"Nonetheless, the mere incantation of 'strategy' does not insulate attorney behavior from review." Stevens v. Zant, 968 F.2d 1076, 1083 (11th Cir. 1992). And, unlike in Chandler, the trial transcript clearly shows that Brownlee's attorneys did not, in fact, pursue a penalty phase strategy emphasizing residual doubt.  Kendrick's Rule 32 hearing testimony establishes that he was not involved in formulating sentencing strategy.  And Dunn's testimony at the Rule 32 hearing on his strategy for the penalty and sentencing stages was exceedingly vague: "The strategy was basically to save the man's life, to do whatever it took to save his life . . . ."  Rule 32 Hearing Transcript at 442.  While Dunn

suggested that he "[thought] the idea would have been to try to . . . discredit the type of testimony that [Brownlee] was convicted on," Dunn and Kendrick instead each actually told the jurors that he would not "rehash" the trial evidence because they, the jurors, had already resolved the issue of Brownlee's guilt. In fact, Dunn even made a remark during his argument, "And regardless of the fact that [Brownlee] has committed a crime, I still feel for him," Trial Record at 475, which could be interpreted as an acknowledgment of guilt. Aside from Kendrick's lone comment that Goodgame's sentence was going to be light given that the evidence indicated Goodgame was inside the bar and might have actually been the shooter, there was nothing in either lawyer's argument that might be interpreted as a challenges to the State's guilt phase evidence.

The penalty phase arguments of Brownlee's counsel could be characterized as containing an "emotional and personal" plea to spare Brownlee's life, as indicated by the Rule 32 court. However, the Court fails to see how it could be considered "reasonable" for counsel to forego all investigation into a defendant's background and character solely because he could merely beg for the defendant's life, except, perhaps, where there might be a specific justification for taking that tack.[28] See Francis v. Dugger, 908 F.2d 696, 703 (11th Cir. 1990) (finding reasonable counsel's decision to deliver "a highly impassioned, emotional argument" where such decision was based on previous conversations with the trial judge and the court's plea offers that the trial judge would follow a life recommendation, and where counsel actually obtained a recommendation of life imprisonment from the jury). But if such a course of action, which would seem to be the last resort in any capital case, were always held to excuse the failure to conduct any investigation into a defendant's background and character, no omission would seem to be

---

[28]Whether the tactic was reasonable, however, is a question of law and is reviewed de novo. Collier v. Turpin, 177 F.3d 1184, 1199 (11th Cir. 1999).

outside the realm of reasonableness.

Further, while the Rule 32 court's findings would suggest that Dunn and Kendrick avoided reference to Brownlee's background or character, a portion of their "emotional and personal" appeal for life was, in fact, directed towards showing that Brownlee was a "living, breathing human being" whose family attended the trial and loved him. See Trial Record at 474-77. Such argument would seem particularly ripe for supporting evidence of his background and testimony from those family members. In addition, at the sentencing phase before the judge Brownlee's counsel obviously decided that evidence emphasizing their client's mental problems, seizures, substance abuse, family history, background and character was the best way to proceed after all. An attorney could perhaps make a reasonable tactical choice to present certain mitigating evidence only to the judge. Indeed, there is evidence indicating that Brownlee's counsel were aware that Brownlee had a history of drug use, but that they believed evidence of such simply would not play well with the jury at the penalty phase (although they did not attempt to explain why they decided to present substantial evidence on that subject to the sentencing judge). Such a belief is clearly reasonable and thus justifies the lack of investigation into that issue. See Clisby v. State of Ala., 26 F.3d 1054, 1056 & n.2 (11th Cir. 1994); Rogers v. Zant, 13 F.3d 384, 388 (11th Cir. 1994). Further, evidence of a defendant's drug abuse history generally is not the type of evidence that undermines confidence in the outcome of a sentencing proceeding. See id.; Waldrop v. Thigpen, 857 F.Supp. 872, 919 (N.D. Ala. 1994) ("It is hard for the court to seriously consider petitioner's argument that, if his attorneys had presented evidence to the jury during the sentencing phase to show that petitioner routinely drank until he passed out and used all manner of illicit drugs, the jury would have concluded that he should not receive the death penalty"). However, there is nothing in the record explaining why Brownlee's attorneys decided not to present to the jury other testimony from Dr. Beidleman and Brownlee's sisters, or other background or

Page 83 of 114

character evidence, aside from the fact that they were unaware of such evidence until after the jury had already returned its advisory verdict.

Brownlee also argues that his counsel's performance with respect to investigating and presenting mitigating evidence to the sentencing judge was also deficient. However, Brownlee's attorneys did conduct an investigation into at least some aspects of Brownlee's background and character, which resulted in the sentencing phase testimony from Dr. Beidleman and Brownlee's two sisters, discussed previously. Nonetheless, Brownlee asserts that his counsel's investigation and presentation of mitigating evidence was lacking in several respects, in particular their failure to obtain his prison, military, and hospital records to support the testimony offered at sentencing. However, even given the Court's finding that Brownlee's counsel's failure to investigate potential mitigating evidence of background and character until after the jury returned its sentencing verdict was constitutionally deficient, and further assuming that counsel's investigation and presentation of additional mitigating evidence before the sentencing judge was deficient, the Court concludes that Brownlee cannot show prejudice sufficient to satisfy the strict requirements of Strickland v. Washington.

As an initial matter, the Court acknowledges that the prejudice inquiry is this case is complicated by the apparently unusual circumstance that no evidence at all pertaining to mitigation was presented to the jury at the penalty phase while a substantial amount of such evidence was put before the judge at the sentencing phase. In fact, as the Court explores in greater detail below, the substance of the potentially most persuasive mitigating evidence was presented to the trial judge at sentencing. This circumstance alone differentiates this case from those cited by Brownlee where courts held that the failure to investigate and present evidence of mitigation at sentencing constituted ineffective assistance of counsel under the Sixth Amendment. See Williams v. Taylor, 120 S.Ct. 1495 (2000); Armstrong v. Dugger, 833 F.2d 1430 (11th Cir. 1987); Harris v. Dugger,

874 F.2d 756 (11ᵗʰ Cir. 1989); Middleton v. Dugger, 849 F.2d 491 (11ᵗʰ Cir. 1988); Stephens v. Kemp, 846 F.2d 642 (11ᵗʰ Cir. 1988); Thomas v. Kemp, 796 F.2d 1322 (11ᵗʰ Cir. 1986); Cunningham v. Zant, 928 F.2d 1006 (11ᵗʰ Cir. 1991); Magill v. Dugger, 824 F.2d 879 (11ᵗʰ Cir. 1987).

It must always be recalled that Strickland's prejudice prong is particularly focused on the likelihood of a wholly different sentencing result. To establish prejudice sufficient to sustain a claim of ineffective assistance of counsel at sentencing, "[i]t is not enough for the defendant to show that the error had some conceivable effect on the outcome of the proceeding." Tompkins v. Moore, 193 F.3d 1327, 1336 (11ᵗʰ Cir. 1999) (quoting Strickland, 466 U.S. at 693). Instead, Strickland makes clear that "the question is whether there is a reasonable probability that, absent the errors, the sentencer–including an appellate court, to the extent it independently reweighs the evidence–would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." 466 U.S. at 695. Indeed, this formulation suggests that a state appellate court's subsequent proper and independent reweighing of aggravating and mitigating factors in a given case may be sufficient, at least for the limited purposes of reaching a reliable result within the meaning of Strickland, to "cure" deficiencies associated with a jury's consideration of aggravating and mitigating circumstances. Further support for this position can be drawn from Clemons v. Mississippi, 494 U.S. 738 (1990), where the Supreme Court held that the Federal Constitution does not prevent a state appellate court from upholding a death sentence imposed by a jury that is based in part on invalid or improperly defined aggravating circumstances, either by reweighing of the aggravating and mitigating evidence or by harmless error review.[29] Similarly, it may be possible, at

---

[29]Under Alabama law, the Alabama Court of Criminal Appeals is required in cases where the death penalty has been imposed to determine whether "an independent weighing of the aggravating and mitigating circumstances . . . indicates that death was the proper sentence." § 13A-5-53(b)(2), Ala. Code 1975.  As noted previously, the Alabama appellate courts indicated

least in some cases, that a trial judge's full consideration of mitigating evidence that was not presented to an advisory jury due to counsel's deficient performance similarly renders the sentencing outcome sufficiently reliable for the limited purposes of assessing prejudice under Strickland. The Court concludes that this is such a case, given (1) the particularly strong role afforded to the sentencing judge in Alabama's capital sentencing scheme, (2) the strong evidence of all three aggravating circumstances compared to the relatively mixed nature of mitigating evidence, and (3) the trial judge's specific findings with respect to the existence of aggravating factors and lack of any mitigating circumstances, after considering the evidence presented at the sentencing phase.

Under Alabama's capital sentencing scheme, the trial judge is the ultimate sentencing authority. Under § 13A-5-47(d), Ala. Code 1975, the judge is required to make "specific written findings concerning the existence or nonexistence of each [statutory] aggravating circumstance . . . and each [non-statutory] mitigating circumstance, and any additional [non-statutory] mitigating circumstances . . . ." The judge is then required to determine "whether the aggravating circumstances [he] finds to exist outweigh the mitigating circumstances [he] finds to exist," and in so doing he must "consider" the jury's sentencing verdict, but such "is not binding upon the court." § 13A5-47(e), Ala. Code 1975. Thus, the jury's sentencing verdict is merely a recommendation that is not afforded any particular degree of weight or deference. See Harris v. Alabama, 513 U.S. 504 (1995). The United States Supreme Court has indicated that the jury's limited sentencing role

that they fulfilled this duty in Brownlee's case. However, the State has not argued that the independent weighing of aggravating circumstances at the appellate level infused the death sentence with additional reliability so as to preclude the necessity of a resentencing. Thus, the Court does not address whether such an argument might be valid. Cf. Horsley v. State of Ala., 45 F.3d 1486, 1492 n.9 (11th Cir. 1995) (declining to address whether independent weighing of aggravating and mitigating circumstances by Alabama appellate courts may have cured the trial court's failure properly to weigh all mitigating circumstances, where the State failed to raise the issue).

under Alabama law does not at all imply that errors committed during the penalty phase before the jury are necessarily inconsequential or harmless for constitutional purposes. See id., 513 U.S. at 512-13.   Accord Nelson v. Nagle, 995 F.2d 1549 (11th Cir. 1993) (holding that improper prosecutorial argument during the sentencing phase of an Alabama capital trial violated the defendant's rights under the Due Process Clause, warranting the granting of habeas relief ordering a new sentencing hearing).   See also Lawhorn v. State, 581 So. 2d 1159, 1175-76 (Ala. Cr. App. 1990) (recognizing that an independent reweighing of aggravating and mitigating circumstances at the appellate level does not, under state law, cure an error committed with respect to the improper consideration of aggravating or mitigating circumstances by the jury, notwithstanding Clemons), aff'd, 581 So. 2d 1179 (Ala.), cert. denied, 502 U.S. 970 (1991).   However, this does not change the fact that if it appears that there is not a reasonable probability that the ultimate sentence handed down would have been different, regardless of the jury's advisory verdict, then prejudice is not shown under Strickland.   Cf. Weeks v. Jones, 26 F.3d 1030, 1042 (11th Cir. 1994) (Finding no prejudice under Strickland, stating, "Because of the overwhelming evidence of Weeks's guilt in the brutal murder of the Tuskegee veterinary student for his car, we conclude that the sentencing judge would have given the death penalty with or without jury participation, which is merely a sentencing recommendation").[30]

---

[30]There are Eleventh Circuit decisions arising from Florida cases holding that a trial judge's consideration of mitigating evidence at sentencing does not render "harmless" the unconstitutional failure to allow the jury to consider such evidence during the penalty phase, as required by Hitchcock v. Dugger, 489 U.S. 393 (1987), and Lockett v. Ohio, 438 U.S. 586 (1989).  See Jones v. Dugger, 867 F.2d 1277 (11th Cir. 1989); Magill v. Dugger, 824 F.2d 879, 894 (11th Cir. 1987),  However, there are several important differences between those cases and the instant one.  Those cases did not involve claims of ineffective assistance of counsel, and thus assessed whether the jury's unconstitutional consideration of mitigating circumstances was "harmless beyond a reasonable doubt," under the standard employed for direct review cases, first articulated  by the Supreme Court in Chapman v. California, 386 U.S. 18, 23 (1967). However,

The evidence supporting the three statutory aggravating circumstances found by the trial judge was exceptionally strong.   One circumstance, that the murder was committed during a robbery, was established by the jury's guilty verdict, and is thus essentially unassailable at sentencing.   Another, that Brownlee had been previously convicted of a felony involving the use or threat of force, was undisputed and still has not been undercut.   Furthermore, the evidence showed not one but four prior robbery convictions to satisfy this circumstance.   And the third, that Brownlee was under a sentence of imprisonment when the capital crime occurred, was and is also undisputed. In fact, the evidence showed that Brownlee had been released on parole from serving his sentences for his robbery convictions less than two months before the robbery-murder at Jodie's Lounge.

Nonetheless, Brownlee argues that the presentation of the evidence of mitigation presented at the Rule 32 hearing, in conjunction with the evidence actually presented at sentencing, would have likely changed the outcome of his sentencing proceeding.   The

----

the Supreme Court has since indicated that a less defendant-friendly harmless error rule, i.e., whether the error "had substantial and injurious effect or influence in determining the jury's verdict," is to be applied generally to constitutional trial errors on habeas review. See Brecht v. Abrahamson, 507 U.S. 619, 638 (1993). The Eleventh Circuit has held Brecht's standard now applies to Hichcock/Lockett claims, such as were at issue in Jones, and Magill. See Sims v. Singletary, 155 F.3d 1297, 1315 (11th Cir. 1998). But even Brecht's rule clearly is not as demanding upon defendants as is the Strickland prejudice prong. See Kyles v. Whitley, 514 U.S. 419, 435-36 (1995) (discussing relationship between Brecht's harmless error analysis and the materiality inquiry under Brady v. Maryland, 373 U.S. 83 (1963), from which Strickland's prejudice inquiry derives); see also Jackson v. Herring, 42 F.3d 1350, 1361 (11th Cir. 1995) (noting that Strickland's prejudice prong is not "akin" to Brecht's "harmless error" standard). In addition, an error occurring before the jury at the penalty phase of a capital case in Florida is even more likely to have an impact on the sentencing judge's ultimate sentencing outcome than the same error that occurs in Alabama. As stated previously, no particular deference is afforded to the jury's sentencing recommendation in Alabama, while the jury's sentencing verdict in Florida must, by contrast, be afforded "great weight" by the sentencing judge. See Tedder v. State, 322 So. 2d 908, 910 (Fla.1975); Harris v. Alabama, supra. Accordingly, neither Jones nor Magill mandate a finding of prejudice here.

potentially mitigating evidence offered at the Rule 32 hearing, can be summarized as follows:  Dr. Beidleman testified that based on additional interviews with Brownlee and his review of voluminous records on Brownlee from various hospitals and correctional institutions, he concluded Brownlee suffers from (1) "borderline intellectual functioning" (with an IQ between about 70 to 75), (2) "schizotypal personality disorder" (but not schizophrenia), (3) "antisocial personality disorder," (4) cocaine, opiod, and alcohol abuse dependence, and (5) a seizure disorder/epilepsy by history, which may relate to his drug abuse.  He also testified that he believed Brownlee was likely intoxicated on the night of the offense.  Brownlee's two sisters who testified before the judge at sentencing also testified at the Rule 32 proceedings, along with a neighbor who did not testify previously, Maxine Driver.  They provided greater detail fleshing out and corroborating prior sentencing hearing testimony about occasions where Brownlee suffered seizures and jumped out of a window and cut up his chest after his discharge from the military, as well as testimony relating to his substance abuse, and good family relationships.  They also provided additional information about what the trial judge acknowledged was the "high crime" neighborhood where Brownlee spent his youth, which included anecdotes that Brownlee was stabbed while going to the store on an errand and that he was on a later occasion shot.  There was also evidence presented for the first time about Brownlee's prison record prior to being paroled.  A corrections officer who supervised Brownlee in prison, Lt. Frederick Freeman, testified that his experiences with Brownlee indicated he was a "model prisoner" who did as he was told, acted appropriately towards staff and other inmates, and did not require disciplining.  Dr. Beidleman testified that this favorable record suggested that Brownlee's prospects for behaving in prison if returned there were good.

However, most of the substance of such evidence from the Rule 32 proceedings was presented to the trial judge at sentencing.  Most notably, Dr. Beidleman's later testimony

about Brownlee's limited intellectual functioning, mental and emotional problems, seizures, drug abuse, intoxication on the night of the murder, military record, and family relationships was substantially similar to that which he presented to the judge at sentencing. Brownlee argues that there were differences in his earlier and later testimony. But even Dr. Beidleman conceded that, while his later testimony was "a lot more detailed" and better supported because of his access to Brownlee's records, his Rule 32 testimony ultimately was only "a little different" and that he had "still testified grossly in the same way" at the sentencing hearing. See Rule 32 hearing transcript at 285, 294. Also similar is the Rule 32 testimony from Brownlee's two sisters who testified at the sentencing hearing. Their later testimony, along with that of a neighbor, Maxine Driver, certainly corroborated and added greater detail to their earlier testimony concerning Brownlee's seizures, mental problems, substance abuse, and family background. And yet, very little in their testimony on these issues can be said to have broken new ground from what was previously presented to the sentencing judge. Given the substantial similarity of the testimony regarding mitigation offered at the Rule 32 proceedings by Dr. Beidleman, Brownlee's sisters, and Driver to the evidence that was presented to the trial judge at sentencing, the Court concludes that it does not give rise to a reasonable likelihood that it would have altered the balance of aggravating and mitigating factors that actually were found by the sentencing judge. See, e.g., Clisby, 26 F.3d 1054 (11th Cir. 1994) (holding that no prejudice resulted where subsequent expert testimony on mitigation (from Dr. Beidleman, no less) "reached much the same result" as that offered previously at sentencing by another expert).

Moreover, much of the evidence presented at the Rule 32 hearing simply is not likely to be considered so significantly mitigating that the failure to present it to either the judge or the jury undermines confidence in the outcome of Brownlee's sentencing outcome. As indicated previously, the abundant evidence presented on Brownlee's

history of drug and alcohol abuse falls into this category. See Clisby; Rogers; Waldrop, supra. So, too, is the evidence relating to his military record, the principal feature of which appears to be that he received an "undesirable discharge" after striking an officer while high on drugs. See, e.g., Howard v. Moore, 131 F.3d 399, 421 & n.24 (4th Cir. 1997) (finding that defendant's military history was, at best, "checkered," and would have hurt him as much as helped him); Jones v. Delo, 56 F.3d 878, 886 (8th Cir. 1995) (failure to present military record  nonprejudicial where defendant served in World War II but following his stint during the Korean War was later discharged in lieu of a general court martial because of his tendency to be absent without leave); Sawyers v. Collins, 986 F.2d 1493, 1505-06 (5th Cir. 1993) (no ineffective assistance of counsel for failure to offer military service record which ended with a discharge due to fraudulent enlistment).

Other new evidence presented at the Rule 32 hearing, which at first glance might seem more favorable to Brownlee was ultimately so mixed in its potential mitigation value that it does not indicate that a different sentencing result would have been reached. For example, the value of testimony from Freeman and Beidleman respecting Brownlee's status as a would-be "model prisoner" who would adapt well to imprisonment was substantially undercut by other evidence adduced at the Rule 32 hearing that Brownlee admitted to abusing drugs even while he was incarcerated. Given the conflicting nature of the evidence of Brownlee's prison experience, and the fact that this "evidence relative to [Brownlee's] favorable adjustment to prison life does not qualify as a statutory mitigating circumstance, is not capable of justifying his crime, and would not offset the clearly established statutory aggravating circumstances" found by the trial judge, the Court concludes that there is no reasonable likelihood that presentation of this evidence would have altered the outcome of his sentencing proceeding. Lusk v. Dugger, 890 F.2d 332, 339 (11th Cir. 1989). Similar is the evidence of Brownlee's family background and the violent neighborhood in which he grew up. While, there was some showing at the Rule

32 hearing regarding Brownlee's upbringing that his parents separated while he was young and his neighborhood was violent, the testimony also established that he was not physically or mentally abused; that he had loving, supportive and relatively stable family relationships; and that at the time of his trial none of his numerous siblings had been in trouble with the law.  Furthermore, Brownlee was 31 years old at the time of the offense, further diluting the potential mitigative impact of his relatively remote-in-time childhood and upbringing.  See Francis v. Dugger, 908 F.2d 696, 703 (11th Cir. 1990) ("Given the particular facts of this case, including among other things, the fact that [the defendant] was thirty-one years old when he murdered [the victim] evidence of a deprived  and abusive childhood is entitled to little, if any, mitigating weight"), cert. denied, 500 U.S. 910 (1991). Likewise, as an example of Brownlee's good character, Brownlee's sister testified at some length at both sentencing and the Rule 32 hearing about how Brownlee had "helped raise" her young daughter.  But it was subsequently brought out that Brownlee had been in prison since the daughter was two years old.  Thus, the mitigating value of the above evidence is not particularly likely to influence a sentencer that Brownlee should have been sentenced to life imprisonment.

Under Strickland, this Court must assess whether there is a reasonable probability that the sentencer would have reached a different conclusion with respect to the balance of aggravating and mitigating circumstances.  In this case, the judge is the ultimate sentencing authority, and he found that there were three aggravating circumstances and no mitigating circumstances, either statutory or nonstatutory.  Nothing presented at the Rule 32 hearing tended to undercut the existence of the aggravating circumstances.  And, as the Court has explained, much of the allegedly mitigating evidence is not particularly persuasive.  But more importantly, the substance of the potentially most persuasive mitigating evidence from the Rule 32 hearing was presented to the trial judge at sentencing, and the additional evidence that was not before him is not so strong that it

causes this Court to believe that it might have changed the judge's decision. Further, the Court's reading of § 13A-5-47(d) and (e) suggests that under the Alabama statutory capital scheme the judge's findings of the <u>existence or nonexistence</u> of aggravating and mitigating factors are not at all dependent upon the jury's sentencing recommendation. Rather, it is only once the trial judge finds that there are both aggravating and mitigating factors that he must "consider" the jury's sentencing recommendation when he <u>weighs</u> whether the former outweigh the latter. Thus, even if the jury was somehow persuaded to return an advisory verdict recommending life imprisonment, given that the judge found that there were no mitigating circumstances to weigh against those in aggravation, there is not a reasonable likelihood that the trial judge would have reached a different result than the one he did. Accordingly, Brownlee cannot show a prejudice sufficient to establish a Sixth Amendment violation, and he is not entitled to relief on these claims.

## 21. Ineffective Assistance of Counsel on Direct Appeal

### (Claims A(8)(f)(1)-(4))

Finally, Brownlee argues that Kendrick was ineffective on appeal. Brownlee argues that Kendrick should have but failed to raise on appeal each and every substantive claim that Brownlee raised in his Rule 32 and habeas petitions. However, this Court concludes that Brownlee cannot recover on such an ineffectiveness claim because, as the Court will explore in later sections of this memorandum opinion, he is not entitled to relief on any of those substantive claims. Moreover, the Supreme Court has explained that the process of " 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." <u>Smith v. Murray</u>, 477 U.S. 527, 536 (1986) (quoting <u>Jones v. Barnes</u>, 463 U.S. 745, 751-752 (1983).

Brownlee also takes issue with the fact that Kendrick apparently did not notify the Alabama appellate courts that they had "improperly assumed that Brownlee had been

identified" as being present during a transaction in which Goodgame sold weapons used and obtained in the Jodie's Lounge robbery to one Booker T. Harris. However, this claim is likewise without merit. Harris testified at trial that he bought the guns from Goodgame, and that another black male, who Harris could not see well and could not identify, accompanied him. However, Goodgame testified that Brownlee was the individual with him.

## B. SUBSTANTIVE CLAIMS

Brownlee advances numerous substantive claims that the State argues are, absent a showing of cause and prejudice, procedurally defaulted because they could have been but were not raised at trial or on direct appeal. See Baldwin v. Johnson, 152 F.3d at 1318. Brownlee, however, seeks to overcome that bar by asserting that his failure properly to present these substantive claims in state court is attributable to the ineffectiveness of his counsel. As noted previously, ineffective assistance of counsel may satisfy the cause exception to a procedural default, Holladay v. Haley, 209 F.3d at 1254. However, the Court has already discussed and rejected claims of ineffective assistance of counsel premised on the failure to raise the issue forming the foundation of some of Brownlee's substantive claims. The Court's rejection of these claims of ineffective assistance of counsel necessarily implies that Brownlee has not established cause for the failure to raise the substantive claim, which are thus procedurally defaulted. The Court concludes that the following substantive claims advanced by Brownlee are barred on this basis:[31]

---

[31]The Court recognizes that there may be other claims that might, in fact, be procedurally defaulted on this same basis but are not disposed of here. The Court will address these claims separately, either because the default question is for some reason complicated or a close one or the claim is more easily disposed of on the merits or some combination of these factors. In addition, Brownlee raises numerous other substantive claims that are procedurally defaulted, absent a showing of cause and prejudice, because they were not raised at trial or on direct appeal, and for which he argues in his brief that he has overcome the procedural bar because the failure to raise the claims in state court was caused by the unconstitutional ineffective assistance of his trial and appellate counsel. See Petitioner's Amended Supplemental Brief at 78-79 & n.266. He

**B.** (failure to administer the oath to Goodgame);

**D.** (failure to fully transcribe the trial court proceedings);

**E.** (failure to grant a change of venue);

**J.** (prosecutorial misconduct – guilt phase);

**N.** (admission of photographs);

**O.** (prosecutorial misconduct -- race discrimination);

**Q.** (race-based peremptory challenges);

**S.** (prosecutorial misconduct – penalty phase);

**T.** (participation by brother of victim)

**U.** (instruction limiting consideration of mitigating evidence)

**W.** (inadmissible evidence at sentencing)

**FF.** (Warren's status as an accomplice);

**II.** (failure to conduct an on-the-record inquiry of Dunn's conflict);

To the extent that the above claims may not be procedurally barred, the Court concludes that they are without merit. The Court will now proceed to consider Brownlee's other substantive claims.

### Claim C.  Goodgame's Recantation

Brownlee argues that he is entitled to a new trial because Goodgame allegedly perjured himself at trial. As noted previously, at the Rule 32 hearing Goodgame recanted his trial testimony, stating that pressure and threats from his attorney and the prosecutor

---

does not expressly assert in his petition that these failures constitute independent claims of ineffective assistance of counsel, but given that (1) Brownlee did raise these same "claims" of ineffective assistance in his brief before the Alabama Court of Criminal Appeals following the denial of relief on his Rule 32 petition, Tab R-70 at 63-64 & n.29, and (2) the ambiguous language of that appellate court, discussed in text previously, potentially disposing of all of Brownlee's ineffective assistance claims on the merits, see 666 So. 2d at 100, this Court concludes that it should address whether Brownlee's counsel was constitutionally ineffective for failing to raise these substantive claims for purposes of whether cause is established to excuse the procedural default.

caused him falsely to implicate Brownlee as a participant in the robbery-murder at Jodie's Lounge. However, the Rule 32 court made findings, supported by evidence, that Goodgame's recantation was not credible. But even if it were true that the conviction was based on perjured testimony, such would not, in itself, warrant habeas relief. "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400 (1993) See also Townsend v. Sain, 372 U.S. 293, 317 (1963) ("[T]he existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on habeas corpus"); Anderson v. Maggio, 555 F.2d 447, 451 (5th Cir. 1977) (holding recantation of trial testimony, without more, not subject to collateral attack by habeas corpus); Shaver v. Ellis, 255 F.2d 509, 511 (5th Cir. 1958) ("Questions of guilt or innocence are not matters to be considered upon petition for habeas corpus. . . . Newly discovered evidence in the form of a confession by another does not render the conviction void and subject to collateral attack by habeas corpus because it goes to the merits of the conviction, not to its legality . . . (T)he confession 'might be urged as the proper subject for executive clemency, but it affords no basis for judicial action.' " (citation omitted)). This claim is due to be denied.

### Claim F.  Improper Juror Exclusion under Witherspoon

Brownlee claims that two members of the venire, Bellenger and Presley, were improperly excluded, because their answers to voir dire allegedly indicated, Brownlee alleges, that they could have properly considered applying the death penalty. See Witherspoon v. Illinois, 391 U.S. 510 (1968); Wainwright v. Witt, 469 U.S. 412 (1985). The State argues that absent a showing of cause and prejudice, these claims are procedurally defaulted in this Court (1) because the Rule 32 court allegedly determined that these claims were barred from state collateral review in that the issue of Bellenger's

exclusion <u>was</u> raised and decided at trial and on direct appeal, and the issue of Presley's exclusion could have been but <u>was not</u> raised at trial or on direct appeal and (2) because Brownlee failed to raise the issue of the exclusion of either juror in his appeal from the denial of relief on his Rule 32 petition. See Respondent's Supplemental Brief at 69-70. However, the State's argument misapprehends the doctrines of procedural default and exhaustion.

It is true that, pursuant to Alabama Rules of Criminal Procedure 32.2(a)(2) & (4), a claim that was raised at trial or on direct appeal will not constitute grounds for relief in a state collateral proceeding. <u>E.g.</u>, <u>McNair v. State</u>, 706 So. 2d 828, 853 (Ala. Cr. App. 1997). However, that a particular claim is "procedurally barred" from state collateral review under Rule 32.2(a)(2) and (4) does not imply that the claim is also barred from federal habeas review under the doctrines of procedural default or exhaustion. Indeed, it is well established that a claim that has been rejected on the merits by the state courts on direct appeal need not be re-presented for review in a state collateral proceeding in order to be considered on federal habeas. See <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 844 (1999) ("a prisoner does not have 'to ask the state for collateral relief, based on the same evidence and issues already decided by direct review' ") (quoting <u>Brown v. Allen</u>, 344 U.S. 443, 447 (1953)); <u>Buck v. Green</u>, 743 F.2d 1567, 1569 (11th Cir. 1984); <u>Walker v. Zant</u>, 693 F.2d 1087, 1088 (11th Cir. 1982); <u>Galtieri v. Wainwright</u>, 582 F.2d 348, 354 n.12 (5th Cir. 1978)(en banc). Therefore, where a claim was properly presented and rejected on direct appeal, that claim may be considered on federal habeas even though the petitioner did not seek appellate review of a state habeas court's denial of relief on the claim. <u>Walker v. Zant</u>, <u>supra</u>.

Brownlee's subclaim that juror Bellenger was excluded in violation of <u>Witherspoon</u> was expressly presented on direct appeal to the Alabama Court of Criminal Appeals, which rejected it on the merits. See 545 So. 2d at 155-56. Thus, this Court must consider

the merits of that subclaim.  Walker, supra.  Unfortunately for Brownlee, though, he is not entitled to relief upon the claim.  The Alabama Court of Criminal Appeals set forth the entire portion of the record where Bellenger was questioned on voir dire about her opposition to the death penalty and the attorneys discussed whether she should be excused for cause.  See 545 So. 2d at 156-57.  That section will not be repeated here. Suffice it to say that Bellenger indicated that her ability to conscientiously consider sentencing someone to death would be impaired, with the only possible exception being a situation where a member of her immediate family was a crime victim.  Such a qualified response, however, does not invalidate the excusal of a juror for cause under Witherspoon.  See O'Bryan v. Estelle, 714 F.2d 365, 382 (5th Cir. 1983); Bell v. Lynaugh, 828 F.2d 1085, 1092 (5th Cir. 1987).  Therefore, this claim is without merit.

Brownlee also claims that juror Presley was excused in violation of Witherspoon. The State argues that this claim is defaulted because it was not raised on direct appeal. Indeed, Brownlee expressly argued that Bellenger and another juror, Sartino, were excused in violation of Witherspoon, but he made no such claim with respect to Presley. Nonetheless, the state appellate court stated, "No error was committed by the trial judge in granting the State's challenges of these two jurors [Bellenger and Sartino] for cause, or for that matter, the three jurors removed for cause but whose removal is not complained of here."  545 So. 2d at 159 (emphasis added).  Presley was one of those three other jurors. Thus, it is apparent from its opinion that the Alabama Court of Criminal Appeals considered on direct appeal the merits of Presley's excusal under Witherspoon, regardless of whether that claim was properly argued.  Therefore, this Court must also address the merits.  Again, however, Brownlee is not entitled to relief.  Presley unequivocally answered on several occasions that she could not vote to impose the death penalty under any circumstances. See Trial Record at 72-74. Accordingly, her removal for cause was not a Witherspoon violation.

**Claim G: <u>Failure to Exclude Jurors Who Knew the Victim</u>.**

Brownlee argues that three potential jurors knew the victim or his family and should have been but were not excused for cause. Thus, he complains that his defense counsel was forced to expend three peremptory strikes on them. Brownlee argues that the failure to excuse them violated his rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. The State argues that this claim is barred because it was raised on direct appeal and because it was abandoned on appeal from the denial of relief on his Rule 32 petition. However, as explained above, because this claim was raised on direct appeal and rejected on its merits, see 545 So. 2d at 164, this Court must also address the merits. <u>Walker v. Zant</u>, <u>supra</u>.

One of the prospective jurors, William Hawkins, stated that he taught driver's education to the niece of the victim and that he often drove by Jodie's Lounge. Trial Record at 97-98. However, he clearly indicated that he did not think that the fact of his acquaintance with the niece would have any effect on his ability to decide the case based on the evidence at trial. <u>Id.</u> Another potential juror, Janie Dominick, stated that she knew the victim's ex-wife and his daughter, whom Dominick's son dated. <u>Id.</u> at 114-15. However, she too unequivocally expressed her belief that she could be fair and would not be biased against the defense. <u>Id.</u> The third prospective juror, Ronald Horsley, indicated that he knew the victim "a little bit," in that he had shot pool with him at Jodie's Lounge about four or five times in the preceding four or five years. See <u>id.</u> at 100-103. Notwithstanding the apparently limited nature of Horsley's acquaintance with the victim, Horsley did give some answers upon voir dire that reflected a degree of equivocation about his belief in his ability to decide the case with impartiality. When asked about whether his acquaintance would affect his ability to sit on the case and give both sides a fair trial, Horsley responded, "I don't know, it might. I better go on." <u>Id.</u> at 102. Upon further questioning, however, Horsley indicated that he had not made up his mind about

guilt or innocence, that he would base his decision on the evidence, and that he could be a fair and impartial juror despite his knowing the victim. Id. at 102-03. The trial court found that these jurors were not due to be struck for cause, based clearly on their responses indicating that they could be fair and decide the case based on the evidence.

"The constitutional standard of fairness requires that a defendant have a panel of impartial, indifferent jurors." Murphy v. Florida, 421 U.S. 794, 799 (1975) (citation and internal quotation marks omitted). "Qualified jurors need not, however, be totally ignorant of the facts and issues involved." Id. at 800. Rather, the constitutionally required impartiality means that the juror "can lay aside his opinion and render a verdict based on the evidence presented." Patton v. Yount, 467 U.S. 1025, 1037 n.12 (1984). "whether a juror can in fact do that is a determination to which habeas courts owe special deference" under 28 U.S.C. § 2254(d). Id. at 1037-38. See also Wainwright v. Witt, 469 U.S. 412, 428-29 (1985). ). Thus, such a finding will not be set aside "unless the error is manifest." Depree v. Thomas, 946 F.2d 784, 788 (11th Cir. 1991) (quoting Irvin v. Dowd, 366 U.S. 717, 723 (1961) (quoting Reynolds v. United States, 98 U.S. 145, 156, 25 L.Ed. 244 (1878))). In other words, "the question is whether there is fair support in the record for the state court['s] conclusion that the jurors here would be impartial." Depree, supra (quoting Patton, 467 U.S. at 1038).

The Court concludes that the state trial court's findings that the three jurors could be fair and impartial and decide the case on the evidence is supported by the record and is entitled to presumption of correctness. Taking account of these findings, the Court concludes that there was no violation of Brownlee's Sixth, Eighth, or Fourteenth Amendment rights in declining to strike these jurors for cause. See, e.g., Howard v. Davis, 815 F.2d 1429, 1431 (11th Cir. 1987) (no new trial when trial court refused to excuse juror who was a "close friend" of the murder victim where juror indicated he could be an impartial juror in spite of the relationship); Wilcox v. Ford, 813 F.2d 1140, 1150

(11th Cir. 1987) (no constitutional violation where jurors admitted during voir dire that they had preconceived notions as to guilt or innocence, but said that they would be able to disregard leaning and decide case solely on evidence); Jones v. Butler, 864 F.2d 348, 362 (5th Cir. 1988) (finding no constitutional error where a prospective juror was not excused for cause even though she had lived near the victim and knew her by sight, had visited the funeral home to view her body, had worked at Angola prison for eighteen months six years before the trial, and had worked four years earlier as a hospital lab clerk for a doctor who testified for the State); Celestine v. Blackburn, 750 F.2d 353, 358-60 (5th Cir. 1984) (finding no constitutional violation from failing to excuse for cause a juror who stated that she knew the prosecutor and the victim's granddaughter, despite some statements indicating that her emotions might affect her).

### Claim H. Failure to Conduct Individually Sequestered Voir Dire

Brownlee contends that his right to a fair trial by an impartial jury was violated by the trial court's alleged failure to permit individually sequestered voir dire. The State responds that, absent a showing of cause and prejudice, this claim is barred because Brownlee could have but did not raise this issue at trial or on direct appeal and also because he allegedly procedurally defaulted it on his appeal from the denial of relief on his Rule 32 petition. The Court concludes, however, that regardless of whether it is procedurally defaulted, this claim is utterly without merit. The record shows that the trial court asked the venire collectively about whether anyone had strong feelings about the death penalty, whether they had heard about the case in the media, and whether they knew the victim, and then separately questioned each juror who responded in the affirmative. This implicates no constitutional violation. See Mu'Min v. Virginia, 500 U.S. 415 (1991) (the Due Process Clause does not mandate individually sequestered voir dire); United States v. Gerald, 624 F.2d 1291 (5th Cir. 1980) (finding no error where trial court denied a request for further interrogation after putting a general question to the venire as

a whole, asking whether any who had such prior exposure to the facts had formulated conclusions which evidence adduced at trial could not change); United States v. Giese, 597 F.2d 1170, 1183 (9th Cir.), cert. denied, 444 U.S. 979 (1979) (holding that in cases where pretrial publicity is not great a defendant's right to an impartial jury is adequately preserved by general questions addressed to the entire venire followed by individual questioning of jurors who respond affirmatively) (cited approvingly in Gerald for this point).

### Claim I.  Batson Claim.

Brownlee contends that he was deprived of a fair trial by the prosecutor's allegedly racially discriminatory peremptory strikes, in violation of Batson v. Kentucky, 476 U.S. 79 (1986).  The State contends that this claim is barred because it was not raised at trial or on direct appeal and was deemed abandoned by the Alabama Court of Criminal Appeals in its affirmance of the denial of relief on Brownlee's Rule 32 petition.  Brownlee acknowledges that no Batson claim was raised at trial or on direct appeal, but he asserts that the ineffectiveness of his trial and appellate attorneys to raise and preserve such an objection as "cause" excusing his default.  However, the Court has already rejected Brownlee's claim of ineffective assistance of counsel as it pertains to the failure to make a Batson objection.  Therefore, his claim of cause is without merit, and the claim is barred. Moreover, even if was not, the Court concludes that this claim is due to be rejected.  As explained with in the discussion regarding his related ineffective assistance claim, Brownlee has made only the barest conclusory assertion that the prosecutor used peremptory strikes  on the basis of race, without out any further specification or supporting factual allegations.  Moreover, the Rule 32 court, whose findings of fact on this claim are due a presumption of correctness under 28 U.S.C. § 2254(d), determined that Brownlee presented no evidence in support of his Batson claim.  Tab R-63 at 49.  Based on the foregoing, Brownlee is not entitled to relief on this claim.

### Claim K.  Corroboration of Accomplice Testimony

As noted previously, Brownlee claims that Goodgame, Jones, and Warren all should have been characterized as his accomplices.  Therefore, he reasons, his capital conviction was based solely on the testimony of accomplices, which he claims is "in violation of Alabama state law and the United States Constitution."  First Amended Petition at 47.  Alabama law requires that the testimony of an accomplice be corroborated by other evidence tending to connect the defendant with the commission of the offense.  See § 12-21-222, Ala. Code 1975.  However, no federal constitutional provision requires that accomplice testimony be independently corroborated, and the more stringent Alabama rule is not controlling on federal collateral review.   See Llewellyn v. Stynchcombe, 609 F.2d 194, 196 (5th Cir. 1980) (considering the application of Georgia's similar accomplice corroboration requirement).  Accord Foster v. Ward, 182 F.3d 1177, 1193 (10th Cir. 1999); Harrington v. Nix, 983 F.2d 872, 874 (8th Cir. 1993); Brown v. Collins, 937 F.2d 175, 182 n.12 (5th Cir. 1991); Takacs v. Engle, 768 F.2d 122, 127 (6th Cir. 1985); Lugo v. Munoz, 682 F.2d 7, 11 (1st Cir. 1982).  See also Caminetti v. United States, 242 U.S. 470, 495 (1917) ("[T]here is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them").  Therefore, this claim does not afford any basis for relief.

### Claim L.  Sufficiency of the Evidence Generally

Brownlee argues that his due process rights were violated because the evidence was allegedly insufficient to support his conviction.  The relevant question with respect to such a claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  The Court concludes that the evidence as set forth previously was sufficient to allow the jury to find beyond a reasonable doubt that Brownlee intentionally shot and killed Dodd during the

robbery of Jodie's Lounge because he believed Dodd was reaching for a weapon behind the bar. Such is sufficient to sustain a conviction for the capital offense for which Brownlee was charged. See Ex parte Roberts, 735 So.2d 1270, 1276 (Ala. 1999) (discussing the elements of § 13A-5-40(a)(2)).

### Claim M. Non-Unanimous Jury Sentence Recommendation

The jury in Brownlee's case voted 11 to 1 that he be sentenced to death. Under § 13A-5-46(f), Ala. Code 1975, the decision of the jury to return an advisory verdict requires the vote of only 10 or more jurors. Under Alabama's capital sentencing scheme, the trial court is the ultimate sentencing authority, as it must "consider" the jury's advisory sentencing verdict, but such is "not binding on the court." § 13A-5-47(e), Ala. Code 1975. See also Harris v. Alabama, 513 U.S. 504 (1995) (rejecting a constitutional challenge to § 13A-5-47(e)). Brownlee argues that his rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as unspecified provisions of the Alabama Constitution, were violated by the imposition of a death sentence based upon a less-than-unanimous capital sentencing recommendation by the jury. As stated before, this Court cannot grant relief based on violations of the Alabama Constitution or other provisions of state law. But even as to its federal law implications, the State argues that this claim is barred because it could have been but was not raised at trial or on direct appeal. Brownlee recognizes that this claim was not properly preserved in the Alabama courts, but he argues that such failure was caused by the ineffectiveness of his trial and appellate counsel. Petitioner's Amended Supplemental Brief at 78 n.266. However, the Court concludes that Brownlee's allegations of ineffective assistance of counsel are insufficient to constitute cause for his procedural default. Brownlee cites no case indicating that a challenge to Alabama's allowance that a jury recommendation of a death sentence may be less than unanimous would have had even the remotest chance of success. Indeed, the Alabama courts have upheld the validity of § 13A-5-46(f) under state law, see

Edwards v. State, 515 So. 2d 86, 89 (Ala. Cr. App. 1987), and the United States Supreme Court has upheld the constitutionality of Florida's capital sentencing scheme, which the Court acknowledged allows a jury to render an advisory verdict in favor of a sentence of death based upon only a bare majority vote. See Proffitt v. Florida, 428 U.S. 242, 248-49 (1976). Therefore, the Court concludes that Brownlee's counsel's performance was not deficient under Strickland for failing to raise and preserve this issue, nor did Brownlee suffer prejudice. Accordingly, Brownlee's substantive claim is procedurally barred. This discussion also shows that his substantive claim is without merit.

**Claim P.  Appointment of Kendrick as Appellate Counsel**

Brownlee argues that the appointment of Kendrick as counsel for his direct appeal violated his rights under the Sixth, Eighth, and Fourteenth Amendments and Alabama state law. This claim seems to be based on allegations that Kendrick was not sufficiently experienced to handle such responsibilities. The state argues that this issue is procedurally barred because it was not raised on direct appeal and because it was abandoned on Brownlee's appeal from the denial of relief on his Rule 32 petition. Indeed, this issue was not expressly argued in Brownlee's brief before the Alabama Court of Criminal Appeals after the trial court denied his Rule 32 petition, and the appellate court deemed it abandoned for that reason. See 666 So. 2d at 93. Thus, it is defaulted. The Court further concludes that this issue is without merit. The Rule 32 court's findings, which are supported by the record, show that Kendrick had been practicing law for over five years when he was appointed to represent Brownlee and had previously been involved in two capital murder cases. See Tab R-63 at 4-8. Moreover, "[t]he character of a particular lawyer's experience may shed light in an evaluation of his actual performance, but it does not justify a presumption of ineffectiveness in the absence of such an evaluation." United States v. Cronic, 466 U.S. 648, 665 (1984). See also Stone v. Dugger, 837 F.2d 1477, 1479 (11th Cir. 1988). Brownlee is not entitled to relief on this claim.

**Claim R.  Giglio Violations**

Brownlee argues that the prosecutor violated Giglio v. United States, 405 U.S. 150 (1972), by failing to reveal the terms of "deals" allegedly given to Goodgame, Warren, and Jones in exchange for their testimony against him.  Under Giglio, the government is required to disclose an agreement between a witness and the government that might motivate the witness to testify. Tarver v. Hopper, 169 F.3d 710, 716 (11th Cir. 1999) (citing Brown v. Wainwright, 785 F.2d 1457, 1464-65 (11th Cir. 1986)).  The Court agrees with the State that this claim has been defaulted because it was not raised at trial or on direct appeal and was abandoned by Brownlee on his appeal from the denial of his Rule 32 petition.  Further, even if the claim is not procedurally barred, it is without merit.  As stated with respect to related claims alleging ineffective assistance of counsel, the Rule 32 court determined that there was no evidence of an agreement not to prosecute Jones or Warren, made in exchange for their testimony.  This finding is presumed correct and counsels the conclusion that there was no Giglio violation with respect to their testimony. See Tarver, supra.  Moreover, it is undisputed that the jury was told that Goodgame was testifying under the terms of a plea bargain.  Brownlee has claimed in his petition that the terms of that agreement were not fully revealed, in that Goodgame allegedly received an additional benefit in that he should have, Brownlee asserts, been sentenced as a habitual offender under the HFOA but was not.  However, the Court has already explained that Goodgame's prior criminal record did not require the application of the HFOA.  Thus, Goodgame did not receive the added benefit alleged by Brownlee, and the terms of his plea bargain were correctly disclosed to the jury.  Brownlee is not entitled to relief on this claim.

**Claim V.  The "Especially Heinous, Atrocious or Cruel" Aggravating Circumstance**

Under Alabama law, it is an aggravating circumstance in a capital case that the "offense was especially heinous, atrocious or cruel compared to other capital offenses."

§ 13A-5-49(8), Ala. Code 1975.  Brownlee argues that the application of this aggravating circumstance violates his rights under the Sixth, Eighth, and Fourteenth Amendments. Absent a showing of cause and prejudice, this claim is procedurally defaulted because it was not raised at trial or on direct appeal.  Brownlee again argues that his counsel's alleged ineffectiveness constitutes cause for the failure to present this claim in state court. However, the record shows, and the Rule 32 court determined, that this aggravating circumstance was never even mentioned to the jury, nor did the trial court find that it applied to Brownlee's case.  Accordingly, Brownlee's counsel's performance was not deficient and he suffered no prejudice.  Brownlee has failed to establish cause, so the substantive claim is procedurally defaulted.  Brownlee is not entitled to relief on this claim.

### Claim X. <u>Kendrick's Participation in Concealing Dunn's Conflict of Interest</u>

Brownlee argues that Kendrick should not have been appointed appellate counsel because he purportedly participated in concealing Dunn's alleged conflict of interest regarding his role in securing Brownlee's prior robbery convictions. As previously stated, based on the findings of the Rule 32 court, Dunn had no conflict of interest and Brownlee suffered no prejudice as a result of the alleged conflict.  Accordingly, this claim is without merit.

### Claim Y. <u>The Pleas in the 1979 Convictions</u>

Next, Brownlee argues that he is entitled to relief because the convictions used as evidence of an aggravating circumstance were the result of guilty pleas that were not made knowingly and voluntarily.  Brownlee characterizes these prior convictions as "property crimes," but the record shows that these were, in fact, for robbery, which involves the use or threat of force to the person, as required to satisfy the applicable aggravating circumstance.  <u>E.g.</u>, <u>Ivery v. State</u>, 686 So. 2d 520, 521 (Ala. Cr. App. 1997).  The Rule 32 court found that three of these robbery convictions were by way of guilty pleas, while

another followed a guilty verdict at a trial. The Rule 32 court further found that Brownlee failed to present any evidence at the hearing tending to indicate that the convictions in any of the prior cases were obtained in violation of the constitution. Tab R-63 at 77-78. The Court presumes these findings to be correct. Therefore, this claim is without merit.

### Claim Z. Execution of Mentally Impaired Persons

Brownlee argues that the application of the death penalty to a "mentally impaired and retarded person" such as himself violates the Eighth and Fourteenth Amendments. This claim was not raised at trial or on direct appeal, but Brownlee again states that this is excused by the alleged ineffectiveness of his trial and appellate attorneys. However, Brownlee has failed to overcome the procedural bar because he has not shown ineffectiveness of counsel under Strickland. In addition, this claim is without merit. The Rule 32 court found, based on Dr. Beidleman's testimony at the sentencing hearing and at the Rule 32 hearing, that Brownlee was legally competent and does not fall within the range considered "mentally retarded," but rather is the range described as having "borderline intellectual" functioning, with an IQ slightly above 70. See Tab R-63 at 78-79. Further, executing mentally retarded people convicted of capital offenses is not categorically prohibited by the Eighth Amendment. See Penry v. Lynaugh, 492 U.S. 302 (1989). Based on the findings of the Rule 32 court, Brownlee's alleged mental impairments would not alone constitutionally require that he be spared execution. See Penry, at 340 (holding that the Eighth Amendment did not preclude the execution of a defendant who tested over the years as having an IQ between 50 and 63 simply by virtue of his mental retardation alone). Brownlee is not entitled to relief on this claim.

### Claim AA.  Alabama's Death Penalty is Arbitrarily and Discriminatorily Applied

Brownlee contends that the death penalty in Alabama is applied in an arbitrary and racially discriminatory manner. More specifically, he claims that the race of the victim

is the greatest predictor of who and who does not receive a death sentence and that black persons like himself are significantly more likely to receive a death sentence in cases where the victim is white. First Amended Petition at 62. Brownlee argues that the reliance upon such arbitrary and discriminatory factors violates his rights under the Eighth and Fourteenth Amendments.

This claim is procedurally defaulted because it could have been but was not raised at trial or on direct appeal, and it was one of the claims that was deemed abandoned by the Alabama Court of Criminal Appeals as not properly argued in brief following the denial of relief on Brownlee's Rule 32 petition. See 666 So. 2d at 93. This claim is also without merit. Brownlee cannot prevail on this claim without showing that "the decisionmakers in his case acted with discriminatory purpose," McClesky v. Kemp, 481 U.S. 279, 292 (1987) (emphasis original). As noted by the Rule 32 court, Brownlee failed to present any such evidence at the Rule 32 hearing. See Tab R-63 at 79-80. Therefore, Brownlee is not entitled to relief on this claim.

### Claim BB. Admission of Hearsay

Brownlee argues in his petition that the admission into evidence of a number of hearsay statements violated his confrontation rights under the Sixth and Fourteenth Amendments to the United States Constitution. He does not specify, however, to which statements he is referring. In footnote 477 of his brief, on page 174, Brownlee cites to a number of pages from the trial transcript in support of this claim, but those citations correspond to testimony offered by patrons from Jodie's Lounge. None of the cited testimony might be considered hearsay or violative of Brownlee's right of confrontation. The Court believes that Brownlee is likely referring to testimony from Goodgame regarding statements made after the group returned to Jones's apartment after robbing Jodie's Lounge. See Trial Transcript at 256-59. However, neither Brownlee's trial nor appellate counsel argued that his confrontation rights were violated by the admission of

any evidence, so, as noted by the Rule 32 court, this claim was defaulted in state court.

Brownlee again suggests that his trial and appellate lawyers were constitutionally ineffective in failing to raise and preserve this claim. However, he has failed to allege a sufficient factual basis to support his assertion. The Court concludes that this claim is procedurally barred. Further, the Court concludes that even if it were not, it would not entitle Brownlee to relief. Reviewing the allegedly offensive statements, the Court concludes that they either did not violate Brownlee's right of confrontation at all or were, at most, harmless in that they did not have "substantial and injurious effect or influence in determining the jury's verdict." See Cargill v. Turpin, 120 F.3d 1366, 1375 (11th Cir. 1997).

### Claim CC. Burden to Prove Witness is an Accomplice

As noted previously, under Alabama law, there is a requirement in felony cases that accomplice testimony must be corroborated by other evidence tending to connect the defendant with the commission of the offense. § 12-21-222, Ala. Code 1975. It is also the law of Alabama that, except in cases where a witness is determined to be an accomplice as a matter of law, the burden to prove that a witness is an accomplice is placed on the defendant. See Ex parte Davis, 718 So. 2d 1166, 1170 (Ala. 1998). Brownlee argues that requiring him to prove that a witness is an accomplice violates his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments. The Court disagrees. As discussed above, the federal Constitution does not demand that accomplice testimony be corroborated in order that a criminal conviction might lie, so Alabama's witness corroboration statute is a protective measure that could be completely abolished without infringing upon the Constitution. Thus, it would seem that any burden Alabama law places on a defendant in order that he might take advantage of this additional protection necessarily passes constitutional muster. Brownlee is not entitled to relief on this claim.

### Claim DD. Disproving Mitigating Circumstances

At trial, the court instructed the jury that the State has the burden to disprove the factual existence of mitigating circumstances by a preponderance of the evidence. See § 13A-5-45(g), Ala. Code 1975. Brownlee argues that such an instruction violates his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments.    This claim is without merit. See Walton v. Arizona, 497 U.S. 639, 649 (1990) (rejecting the contention that an Arizona statute violates the Eighth and Fourteenth Amendments because it imposes on defendants the burden of establishing, by a preponderance of the evidence, the existence of mitigating circumstances sufficiently substantial to call for leniency).

### Claim GG.  Warren's Perjured Testimony

Brownlee alleges that Warren gave perjured testimony at trial and that he is thus constitutionally entitled to a new trial. However, this claim is among those that the Alabama Court of Criminal Appeals deemed abandoned because it was not expressly argued in brief, following the denial of relief on Brownlee's Rule 32 petition. See 666 So. 2d at 93. Thus, it is procedurally defaulted. It is also without merit. As stated in the discussion regarding allegations that Goodgame gave perjured testimony (Claim C), the fact that a witness gave perjured trial testimony does not, standing alone, warrant granting habeas relief.

### Claim HH.  Sentence Disproportionate to those of Co-Defendants

Brownlee contends that his death sentence is disproportionate when compared to the sentences of Goodgame (four consecutive life sentences, but with the possibility of parole), Harris (life sentence), Warren, and Jones (never charged). He claims that this violates the Equal Protection Clause of the Fourteenth Amendment and the prohibition against cruel and unusual punishment of the Eighth Amendment. However, this claim is procedurally defaulted because it could have been but was not raised at trial or on direct appeal and also because it was one of the claims deemed abandoned on appeal from the denial of relief on Brownlee's Rule 32 petition. See 666 So. 2d at 93. In addition, it is

without merit. First, the Rule 32 court's explicit and implicit findings are that the culpability of Brownlee was substantially greater than that of either Goodgame, Harris, Warren, or Jones. These findings, the Court concludes, are supported by the record and entitled to a presumption of correctness. See Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995). Standing alone, this precludes success on any equal protection claim because he must be deemed not similarly situated to those who would be his comparators. See, e.g., Rodriguez v. Lamer, 60 F.3d 745, 749 (11th Cir. 1995) ("A preliminary step in equal protection analysis is to determine whether persons who are similarly situated are subject to disparate treatment," (quoting Johnson v. Smith, 696 F.2d 1334, 1336 (11th Cir. 1983)). It would also seem to imply that his Eighth Amendment rights were not violated. See, e.g., Lacoste v. Blackburn, 592 F.2d 1321, 1323 (5th Cir. 1979); Francis v. Dugger, 908 F.2d 696, 704 (11th Cir. 1990) (concluding that the death sentence imposed on defendant did not violate the Eighth or Fourteenth Amendments, notwithstanding that none of his co-defendants received the death penalty). Finally, the Eighth Amendment does not require a general proportionality review in death penalty cases. See Pulley v. Harris, 465 U.S. 37, 43-44 (1984); Hatch v. Oklahoma, 58 F.3d 1447, 1466 (10th Cir. 1995); Pickens v. Lockhart, 4 F.3d 1446, 1454 n. 4 (8th Cir. 1993); Brogdon v. Blackburn, 790 F.2d 1164, 1170 (5th Cir. 1986). Brownlee is not entitled to relief on this claim.

## Claim JJ. Alabama's Electric Chair as Cruel and Unusual Punishment

Brownlee argues that death by electrocution is per se cruel and unusual punishment, in violation of the Eighth Amendment. He also seems, perhaps, to suggest that putting a defendant to death in Alabama's electric chair is unconstitutional. However, these issues were not raised at trial or on direct appeal, and they were deemed abandoned by the Alabama Court of Criminal Appeals following the denial of relief on Brownlee's Rule 32 petition. See 666 So. 2d at 93. The Court concludes Brownlee cannot show that his attorneys' performance was at all deficient for failing to raise this issue or

that he was prejudiced by such failure.   These claims are barred, and Brownlee is not entitled to relief upon them.

### Claim KK.   Funds for Expert Witnesses

Brownlee contends that he was constitutionally entitled to funds to obtain experts for the guilt and penalty/sentencing phases of trial.   To the extent that Brownlee is arguing that he was entitled to an appointed mental health expert at the guilt phase of his trial under Ake v. Oklahoma, 470 U.S. 68 (1985), such a claim is without merit.   In the first place, no request was made for the appointment of such an expert at the guilt phase. And even assuming that the failure of Brownlee's counsel to move for such appointment was deficient, he cannot show prejudice.   Neither Brownlee's sanity nor his competence was an issue at trial, and Dr. Beidleman testified at the Rule 32 hearing that he believed Brownlee was sane at the time of the crime and was competent to stand trial.   To the extent he contends he was entitled to have appointed a mental health expert at sentencing, such claim is also without merit, given that Dr. Beidleman testified at sentencing.

Brownlee also appears to argue also that he was constitutionally entitled to have the state pay for expert witnesses for his Rule 32 post-conviction proceedings, such a claim is also without merit.   Cf. Young v. Zant, 727 F.2d 1489, 1492 (11th Cir. 1984) ("The failure of a state court to provide financial assistance for investigation purposes in habeas corpus cases does not present a constitutional issue.")   Indeed, even in death penalty cases, state prisoners are not even constitutionally entitled to an attorney at state expense.   See Murray v. Giarratano, 492 U.S. 1 (1989).

Lastly, Brownlee contends that he was entitled to funds to obtain an expert in parole and probation services to testify to his prison record, prospects for rehabilitation, and lack of future dangerousness.   No request was made for such an expert, and the state court judge was not required to raise the issue himself.   See F.T.C. v. Atlantex Associates, 872 F.2d 966, 971 (11th Cir. 1989) (stating in dicta, "Even in the criminal context, where

the right to effective assistance of counsel is at its zenith, it is up to the defendant to request appointment of an expert--the court need not raise the issue sua sponte.") Brownlee again argues that his trial counsel was ineffective for failing to move for funds for the appointment of this expert. Indeed, there really is no claim here but that Brownlee's counsel were allegedly ineffective for failing to apply for the appointment of experts at state expense, because the state court judge cannot be faulted for raising the issue himself. However, the Court concludes that it was not constitutionally deficient performance in failing to request an expert in parole and probation services, nor did Brownlee suffer prejudice, given the evidence adduced at the Rule 32 hearing that Brownlee continued to abuse drugs while in prison, and the strong evidence of aggravating circumstances.

## IV. CONCLUSION

Having carefully addressed the claims for habeas corpus relief asserted by the petitioner in this action, the court finds them either meritless or barred from consideration on one or more grounds. To the extent, that some of Brownlee's claims are not expressly discussed above in detail, the Court has nonetheless given them its full consideration and has concluded that they are without merit. None of the claims entitles petitioner to relief, and, therefore, the petition for writ of habeas corpus is due to be DENIED. A separate final judgment to that effect will be entered.

DONE and ORDERED this _9th_ day of August, 2000,

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE